# 23-7475

## United States Court of Appeals

*for the*

## Second Circuit

CARE ONE, LLC, HEALTHBRIDGE MANAGEMENT, LLC, CARE
REALTY, LLC, 107 OSBORNE STREET OPERATING COMPANY II, LLC,
DBA Danbury HCC, 710 LONG RIDGE ROAD OPERATING COMPANY II,
LLC, DBA LONG RIDGE OF STAMFORD, 240 CHURCH STREET
OPERATING COMPANY II, LLC, DBA Newington Health Care Center,
1 BURR ROAD OPERATING COMPANY II, LLC, DBA Westport Health Care
Center, 245 ORANGE AVENUE OPERATING COMPANY II, LLC, DBA West
River Health Care Center, 341 JORDAN LANE OPERATING COMPANY II,
LLC, DBA Wethersfield Health Care Center, 2028 BRIDGEPORT AVENUE
OPERATING COMPANY II, LLC, DBA Golden Hill Health Care Center, 745
HIGHLAND AVE OPERATING CO LLC, DBA Highlands Health Care Center,
162 SOUTH BRITAIN ROAD OPERATING COMPANY II, LLC,
DBA River Glen Health Care Center,

*Plaintiffs-Appellants,*

— v. —

NATIONAL LABOR RELATIONS BOARD, an Agency of the United States,
LAUREN McFERRAN, GWYNNE WILCOX, MARVIN KAPLAN,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF CONNECTICUT

## PAGE PROOF BRIEF FOR PLAINTIFFS-APPELLANTS

DANIEL R. BENSON
CHRISTIAN T. BECKER
AMIT R. VORA
KASOWITZ BENSON TORRES LLP
*Attorneys for Plaintiffs-Appellants*
1633 Broadway
New York, New York 10019
(212) 506-1700

CP COUNSEL PRESS (800) 4-APPEAL • (326316)

DAVID PROUTY, in their capacities as Members of the National Labor Relations Board, KENNETH R. CHU, in his capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellees.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Each Appellant is a limited liability company, not a non-governmental corporation. Accordingly, Federal Rule of Appellate Procedure 26.1 does not require disclosures with respect to them.

/s/ Daniel R. Benson
Daniel R. Benson

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

JURISDICTIONAL STATEMENT ........................................................5

STATEMENT OF THE ISSUES ............................................................5

STATEMENT OF THE CASE ................................................................7

I.     Factual and Procedural Background ........................................7

II.    Legal Background ..................................................................9

    A.    The Dual For-Cause Removal Protections of NLRB ALJs and *Free Enterprise Fund* ............................................................9

    B.    ALJ Chu's Unconstitutional Appointment and *Noel Canning* ...13

III.   This Action ..........................................................................14

SUMMARY OF ARGUMENT ..............................................................20

STANDARD OF REVIEW ..................................................................26

ARGUMENT ........................................................................................27

THIS COURT SHOULD VACATE THE DENIAL OF THE PRELIMINARY INJUNCTION ............................................................27

I.     The District Court Abused Its Discretion by Requiring Care One to Show a Clear Likelihood of Success on the Merits. ..........................27

    A.    The Court Conflated the Relief Requested in the Action with the Relief Requested in the Preliminary Application. .................................27

    B.    The Court Was Wrong That Preliminarily Enjoining Government Action Requires a Clear Likelihood of Success. .............29

    C.    Care One Seeks a Prohibitory Injunction, Which Triggers a Likelihood Standard. ...............................................................................31

II.    The District Court Abused Its Discretion by Failing to Explain Its Reasoning. ................................................................................................43

ii

III.    This Court Should Hold That Care One Is Entitled to Preliminary Injunctive Relief.................................................................47

    A.    Care One Will Succeed on the Merits of Its Claims. ..................47

    1.    The dual for-cause removal protections for NLRB ALJs are unconstitutional. ..........................................................................47

    2.    ALJ Chu's unconstitutional appointment tainted the proceedings.................................................................................55

    B.    Care One Will Suffer Irreparable Harm Absent an Injunction. 60

    C.    An Injunction Will Promote the Public Interest..........................63

**CERTIFICATE OF COMPLIANCE** ..................................................67

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*In re 710 Long Ridge Rd. Operating Co. II, LLC,*
637 F. Supp. 3d 161 (D.N.J. 2022), *rev'd and vacated,*
No. 22-3046, 2023 WL 3116434 (3d Cir. Apr. 27, 2023) ................................8

*A.W. Indus., Inc. v. Elec. Connector Serv., Inc.,*
129 F.3d 132 (Fed. Cir. 1997) .................................................................46

*Abdul Wali v. Coughlin,*
754 F.2d 1015 (2d Cir. 1985), *overruled on other grounds by*
*O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987) ......................................32, 42

*Advanced Disposal Servs. E., Inc. v. NLRB,*
820 F.3d 592 (3d Cir. 2016) ...................................................................57

*Agudath Israel of Am. v. Cuomo,*
983 F.3d 620 (2d Cir. 2020) ..............................................................63, 66

*Aid for Women v. Foulston,*
441 F.3d 1101 (10th Cir. 2006) ................................................................46

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.,*
141 S. Ct. 2485 (2021) ..........................................................................65

*Almontaser v. New York City Dep't of Educ.,*
519 F.3d 505 (2d Cir. 2008) ....................................................................41

*Sussman v. Crawford,*
488 F.3d 136 (2d Cir. 2007) ....................................................................31

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
598 U.S. 175 (2023) .........................................................................*passim*

*Bond v. United States,*
564 U.S. 211 (2011) .............................................................................64

iv

*Brenntag Int'l Chems., Inc. v. Bank of India,*
175 F.3d 245 (2d Cir. 1999) ................................................................62

*Brewer v. W. Irondequoit Cent. Sch. Dist.,*
212 F.3d 738 (2d Cir. 2000), *superseded on other grounds by rule as stated in Zervos v. Verizon New York, Inc.,*
252 F.3d 163 (2d Cir. 2001) ...............................................................63

*Brooks v. Kijakazi,*
60 F.4th 735 (4th Cir. 2023)...............................................................58

*Cacchillo v. Insmed, Inc.,*
638 F.3d 401 (2d Cir. 2011) ...............................................................41

*Calcutt v. FDIC,*
37 F.4th 293 (6th Cir. 2022)...............................................................56

*Care One, LLC v. NLRB,*
No. 23 Civ. 3221, Doc. 1 (D.N.J. June 20, 2023) ...........................17

*Carr v. Saul,*
593 U.S. 83 (2021)...............................................................................15

*Cnty. of Nassau, N.Y. v. Leavitt,*
524 F.3d 408 (2d Cir. 2008) ...............................................................30

*Cody v. Kijakazi,*
48 F.4th 956 (9th Cir. 2022)..........................................................58, 61

*Collins v. Yellen,*
141 S. Ct. 1761 (2021).........................................................2, 61, 63, 64

*Connecticut State Police Union v. Rovella,*
36 F.4th 54 (2d Cir. 2022).............................................................22, 31

*Decker Coal Co. v. Pehringer,*
8 F.4th 1123 (9th Cir. 2021)...............................................................56

*Democratic Exec. Comm. of Fla. v. Lee,*
    915 F.3d 1312 (11th Cir. 2019).................................................................66

*Field Day, LLC v. Cnty. of Suffolk,*
    463 F.3d 167 (2d Cir. 2006)..................................................................35

*Fleming v. United States Dep't of Agric.,*
    987 F.3d 1093 (D.C. Cir. 2021)............................................................54

*Flintkote Co. v. Blumenthal,*
    469 F. Supp. 115 (N.D.N.Y. 1979).......................................................42

*Frazier v. Prince George's Cnty., Maryland,*
    86 F.4th 537 (4th Cir. 2023).............................................................44, 45

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)......................................................................*passim*

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado,*
    916 F.3d 792 (10th Cir. 2019).............................................................39

*Heineke v. Santa Clara Univ.,*
    736 F. App'x 622 (9th Cir. 2018).........................................................46

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935)...........................................................................52

*Innovative Health Sys., Inc. v. City of White Plains,*
    117 F.3d 37 (2d Cir. 1997), *superseded on other grounds by rule*
    *as stated in Noel v. New York City Taxi & Limousine Comm'n,*
    687 F.3d 63 (2d Cir. 2012)..................................................................35

*Jacobson & Co. v. Armstrong Cork Co.,*
    548 F.2d 438 (2d Cir. 1977)................................................................42

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022)....................................................12, 49, 54

*JTH Tax, LLC v. Agnant,*
   62 F.4th 658 (2d Cir. 2023) ...................................................................40

*K & R Contractors, LLC v. Keene,*
   86 F.4th 135 (4th Cir. 2023) ..................................................................54

*Kane v. De Blasio,*
   19 F.4th 152 (2d Cir. 2021) .................................................31, 38, 66

*Kreisberg v. Healthbridge Mgmt., LLC,*
   No. 12 Civ. 1299, Doc. 58 (D. Conn. May 30, 2013) ....................................17

*League of Women Voters of the U.S. v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016) ...................................................................65

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
   454 F.3d 108 (2d Cir. 2006) ..................................................................32

*Lucia v. S.E.C.,*
   138 S. Ct. 2044 (2018).................................................................*passim*

*Mastrovincenzo v. City of New York,*
   435 F.3d 78 (2d Cir. 2006) .........................................................*passim*

*Mayo v. Lakeland Highlands Canning Co.,*
   309 U.S. 310 (1940)............................................................................47

*Morrison v. Olson,*
   487 U.S. 654 (1988)............................................................................53

*Myers v. United States,*
   272 U.S. 52 (1926)..............................................................................51

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,*
   883 F.3d 32 (2d Cir. 2018) ...........................................23, 32, 36, 37

*N.A.A.C.P., Inc. v. Town of E. Haven,*
   70 F.3d 219 (2d Cir. 1995) .................................................44, 45, 47

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
   595 U.S. 109 (2022) .................................................................. 65

*New York v. United States Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020) ......................................................... 64

*Nicholson v. Scoppetta*,
   344 F.3d 154 (2d Cir. 2003) ....................................................... 41

*NLRB v. Bell Aerospace Co.*,
   416 U.S. 267 (1974) .................................................................. 53

*NLRB v. New Vista Nursing & Rehab.*,
   870 F.3d 113 (3d Cir. 2017) ....................................................... 57

*NLRB v. Noel Canning*,
   573 U.S. 513 (2014) ............................................................ 13, 56

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
   389 F.3d 973 (10th Cir. 2004)
   (Murphy, J., concurring in part and dissenting in part) ............... 40

*Phillip v. Fairfield Univ.*,
   118 F.3d 131 (2d Cir. 1997) ................................................... 32, 35

*S.E.C. v. Unifund SAL*,
   910 F.2d 1028 (2d Cir. 1990) ..................................................... 40

*Sandell v. Kijakazi*,
   2023 WL 6308050 (E.D.N.Y. Sept. 28, 2023) .............................. 58

*SEC v. Jarkesy*,
   No. 22-859 (U.S.) ................................................................ 4, 25

*Seila Law LLC v. CFPB*,
   140 S. Ct. 2183 (2020) ......................................................... 51, 52

*Snell v. Apfel,*
177 F.3d 128 (2d Cir. 1999) ............................................................47

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,*
60 F.3d 27 (2d Cir. 1995) ..................................................23, 31, 32

*United States v. Perkins,*
116 U.S. 483 (1886) ..........................................................................52

*Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.,*
16 F.4th 1130 (5th Cir. 2021) .........................................................35

*Westrock Servs., Inc. & Graphic Commc'ns Conf. of the Int'l Bhd. of Teamsters, Loc. 197-M,*
366 NLRB No. 157, 2018 WL 3738342 (N.L.R.B. Aug. 6, 2018)..................50

*Wiener v. United States,*
357 U.S. 349 (1958) ..........................................................................52

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ..............................................................................44

*Wright v. Giuliani,*
230 F.3d 543 (2d Cir. 2000) .....................................................30, 31

**Constitutional Provisions and Statutes**

U.S. Const. art. II............................................................*passim*

5 U.S.C. § 556............................................................................55

5 U.S.C. § 557............................................................................55

5 U.S.C. § 1202(d) ..........................................................10, 48

5 U.S.C. § 3105............................................................................55

5 U.S.C. § 5372............................................................................55

ix

5 U.S.C. § 7521 ..................................................................................10, 48

28 U.S.C. § 1292(a)(1) ................................................................................5

28 U.S.C. § 1331 ..........................................................................................5

28 U.S.C. § 1651 ..........................................................................................5

28 U.S.C. § 2201 ..........................................................................................5

29 U.S.C. §§ 151–69 ...................................................................................9

29 U.S.C. § 153 ......................................................................................9, 10

29 U.S.C. § 154 ............................................................................................9

## Other Authorities

### Court Rules

Fed. R. Civ. P. 52(a)(2) ....................................................................*passim*

### Legislative Materials

1 Annals of Cong. 463 (1789) ..................................................................51

U.S. Const. art. II, § 1, cl. 1 ....................................................................11

### Administrative Materials

5 C.F.R § 930.240(a) .................................................................................55

29 C.F.R. § 101.14 .....................................................................................15

29 C.F.R. § 102.34 .....................................................................................55

29 C.F.R. §§ 102.35(a)(1)-(13) ...............................................................55

Secretary of Educ. Review of ALJ Decisions,
    15 Op. O.L.C. 8 (1991)...........................................................................53

*Other Materials*

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 2947 (3d ed. Apr. 2023
    update)...............................................................................................38

Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive
    Power of Removal*, 136 Harv. L. Rev. 1756, 1761 (2023)................................50

Steven G. Calabresi & Kevin H. Rhodes, *The Structural
    Constitution: Unitary Executive, Plural Judiciary*, 105 Harv. L
    Rev. 1153 (1992) .............................................................................50

Brief of Constitutional Originalsts Originalists Edwin Meese III,
    Steven G. Calabresi, and Garry S. Lawson as Amicus Curiae
    in Support of Respondents, *SEC v. Jarkesy*, No. 22-859, 2023
    WL 6974396 (U.S.) .........................................................................50

Thomas R. Lee, *Preliminary Injunctions and the Status Quo*,
    58 Wash. & Lee L. Rev. 109 (2001) ...................................................42

Kevin J. Lynch, *Preliminary Injunctions in Public Law: The Merits*,
    60 Hous. L. Rev. 1067 (2023)*Preliminary Injunctions in Public
    Law*.................................................................................................39

## PRELIMINARY STATEMENT

Plaintiffs–Appellants (collectively, "Care One"), the respondents in a National Labor Relations Board ("NLRB") administrative proceeding, presided over by an unconstitutionally appointed and unconstitutionally presiding Administrative Law Judge ("ALJ"), brought this action and sought a preliminary injunction to put an end to that "illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023). Care One sued in district court now, in accordance with the procedure *Axon* made available, rather than waiting for appellate review of the final agency order—because the harm of "being subjected to unconstitutional agency authority" is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*.

Care One appeals from the denial of its preliminary injunction motion to stop that illegitimate proceeding. While Care One acknowledges the extraordinary nature of the interim and interlocutory relief it seeks, the district court severely and undeniably misapplied the preliminary-injunction standard. Moreover, the NLRB administrative proceedings

contain defects that violate the structural principles secured by the Constitution's separation of powers doctrine: first, the presiding ALJ is unconstitutionally insulated from the President's power to remove subordinates, thus violating the Take Care and Vesting Clauses of Article II; second, that ALJ was unconstitutionally appointed by a Board that lacked a constitutional quorum, thus violating the Appointments Clause of Article II. In two respects, then, "governmental action" affecting private rights is being "taken by someone erroneously claiming the mantle of executive power—and thus taken with no authority at all." *Collins v. Yellen*, 141 S. Ct. 1761, 1795 (2021) (Gorsuch, J., concurring in part). That "constitutional evil" (*see id.* at 1796) warrants a preliminary injunction; this Court should vacate the denial.

First, the district court abused its discretion by requiring Care One to show that it is not just likely but clearly likely to succeed on the merits of its claims, holding that Care One must show a clear likelihood of success because its requested preliminary injunction sought to nullify the NLRB proceedings. But the court erroneously conflated (i) the permanent injunctive and declaratory relief that Care One seeks in its complaint with

2

(ii) the preliminary injunctive relief that Care One seeks in its motion. Consistent with standard federal litigation practice, Care One's application for a preliminary injunction seeks only to preliminarily pause the administrative proceeding pending judicial resolution of Care One's constitutional claims.

The district court's alternative reason to impose the clear-likelihood standard was also off base. The court held that Care One needed to satisfy that standard because its preliminary injunction would affect government action taken in the public interest pursuant to a statutory or regulatory scheme. But in so holding, the court simply got the law in this Circuit wrong. Under this Court's established precedent, granting such an injunction is governed by a likelihood standard, not a clear-likelihood standard. Because the district court denied Care One's motion on the sole basis that Care One's claims were not clearly likely to succeed on the merits, and because that denial resulted from the court's applying an erroneous standard, the denial constituted an abuse of discretion, warranting vacatur.

Second, the district court's denial of Care One's motion was an abuse

of discretion on a separate ground: the court offered no reasoning to support its denial of the injunction regarding Care One's Article II removal-power claim. While declining to address the irreparable-harm and public-interest factors, the district court identified a circuit split on the removal-power issue; noted that the Supreme Court had granted certiorari in *SEC v. Jarkesy*, No. 22-859, to resolve the issue; and presumed that it was not "clearly likely" that the Court would rule for Care One. Because the court did not address the irreparable-harm and public-interest factors at all, and because the court's analysis of the clear likelihood of success on the merits was deficient, the court failed to satisfy its obligation under Federal Rule of Civil Procedure 52(a)(2) to render findings and conclusions supporting its decision.

This Court can and should hold that Care One is entitled to the preliminary injunction. Its claims are meritorious. Moreover, because the administrative proceedings are ongoing, without interim injunctive relief, Care One will continue to face the irreparable harm of "being subjected to unconstitutional agency authority"—which, as noted, is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon*, 598

U.S. at 191. Nor could an unconstitutional agency proceeding serve the public interest. Alternatively, if this Court is not inclined to render such a holding on this record, this Court should remand and instruct the district court to conduct the proper inquiry: that is, analyzing the claims under the likelihood-of-success standard, rather than a clear-likelihood-of-success standard, and addressing the irreparable-harm and public-interest factors.

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1651, and 2201. This Court has interlocutory jurisdiction under 28 U.S.C. § 1292(a)(1) over this appeal from the order denying the motion for a preliminary injunction, which was entered on October 4, 2023. Care One timely filed its notice of appeal on October 18, 2023.

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion in denying Care One's application for a preliminary injunction when it required Care One to show a clear likelihood of success based on a misreading of Care One's application and a misreading of this Court's case law.

2. Whether the district court abused its discretion in denying Care One's application for a preliminary injunction when, as to the removal-power claim, it provided inadequate reasons for the denial.

3. Whether Care One is entitled to a preliminary injunction on this record, in light of the merits of its claims that the NLRB administrative proceeding against it is unconstitutional; the irreparable harm it will suffer if it must continue to face unconstitutional administrative proceedings, which the Supreme Court has confirmed is a here-and-now injury impossible to remedy once the proceedings are over; and the absence of any public interest in unconstitutional agency action.

## STATEMENT OF THE CASE

### I.    Factual and Procedural Background

Plaintiffs—referred to as "Care One" herein for ease of exposition—comprise eight long-term healthcare facilities and three affiliates. [Doc. 1 (Compl.) ¶¶ 10–21.] In 2010, Care One faced financial difficulties due to the high employee-compensation costs required under collective bargaining agreements with a union representing employees at the facilities. [Compl. ¶¶ 25, 28.] Care One engaged in good-faith negotiations for successor agreements to resolve these difficulties, but when the agreements came up for renewal, Care One and the union could not agree on the economic terms; the union consequently filed several charges in the NLRB against Care One for unfair labor practices in violation of the National Labor Relations Act (NLRA). [Compl. ¶ 28.]

Based on the union's charges, in 2012, the NLRB's Corporate General Counsel instituted proceedings against Care One in the NLRB. [Compl. ¶ 29.] The proceedings bear the following NLRB case numbers: 34-CA-070823, 34-CA-072875, 34-CA-075226, 34-CA-083335, 34-CA-084717, and 01-

CA-096349. [Compl. ¶¶ 1, 28–34.] Later that year, the proceedings were consolidated and placed under the authority of ALJ Kenneth R. Chu. [Compl. ¶ 30.] Since that time, the proceedings have paused and restarted for various reasons, including an interlocutory appeal regarding privilege issues that paused the proceedings from 2014 to 2019; COVID-related delays; and, most recently, parallel bankruptcy proceedings. [Doc. 71 (Order) at 4.]

Regarding the bankruptcy proceedings: in 2013, Care One had filed in U.S. Bankruptcy Court for the District of New Jersey for Chapter 11 bankruptcy protection. [Compl. ¶ 31.] That court confirmed a bankruptcy plan in 2014. [Compl. ¶ 31.] The NLRB and the union appealed from orders regarding the reorganization plan to the U.S. District Court for the District of New Jersey. [Compl. ¶ 31.] That court stayed the NLRB proceedings from October 2022 through April 2023; the proceedings resumed on June 26, 2023. [Compl. ¶¶ 32–33; Doc. 47-3 (Montenegro Decl., Ex. A).] *See In re 710 Long Ridge Rd. Operating Co. II, LLC*, 637 F. Supp. 3d 161, 187 (D.N.J. 2022), *rev'd and vacated*, No. 22-3046, 2023 WL 3116434 (3d Cir. Apr. 27, 2023).

## II.   Legal Background

### A.   The Dual For-Cause Removal Protections of NLRB ALJs and *Free Enterprise Fund*

The NLRA established the NLRB as an independent federal agency under the President's authority. *See* 29 U.S.C. §§ 151–69. The Board members are appointed by the President with the advice and consent of the Senate, and they serve staggered five-year terms. *See* 29 U.S.C. § 153(a). The General Counsel is appointed to a four-year term by the President with advice and consent of the Senate. *See* 29 U.S.C. § 153(d). The General Counsel operates independently of the Board and is responsible for prosecuting unfair labor practice actions. *See id.* The Board appoints ALJs to preside over NLRB proceedings and to adjudicate federal labor claims or disputes, including those brought under the NLRA. *See* 29 U.S.C. § 154 (authorizing the Board to appoint "examiners" and "such other employees as it may from time to time find necessary for the proper performance of its duties"); Nat'l Labor Relations Bd. Rules, Organization and Functions § 201 ("The Board appoints administrative law judges and, subject to the provisions of the Administrative Procedure Act and section 4(a) of the National Labor

9

Relations Act, exercises authority over the Division of Judges.").

Under the Administrative Procedure Act, the NLRB may remove ALJs, but only "for good cause established and determined by the Merit Systems Protection Board [MSPB] on the record after opportunity for hearing before the [MSPB]." *See* 5 U.S.C. §§ 7521(a)–(b). MSPB members, in turn, may be removed by the President, but only for three reasons: "inefficiency, neglect of duty, or malfeasance in office." *See* 5 U.S.C. § 1202(d); *see also* 29 U.S.C. § 153(a) (providing that NLRB members, who must act on the MSPB's decision, may be removed by the President only "for neglect of duty or malfeasance in office"). In sum, NLRB ALJs cannot be removed except for cause, and those who can remove them are removable only for cause.

The Supreme Court's decision in *Free Enterprise Fund*, however, held that such dual for-cause protection from removal by the President is unconstitutional. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010). There, the Court considered the constitutionality of the dual for-cause protections afforded to members of the Public Company Accounting Oversight Board (PCAOB)—that is, Commissioners of the Securities and

10

Exchange Commission (SEC) could remove PCAOB members only for cause, and the President could remove SEC Commissioners only for cause. *Id.* at 486–87. The Court held that this structure violated constitutional separation of powers and the President's power to remove inferior executive officers under Article II of the Constitution. *Id.* at 492.

In particular, the Vesting Clause of Article II provides that the "executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. The Take Care Clause of Article II empowers the President to "take care that the laws be faithfully executed." *Id.* § 3. And Article II's Appointments Clause provides that the President:

> shall nominate, and by and with the advice and consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

*Id.* § 2, cl. 2. Since the founding, it has been understood that the role of these officers is to "assist the supreme Magistrate [the President] in discharging the duties" of the presidency. *Free Enterprise Fund*, 561 U.S. at 483 (quoting

11

30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)).

Relying on these reservoirs of executive power, *Free Enterprise Fund* held that "multilevel protection from removal is contrary to Article II's vesting of the executive power in the President. The President cannot 'take Care that the Laws be faithfully executed' if he [or she] cannot oversee the faithfulness of the officers who execute them." *Id.* at 484. Indeed, "[s]ince 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary." *Id.* at 483. That logic should extend to NLRB ALJs.

Notably, the constitutionality of dual for-cause removal protections for SEC ALJs is under consideration by the Supreme Court in *SEC v. Jarkesy*. *See Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (holding that such protections are unconstitutional), *cert. granted sub nom.*, *SEC v. Jarkesy* No. 22-859, 2023 WL 4278448 (June 30, 2023). The Court heard oral argument in the case on November 29, 2023. A decision is expected by the end of the current term, *i.e.*, July 2024. For purposes of the removal power, SEC and NLRB ALJs are indistinguishable.

### B.     ALJ Chu's Unconstitutional Appointment and *Noel Canning*

In January 2012, during a three-day recess between *pro forma* sessions of the U.S. Senate, President Obama attempted to make three "recess appointments" of Sharon Block, Richard Griffin, and Terence Flynn to the National Labor Relations Board. [Compl. ¶ 44.] These appointments, however, were never confirmed by the Senate. [Compl. ¶ 44.] In July 2013, President Obama withdrew the pending appointment nominations of Griffin and Block and replaced them with Senate-confirmed appointees; Flynn had stepped down from the Board in July 2012. [Compl. ¶ 44.]

Almost a year later, in June 2014, the Supreme Court in *Noel Canning* held that the January 2012 recess appointments of Block, Griffin, and Flynn were unconstitutional. *NLRB v. Noel Canning*, 573 U.S. 513, 521 (2014) (specifying the appointments of Block, Griffin and Flynn); *id.* at 557 (holding that "the Recess Appointments Clause does not give the President the constitutional authority to make the appointments here at issue").

Yet, on or about July 30, 2012—before Griffin and Block were withdrawn—an unconstitutionally appointed Board had appointed ALJ

Chu, who had started presiding over the NLRB proceedings against Care One from at least October 2012 onward.[1] [Compl. ¶¶ 46-47.] In addition, *Lucia* in 2018 held that SEC ALJs are inferior officers under Article II and must be appointed consistent with the Appointments Clause. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018). This holding applies to NLRB ALJs, as well.

## III. This Action

In light of the foregoing precedents, the NLRB proceedings against Care One are constitutionally invalid in two fundamental respects. First, ALJ Chu has been presiding over the proceedings while unconstitutionally insulated from the President's removal power through two-lawyers of for-cause protection. Second, because ALJ Chu was appointed by an unconstitutionally appointed Board, his own appointment was unconstitutional. It follows that, from the start, the entire NLRB proceedings

---

[1] *See NLRB appoints Kenneth Chu, Christine Dibble as administrative law judges*, Nat'l Relations Bd. News (Jul. 30, 2012) ("The National Labor Relations Board has appointed Kenneth Chu and Christine Dibble as administrative law judges in its Division of Judges, effective today."), https://www.nlrb.gov/news-outreach/news-story/nlrb-appoints-kenneth-chu-christine-dibble-as-administrative-law-judges.

have been tainted by these structural constitutional defects, subjecting Care One to continuous, unconstitutional proceedings since 2012.

Before April 2023, however, Care One was limited in its ability to raise these structural constitutional defects. ALJ Chu has acknowledged that he is not institutionally competent to review claims that the NLRB proceedings themselves are unconstitutional. He has stated on the record: "there is a colorable claim on the issue of [the] constitutionality of ALJ appointments and obviously that's going to be decided by a district court judge. It wouldn't be up to me to make such a ruling in this proceeding." [Doc. 47-9 (Montenegro Decl., Ex. G), at 6456:17–21.] *See Carr v. Saul*, 593 U.S. 83, 84 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise."). Further, because the NLRA's statutory scheme allows for direct-appellate judicial review of *final* Board orders, Care One must wait until the NLRB proceedings are over to employ that mechanism. *See* 29 C.F.R. § 101.14. ("[T]he respondent or any person aggrieved by a final order of the Board may petition the circuit court of appeals to review and set

15

aside the Board's order.").

But in April 2023, the Supreme Court opened a new path. In *Axon*, the Court held that district courts have jurisdiction to hear parties' collateral constitutional challenges to ongoing administrative enforcement proceedings against them where (as here) the challenge is to the very nature and existence of the proceeding itself. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 195 (2023). The Court held that, for such "fundamental" and "existential" constitutional claims—that is, for challenges to "constitutional authority of the agency to proceed"—parties need not wait until the administrative proceedings conclude to seek judicial review under "well-trod" statutory schemes. *Id.* at 180. As the Court reasoned, the injury of "being subjected to unconstitutional agency authority" is a "here-and-now injury" that is "impossible to remedy once the proceeding is over," because "a proceeding that has already happened cannot be undone." *Id.* at 191.

Consequently, on June 12, 2023—soon after *Axon*, and before the NLRB proceedings were to resume after being paused—Care One filed an action in the U.S. District Court for the District of New Jersey seeking injunctive and

16

declaratory relief on the two constitutional grounds discussed above. *See* Compl., *Care One, LLC v. NLRB*, No. 23 Civ. 3221, Doc. 1 (D.N.J. June 20, 2023). That court transferred the action to the U.S. District Court for the District of Connecticut. *See* Transfer Order, *id.*, Doc. 30 (D.N.J. June 23, 2023).[2]

Critically for this appeal, alongside Care One's complaint, Care One applied for emergency relief in the form of a temporary restraining order and a preliminary injunction. While the complaint sought permanent injunctive and declaratory relief, including an order enjoining the NLRB from administering the proceedings and nullifying the proceedings as unconstitutional, the application for emergency relief did not seek such a full remedy. [Compl. at 25.] Instead, consistent with typical practice in federal court, Care One sought a preliminary injunction to ***pause*** the NLRB

---

[2] That transfer order was based on a related action pending in the District of Connecticut: in 2013, the NLRB had sought to hold Care One in contempt for allegedly violating an order enjoining it from committing unfair labor practices; that motion was granted but held in abeyance pending the NLRB's appeal from the bankruptcy plan discussed above. *See* Pet., *Kreisberg v. Healthbridge Mgmt., LLC*, No. 12 Civ. 1299, Doc. 58 (D. Conn. May 30, 2013).

proceedings pending full litigation in the district court. The application states: "Plaintiffs hereby submit this Application for Emergency Relief temporarily restraining and *preliminarily* enjoining Defendants from investigating, pursuing, or otherwise prosecuting claims in, continuing the proceedings in, National Labor Relations Board ('NLRB') Case Nos. 34-CA-070823, 34-CA-072875, 34-CA-075226, 34-CA-083335, 34-CA-084717, and 01-CA-096349 pending before the NLRB." [Doc. 47 at 2 (emphasis added).] Care One's supporting memorandum of law confirms the limited nature of this request. [Doc. 47-1 at 24 ("There is no colorable argument that defendants would suffer material harm from injunctive relief staying the NLRB Proceedings, let alone any harm outweighing the harm suffered by plaintiffs, while this Court decides plaintiffs' constitutional claims.").]

On October 20, 2023, the district court denied Care One's motion for a preliminary injunction. Of the three preliminary-injunction factors—likelihood of success on the merits, irreparable harm, and the public interest—the court evaluated only the first. [Doc. 71 (Order) at 3 n.2 ("I do not address the issue of irreparable harm.").] On the merits factor, the court

18

held that it would require Care One to show that it was "clearly likely" to succeed on the merits, rather than "likely" to succeed on the merits, on two independent grounds. First, the court held that Care One was seeking an injunction that would "halt[] and nullify[] the hearing before ALJ Chu," "render null and void all that has transpired during the hearing before ALJ Chu," and "require the NLRB to either start over or abandon the enforcement action." [Order at 7.] Second, the court held that this higher burden was necessary because Care One was seeking an injunction that would affect government action taken in the public interest pursuant to a statutory or regulatory scheme. [Order at 6.]

Then, in applying the clear-likelihood standard to the removal-power claim, the court engaged in no reasoning and rendered no factual findings or legal conclusions. Instead, the court identified the parties' positions in three cursory sentences; stated "I agree" with the NLRB's position, without offering any explanation why; noted a circuit split on the issue; and concluded: "The Supreme Court has granted certiorari in *Jarkesy* to resolve this conflict. The Court might affirm the Fifth Circuit's decision, but it is not

clearly likely that it will do so." [Order at 10.]

This appeal followed.

## SUMMARY OF ARGUMENT

Care One seeks a preliminary injunction to pause the NLRB's proceedings against it on the ground that the proceedings are unconstitutional in two respects. First, the ALJ presiding over the proceedings is unconstitutionally protected from the President's power to remove inferior executive officers. Second, that ALJ was unconstitutionally appointed to his position by a Board that lacked a constitutional quorum. Pausing the proceedings not only enables Care One to avoid the irreparable harm of being subjected to an unconstitutional government authority, but it allows for meaningful judicial review of the constitutional claims before the proceedings conclude and the claims are mooted. If such full adjudication reveals that the claims lack merit, the NLRB will resume the proceedings. Thus, while Care One acknowledges that a preliminary injunction is a drastic remedy, this particular injunction's costs are minimal.

In denying Care One's application, the district court failed to

20

understand the modest nature of Care One's request. Indeed, the court misconstrued both Care One's application and the relevant case law. This Court should vacate the denial as an abuse of discretion.

*First*, the district court abused its discretion in denying Care One's motion because it erroneously required Care One to show a clear likelihood of success on the merits of its constitutional claims, rather than a likelihood of success. That holding was predicated on two flawed grounds. For one, the district court conflated the request for permanent injunctive and declaratory relief in Care One's complaint with the request for preliminary injunctive relief in Care One's application for a preliminary injunction. Care One's complaint requests that the district court permanently enjoin and invalidate the NLRB proceedings against it and declare that the proceedings are unconstitutional. But Care One's motion for a preliminary injunction requests only that the court pause the NLRB proceedings pending full judicial adjudication of Care One's constitutional claims. If Care One had sought permanent injunctive relief in its application for a preliminary injunction, then the court would have been correct to hold Care One to the

clear-likelihood standard. That standard may apply when granting a preliminary injunction would afford the plaintiff all the relief that is sought in the action. *See, e.g.*, *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006). But Care One did not make such a request in its application.

Although the court offered an alternative ground for imposing the clear-likelihood standard, that ground, too, was indisputably baseless. The court concluded that, because Care One was seeking to preliminarily enjoin government action taken in the public interest pursuant to a statutory or regulatory scheme, the clear-likelihood standard applied. But this Court has repeatedly held that when the moving party seeks a preliminary injunction that will affect "government action taken in the public interest pursuant to a statutory or regulatory scheme," that party must show "a likelihood of success on the merits" rather than the less "rigorous" alternative: "sufficiently serious questions going to the merits to make them a fair ground for litigation" and "a balance of hardships tipping decidedly in the movant's favor." *See, e.g.*, *Connecticut State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022) (citations and punctuation omitted).

22

To be sure, if Care One had sought a mandatory preliminary injunction, then under this Court's precedent, that request would have been a valid reason to impose a clear-likelihood standard. But Care One seeks a prohibitory preliminary injunction, which triggers the likelihood standard. This Court defines, as mandatory, a preliminary injunction that commands a positive act and alters the status quo ante, *i.e.*, the last actual, peaceable uncontested status which preceded the pending controversy. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37, 38 (2d Cir. 2018). Here, the status quo ante was the period before the NLRB commenced administrative proceedings against Care One. From the proceedings' commencement onward, the relationship between the parties has been adversarial and contested—far from peaceable. So, although Care One's requested injunction seeks to alter the currently existing status between the parties, the injunction is prohibitory because it would prohibit government action (*i.e.*, NLRB's continuing its administrative proceedings), would not command the NLRB to perform any particular positive act, and would

23

restore but not alter the status quo ante (*i.e.*, the relationship that predated the administrative proceedings).

Construing Care One's request as prohibitory harmonizes with the principles that animate this Court's analytical framework for categorizing preliminary injunctions. Mandatory preliminary injunctions warrant a clear-likelihood standard because improvidently granting them, and unwinding the positive acts that the nonmovant was commanded to perform, can be complex and costly. The merits bar is high for good reason. But improvidently granting Care One its preliminary injunction would mean only that the NLRB proceedings were paused—for yet another discrete time period. If full adjudication reveals that Care One's claims lack merit, the NLRB proceedings will pick up where they left off. On the credit side, moreover, Care One's claims—which implicate such vital issues as our Constitution's structure and the balance of power between the administrative state and individual liberty—would receive comprehensive and timely judicial review while mitigating the risk that the administrative proceedings will conclude and moot the claims.

*Second*, the district court abused its discretion when it denied Care One's preliminary injunction on the Article II removal-power claim without conducting any analysis. Of the three preliminary-injunction factors, the court did not evaluate the irreparable-harm or public-interest factors. For the merits factor, the court described the parties' positions in three sentences; stated "I agree" with the NLRB's position; identified a circuit split on the removal-power issue that the Supreme Court in *SEC v. Jarkesy*, No. 22-859, had granted certiorari to resolve; and presumed that, because the Supreme Court was not "clearly likely" to affirm Care One's position, Care One was not entitled to a preliminary injunction. That analysis is inadequate under Federal Rule of Civil Procedure 52(a)(2), which requires courts to render factual findings and legal conclusions when they deny interim relief.

*Third*, and finally, this Court can and should hold, on this record, that Care One is entitled to a preliminary injunction. As for the merits, Care One will prevail on its constitutional claims. As for irreparable harm, the Supreme Court's decision in *Axon* makes clear that the injury of "being subjected to unconstitutional agency authority"—a "proceeding by an

25

unaccountable ALJ"—is a "here-and-now injury" that is "impossible to remedy" later because a "proceeding that has already happened cannot be undone." *Axon Enter. v. FTC*, 598 U.S. 175, 191 (2023). That is the definition of irreparable harm. As for the public interest, unconstitutional agency action does not serve the public, and the preliminary injunction itself would not harm the government: it would only pause the proceedings to afford time for meaningful judicial adjudication of Care One's constitutional claims.

## STANDARD OF REVIEW

This Court reviews the decision to deny a preliminary injunction for abuse of discretion. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 88 (2d Cir. 2006). A district court abuses its discretion when its decision "rests on an error of law," such as "application of the wrong legal principle." *Id.*

## ARGUMENT

## THIS COURT SHOULD VACATE THE DENIAL OF THE PRELIMINARY INJUNCTION

**I.    The District Court Abused Its Discretion by Requiring Care One to Show a Clear Likelihood of Success on the Merits.**

In denying Care One's motion for a preliminary injunction, the district court abused its discretion because it applied the wrong standard. According to the court, two independent grounds compelled Care One to show that it was *clearly likely* to succeed on the merits. But the court was glaringly incorrect on both grounds. The standard, properly applied, required Care One to show only that it was *likely* to succeed on the merits. The court's denial was therefore erroneous and should be vacated.

**A.    The Court Conflated the Relief Requested in the Action with the Relief Requested in the Preliminary Application.**

According to the district court, Care One's requested preliminary injunction would "turn back the clock for a decade, render null and void all that has transpired during the hearing before ALJ Chu, and require the NLRB to either start over or abandon the enforcement action." [Order at 7.]

27

From that premise, the court concluded: "In these circumstances, plaintiffs are obliged to satisfy the heightened standard … ." [Order at 7.]

That interpretation of Care One's preliminary application is baseless. Care One seeks only to temporarily halt the NLRB's administrative proceedings while the parties litigate Care One's constitutional claims in the district court. As Care One's application for preliminary injunctive relief stated: "Plaintiffs hereby submit this Application for Emergency Relief temporarily restraining and preliminarily enjoining Defendants from investigating, pursuing, or otherwise prosecuting claims in, or continuing the proceedings in, National Labor Relations Board ("NLRB") Case Nos. 34-CA-070823, 34-CA-072875, 34-CA-075226, 34-CA-083335, 34-CA-084717, and 01-CA-096349 pending before the NLRB." [Doc. 47 at 2.] If this application is granted and Care One does not prevail in the full litigation in the district court, then the preliminary injunction will dissolve and the NLRB's administrative proceedings will resume. The requested preliminary injunction could not, as the district court assumed, nullify all the administrative proceedings to date.

28

The district court conflated the requested relief in Care One's preliminary application (*i.e.*, a temporary halt of the administrative proceedings) with the requested relief in Care One's action (*i.e.*, permanent injunctive relief and a declaratory judgment). [*Compare* Compl. at 25, *with* Doc. 47 at 2.] If Care One were seeking permanent injunctive relief in its preliminary application, then it would make sense to require Care One to demonstrate a clear likelihood of success. As this Court has sensibly held, a "clear" or "substantial" likelihood standard may apply when granting the preliminary injunction would afford the plaintiff "all the relief that is sought" in the action. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006). But Care One's application for a preliminary junction did not request such full relief. Quite the contrary, Care One's application requested standard and unremarkable preliminary injunctive fare: to preliminarily pause the NLRB administrative proceedings pending litigation in the district court on the constitutional claims.

### B. The Court Was Wrong That Preliminarily Enjoining Government Action Requires a Clear Likelihood of Success.

The district court was equally wrong to hold that a separate and

independent reason compelled Care One to show that it was *clearly likely* to succeed on the merits, as opposed to merely *likely*. The district court read this Court's case law as standing for the proposition that, "because the requested injunction would affect government action taken in the public interest pursuant to a statutory or regulatory scheme," Care One was required to demonstrate that it was clearly likely to succeed. [Order at 6.] But the court misread this Court's precedent. This Court has repeatedly held that, when the moving party seeks a preliminary injunction that will affect "government action taken in the public interest pursuant to a statutory or regulatory scheme," that party must show "a likelihood of success on the merits" rather than the less "rigorous" alternative: "sufficiently serious questions going to the merits to make them a fair ground for litigation" and a "balance of hardships tipping decidedly in the movant's favor."[3] *See*

---

[3] Certain decisions from this Court misread *Wright*, where this Court held that the government-action aspect of the case raised the standard from the "serious-question" test to the "likelihood" test, and further held that the movant in that case needed to show a clear likelihood of success because it was seeking a mandatory preliminary injunction. *Compare Wright*, 230 F.3d at 547, *with Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008),

*Connecticut State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022) (citation and punctuation omitted)*; accord Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000).

## C. Care One Seeks a Prohibitory Injunction, Which Triggers a Likelihood Standard.

Care One acknowledges that, under this Court's precedent, seeking a mandatory preliminary injunction would require it to show a clear likelihood of success. But Care One seeks only prohibitory relief.

As this Court has explained, although the "typical preliminary injunction is prohibitory" and triggers either the serious-question or likelihood standard, two exceptional types of injunctions trigger a "clear" or "substantial" likelihood standard. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). First, as noted, that extra-heightened standard applies when granting the injunction would afford the movant all the relief it seeks in the action. *Id. S*econd, that extra-heighted standard applies when

---

*and Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007). But this Court's more recent decisions—e.g., *Rovella*, *Kane*—have corrected the misreading.

the movant seeks a "mandatory preliminary injunction," which this Court defines as an injunction that "alter[s] the status quo by commanding some positive act." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *accord Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997). "The[] equitable cousins"—mandatory and prohibitory injunctions—"have been differentiated by examining whether the non-moving party is being ordered to perform an act, or refrain from performing." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on other grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) ("A prohibitory injunction is one that 'forbids or restrains an act.'"). In this circuit, moreover, the "status quo" in the preliminary-injunction context is a term of art that references the "status quo ante"—that is, the "last actual, peaceable uncontested status which preceded the pending controversy," or the "parties' pre-controversy position vis-à-vis the other." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37, 38 (2d Cir. 2018).

Here, Care One does not seek an order commanding the NLRB to

32

perform any particular positive act. Rather, Care One seeks an order directing the NLRB to refrain from performing an act—specifically, an order directing the NLRB to refrain from continuing its administrative proceedings against Care One. In addition, that order would restore, and not alter, the last "peaceable," "uncontested," and "pre-controversy" status between the parties, which was the time before the NLRB commenced its administrative proceedings against Care One. Therefore, Care One seeks a prohibitory injunction, not a mandatory injunction.

In the branch of the district court's order where it erroneously concluded that Care One's motion for a preliminary injunction sought to nullify the NLRB's administrative proceedings, the court suggested that Care One was seeking a mandatory injunction, without employing that terminology: "The requested injunction would dramatically alter, rather than simply maintain, the currently existing state of affairs between the parties by halting and nullifying the hearing before ALJ Chu." [Order at 7.] Even if this Court were to charitably review that holding and ignore the district court's groundless reference to nullification, the district court's

33

reasoning would remain off the mark. The district court presumed that the relevant status quo is the "currently existing state of affairs between the parties." [Order at 7.] That presumption's source was a dictionary definition for "status quo." [Order at 7.] In this circuit, however, the district courts have been directed to dispense with that dictionary definition. The question is not whether the injunction will alter the "currently existing state of affairs." Rather, the question is whether the injunction will alter the status quo ante by commanding a positive act. Care One's requested injunction will not.

This Court's decision is *Mastrovincenzo* is instructive. There, street vendors of graffiti-adorned clothing challenged New York City's enforcement of licensing requirements against them (on the theory that their clothing was artistic expression under the First Amendment). *Mastrovincenzo v. City of New York*, 435 F.3d 78, 81 (2d Cir. 2006). Although the City contended that its "regular and consistent" practice of enforcing the requirements against such vendors rendered the injunction mandatory, this Court rejected that contention, instead holding that the injunction was prohibitory because it "prohibit[ed], rather than compel[led], government

action," and did not "command the [City] to perform any specific tasks." *Id.*

at 90. Similarly, in *Field Day*, this Court deemed prohibitory a preliminary

injunction to enjoin public officials from enforcing mass-gathering laws

against concert promoters who intended to hold a festival in a public park:

"The injunction at issue in the case at bar is clearly a prohibitory preliminary

injunction—it stays government action taken in the public interest pursuant

to a statutory or regulatory scheme." *Field Day, LLC v. Cnty. of Suffolk*, 463

F.3d 167, 181 (2d Cir. 2006) (punctuation omitted); *see also Innovative Health*

*Sys., Inc. v. City of White Plains*, 117 F.3d 37, 43 (2d Cir. 1997) (affirming

district court's prohibitory determination for injunction that sought to

"prohibit[] the City from interfering with [drug-rehab] program's relocation

rather than requiring the City to perform an affirmative act"), *superseded on*

*other grounds by rule as stated in Noel v. New York City Taxi & Limousine*

*Comm'n*, 687 F.3d 63 (2d Cir. 2012); *Phillip v. Fairfield Univ.*, 118 F.3d 131 (2d

Cir. 1997) (construing an injunction as prohibitory because it "restrain[ed]

the NCAA from acting affirmatively to interfere with Fairfield's decision to

award plaintiff a scholarship and to allow him to play basketball"); *cf. Wages*

& *White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1143–44 (5th Cir. 2021) (characterizing requested relief as seeking to "reserve the *status quo ante*," because "'the relief sought here would simply suspend *administrative* alteration of the *status quo*'") (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009)). So too here, even though Care One's requested injunction seeks to alter the current status between the parties, the injunction is prohibitory because it would prohibit government action (*i.e.*, NLRB's continuing its proceedings), would not command the NLRB to perform any particular positive act, and would restore rather than alter the status quo ante (*i.e.*, the relationship that predated the proceedings).

The duration of the parties' current relationship should not cast doubt on this conclusion. "This special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *N. Am. Soccer*, 883 F.3d at 37 n.5. Because the NLRB's constitutional wrongdoing precipitated the current relationship between the parties, the pending unconstitutional proceeding does not define the status quo ante and should not elevate Care One's merits

burden, even if this relationship has been in place for several years. Further, several years passed between the status quo ante and this suit only because it was not until *Axon* that the Supreme Court paved the way for collateral judicial challenges to ongoing administrative proceedings on structural constitutional grounds. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 180 (2023). Finally, despite its duration, the current relationship does not satisfy this Court's definition of status quo ante: since the administrative proceedings' inception, Care One has consistently "contested" them in the administrative tribunal, and they have been intensely adversarial, not "peaceable." So, even if halting the proceedings were an affirmative act (and it is not), the injunction here would not be mandatory, as it would restore, and not alter, the "last actual, peaceable uncontested status which preceded the pending controversy," and the "parties' pre-controversy position vis-à-vis the other." *See N. Am. Soccer,* 883 F.3d at 37, 38.

Construing Care One's requested injunction as prohibitory, rather than as mandatory, comports with the principal rationale for preliminary injunctive relief: "to preserve the court's power to render a meaningful

37

decision after a trial on the merits," *see Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) (citation and punctuation omitted), and "to prevent the judicial process from being rendered futile by defendant's action or refusal to act," *see* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2947 (3d ed. Apr. 2023 update). As Wright, Miller & Kane further note: "[I]f interlocutory relief would best preserve the court's power to decide the case at trial and award effective relief, without imposing an excessive burden on defendant, no arbitrary rule should be allowed to restrict the court's discretion to issue a preliminary injunction." *Id*. § 2948.2.

In light of that well-established purpose, there is no basis here to treat the requested preliminary injunction as mandatory and run the elevated risk that a clear-likelihood standard poses—namely, the elevated risk of denying preliminary injunctive relief for merits-related reasons even though the claims are objectively meritorious. If preliminary injunctive relief is withheld because Care One's objectively meritorious claims cannot pass through the clearly-likely gate, the administrative proceedings will continue. As a result, Care One will not only continue to suffer the irreparable harm of being

subjected to an illegitimate decision-maker, but the administrative proceedings may conclude before judicial relief is granted at the trial or appellate levels, thereby rendering the judicial proceedings futile. *See* Kevin J. Lynch, *Preliminary Injunctions in Public Law: The Merits*, 60 Hous. L. Rev. 1067, 1109 (2023) (observing that, because the merits "are often covered in a fog of litigation at the outset of a case," a "more flexible standard on the merits will allow closer cases to proceed, where the absence of a preliminary injunction might make the claims moot"). Pausing the administrative proceedings for the time being, however, would afford time for comprehensive and timely judicial review of the claims. Even if it turns out, after the full judicial adjudication, that the claims lack merit, the preliminary injunction's cost to the NLRB would not be excessive: the administrative proceedings would pick up where they left off.[4] *See Free the Nipple-Fort*

---

[4] As of the date of this filing, the NLRB administrative proceedings have entered a new phase. Hearing dates before ALJ Chu have concluded, and the record of the proceedings was ordered closed on December 1, 2023. The parties are due to file post-hearing briefing on January 19, 2024. These developments have further reduced the burden on the government of

*Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) ("[W]e probably *can* put the toothpaste back in the tube—if the plaintiffs lose on the merits after a trial, then [the city] may fully enforce [the regulation].").

In contrast, when a movant seeks a mandatory preliminary injunction, the clear-likelihood standard serves an important gatekeeping function, and it is worth running the risk that objectively meritorious claims might fail to surmount the high preliminary threshold. That is because the costs and difficulties associated with undoing affirmative acts are substantial—for the parties and for the court. *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) ("A heightened standard is imposed in such circumstances, in part, because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them."); *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990) ("Like any litigant, the Commission should be obliged to make a more persuasive showing of its entitlement to a preliminary injunction the more onerous are the burdens of the injunction it seeks."); *O*

---

preliminarily enjoining the proceedings. A pause would not interrupt the government's presentation of its case, for example.

*Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 979 (10th Cir. 2004) (Murphy, J., concurring in part and dissenting in part) (noting that mandatory injunctions "affirmatively require the nonmovant to act in a particular way, and as a result they place the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction") (citation and punctuation omitted).

To illustrate: in *Nicholson*, parents who were victims of domestic violence sought a preliminary injunction to force the New York City Administration for Children's Services to return children who had been removed from home based on allegedly unfair child-neglect determinations. *Nicholson v. Scoppetta*, 344 F.3d 154, 158 (2d Cir. 2003). In *Cacchillo*, a patient sought a preliminary injunction to force a drug manufacturer to let her resume clinical-trial drug therapy after the trial had ended. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). And in *Almontaser*, a terminated school employee sought a preliminary injunction to force the New York City Department of Education to give her an interview for a principal position that had already been filled. *Almontaser v. New York City Dep't of Educ.*, 519

F.3d 505, 508 (2d Cir. 2008). In each case, the rationale for construing the requested injunctions as mandatory and imposing a clear-likelihood standard was clear: undoing the preliminary injunctive relief would be a complex ordeal. Not so here. This Court should construe Care One's requested preliminary injunction as prohibitory, not mandatory.[5]

Overall, because the district court denied Care One's motion on the sole basis that Care One's claims were not clearly likely to succeed on the merits, and because that denial resulted from the court's applying an

---

[5] To the extent this Court considers this issue a close call, this Court should recognize a presumption for the default "likely" standard over the exceptional "clearly likely" standard. *See* Thomas R. Lee, *Preliminary Injunctions and the Status Quo*, 58 Wash. & Lee L. Rev. 109, 147 (2001) (arguing that this Court's rule that mandatory injunctions trigger a clear-likelihood requirement "appears to be traceable not to any purportedly longstanding precedent, but to the court's misapplication of its own decisions"). The rule was pronounced in *Flintkote Co. v. Blumenthal*, 469 F. Supp. 115, 125–26 (N.D.N.Y. 1979), which cited *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441 & n.3 (2d Cir. 1977). But *Flintkote* misread *Jacobson*, which had held only that courts should be "reluctant" to issue mandatory preliminary injunctions—not that such injunctions require a clear likelihood of success. *See id. Flintkote*'s misreading was adopted in *Abdul Wali*, 754 F.2d at 1025.

erroneous standard, the denial constituted an abuse of discretion, warranting vacatur.

## II.    The District Court Abused Its Discretion by Failing to Explain Its Reasoning.

The district court also abused its discretion by failing to explain its reasoning for denying Care One's motion for a preliminary injunction as to the removal-power claim. Under Rule 52(a)(2), a district court that refuses an interlocutory injunction must "state the findings and conclusion that supports its action." Fed. R. Civ. P. 52(a)(2). "In other words, it must explain its decision," because "a district court cannot decide whether a plaintiff has satisfied *Winter* behind the curtain." *Frazier v. Prince George's Cnty., Maryland*, 86 F.4th 537, 544 (4th Cir. 2023); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008) (criticizing lower court for addressing preliminary-injunction factors "in only a cursory fashion"). If the district court fails to satisfy this requirement, this Court's "normal practice is to vacate the order and remand for specific findings." *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 223 (2d Cir. 1995).

Here, the district court's opinion contained no analysis whatsoever on

43

the irreparable-harm or public-interest factors. [Order at 3 n.2.] The court instead confined its analysis to the merits factor. But as to the merits of Care One's Article II removal-power claim, the court identified Care One's position in two sentences that missed the essential points of the argument; identified the NLRB's position in one cursory sentence (*i.e.*, "The NLRB contends that the decision in *Free Enterprise* does not make it clearly likely that plaintiffs will succeed on this claim."); and stated after the latter sentence: "I agree." [Order at 10.] The court then identified a circuit split and observed: "The Supreme Court has granted certiorari in *Jarkesy* to resolve this conflict. The Court might affirm the Fifth Circuit's decision, but it is not clearly likely that it will do so." [Order at 10.] But identifying a circuit split, observing in conclusory fashion that the Supreme Court is not "clearly likely" to affirm the movant's position, and merely saying "I agree" with the non-movant does not satisfy Rule 52(a)(2). The district court's failure to specify any findings or conclusions, and its failure to adequately analyze the parties' respective positions on the merits, constitutes an abuse of discretion. *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 223–24 (2d Cir. 1995)

(vacating denial of preliminary injunction for failing to satisfy Rule 52(a): "An assumption cannot pass for a factual finding."); *Frazier v. Prince George's Cnty., Maryland*, 86 F.4th 537, 544 (4th Cir. 2023) (same: "Rule 52(a)(2) is meant to save us and litigants from having to play detective when it comes to orders granting or denying preliminary injunctions. Thus, when issuing those orders, a district court must comply with the Rule by stating its factual findings and legal conclusions. And it errs when it fails to do so."); *A.W. Indus., Inc. v. Elec. Connector Serv., Inc.*, 129 F.3d 132 (Fed. Cir. 1997) (same: "[T]he district court failed to explain why AWI had not established a reasonable likelihood of success on the issue of infringement or that AWI had not demonstrated irreparable injury."); *Heineke v. Santa Clara Univ.*, 736 F. App'x 622, 625 (9th Cir. 2018) (same: "On remand, the district court is therefore instructed to complete a full analysis of the preliminary injunction factors."); *Aid for Women v. Foulston*, 441 F.3d 1101, 1121 (10th Cir. 2006) (vacating preliminary injunction because district court "abused its discretion by failing to adequately analyze the additional three preliminary injunction factors" besides merits).

This requirement—that district courts set forth their reasons for denying interim injunctive relief—is important to enable this Court to provide meaningful appellate review. *See N.A.A.C.P.*, 70 F.3d at 223. The Supreme Court has warned: "It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a)." *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316 (1940). But the requirement also reflects a more fundamental principle: reason-giving is an essential element of civil justice. "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable." *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The need for an explanation is especially acute where, as here, denying interim relief would irreparably harm the movants and risk mooting constitutional claims.

III. **This Court Should Hold That Care One Is Entitled to Preliminary Injunctive Relief.**

In addition to vacating the district court's denial, this Court should hold that Care One is entitled to a preliminary injunction.

A. **Care One Will Succeed on the Merits of Its Claims.**

1. **The dual for-cause removal protections for NLRB ALJs are unconstitutional.**

ALJ Chu is unconstitutionally shielded from the President's Article II power to remove inferior officers. NLRB ALJs such as ALJ Chu have for-cause protection from removal by MSPB members, *see* 5 U.S.C. §§ 7521(a)–(b), who have for-cause protection from removal by the President, *see* 5 U.S.C. § 1202(d). This structure's unconstitutionality follows from the reasoning of *Free Enterprise Fund*, which held that PCAOB members were unconstitutionally shielded from the President's power to remove because they could be removed only for cause by SEC Commissioners, who themselves could be removed only for cause by the President. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 496 (2010).

Although *Free Enterprise Fund* reserved the question whether its

holding extended to ALJs, *see* 561 U.S. at 507 n.10, the Supreme Court has granted certiorari to the Fifth Circuit to resolve the constitutionality of dual for-cause removal protections for SEC ALJs. The Fifth Circuit had determined that such protections were unconstitutional. *See Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted sub nom.*, *SEC v. Jarkesy*, No. 22-859, 2023 WL 4278448 (June 30, 2023). For removal-power purposes, SEC ALJs and NLRB ALJs are indistinguishable.

Several considerations support the conclusion that dual for-cause removal protections for ALJs are, in fact, unconstitutional—and that the Supreme Court will correspondingly affirm the Fifth Circuit in *Jarkesy*.

**a.** While *Free Enterprise Fund* noted that whether ALJs are inferior officers under Article II was "disputed," *see* 561 U.S. at 507 n.10, the Supreme Court has since answered that question. In *Lucia*, the Court held that SEC ALJs are "Officers" under the Appointments Clause because they "hold a continuing office established by law," exercise "significant discretion" under the laws of the United States, and "have all the authority needed to ensure fair and orderly adversarial hearings." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053

(2018). That reasoning applies to NLRB ALJs. In fact, the NLRB itself had acknowledged that its ALJs are inferior officers. *Westrock Servs., Inc. & Graphic Commc'ns Conf. of the Int'l Bhd. of Teamsters, Loc. 197-M*, 366 NLRB No. 157, 2018 WL 3738342, at *1 & n.1 (N.L.R.B. Aug. 6, 2018).

**b.** As a matter of constitutional text, structure, and original understanding, the Vesting and Take Care Clauses grant the President a nearly absolute power to remove and thereby control subordinates. *See* Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756, 1761 (2023) (tracing framers' and founding-era attitudes on the executive power of removal); Steven G. Calabresi & Kevin H. Rhodes, *The Structural Constitution: Unitary Executive, Plural Judiciary*, 105 Harv. L Rev. 1153, 1165–68 (1992) (outlining the unitary executive principle of Article II); Br. of Constitutional Originalists Edwin Meese III, Steven G. Calabresi, and Garry S. Lawson as Amicus Curiae in Support of Respondents, *SEC v. Jarkesy*, No. 22-859, 2023 WL 6974396, at *20 (U.S.) (tracing colonial practice on the executive power of removal). As James Madison put the point, the executive power necessarily encompasses "the

power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong. 463 (1789). And as Chief Justice Taft later reaffirmed, the President's power to control encompasses the power to remove—even over executive officers who have "duties of a quasi judicial character," such as "members of executive tribunals whose decisions after hearing affect interests of individuals." *Myers v. United States*, 272 U.S. 52, 135 (1926). In fact, according to Taft, *not* exercising the executive power of removal over such a subordinate violates Article II: "Otherwise [the President] does not discharge [the President's] own constitutional duty of seeing that the laws be faithfully executed." *Id.*

**c.** The Supreme Court has confirmed that there are "only two exceptions to the President's unrestricted removal power." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020). Because these two exceptions are "the outermost constitutional limits of permissible congressional restrictions on the President's removal power," *see id.* at 2199–2200, if an officer does not squarely fall within either of these two exceptions, the plenary removal power should apply. The first exception is for principal officers: Congress

50

may restrict the executive removal power only for those principal officers who head "multimember expert agencies that do not wield substantial executive power." *Id*. at 2199–2200; *see Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935) (upholding restriction on removal power over commissioners on five-member FTC that exercised "no part of the executive power"); *Wiener v. United States*, 357 U.S. 349, 350, 354–56 (1958) (upholding restriction on removal power over War Claims Commission). This first exception is inapplicable here because ALJs are inferior officers.

The second exception to the President's plenary power to remove, as outlined in *Seila Law*, is for inferior officers: Congress may restrict the executive removal power only for inferior officers "with limited duties and no policymaking or administrative authority." 140 S. Ct. at 2200. *Seila Law* specified the only two cases that fall within this exception. In *Perkins*, the Court upheld a restriction on the Secretary of the Navy's power to discharge a low-ranking cadet without finding misconduct. *United States v. Perkins*, 116 U.S. 483, 485 (1886). In *Morrison*, the Court upheld a for-cause restriction on the Attorney General's power to remove an independent counsel appointed

51

to investigate and prosecute crimes by public officials. *Morrison v. Olson*, 487 U.S. 654, 692 (1988).

This second exception does not apply here, either. Since the Court views the above two types of inferior officers as the only ones to whom removal protections have applied—and neither of them enjoyed two-layer, for-cause protection—there is no reason to conclude that the Court would apply these cases to ALJs. Whatever else ALJs are, they are nothing like navy cadets, and their powers are far more expansive than the narrow and temporary powers of an independent counsel.

**d.** ALJs have substantial policymaking authority: their adjudications give content to executive policy. As the federal government once urged: "ALJs determine, on a case-by-case basis, the policy of an executive branch agency." *See* Secretary of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8, 15 (1991). They "fill statutory and regulatory interstices comprehensively with [their] own policy judgments." *Id.* at 14; *see NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 292–94 (1974) (observing that agencies may use adjudications to formulate "agency policies" and "promulgate a new standard" to "govern

52

future conduct"). As Judge Rao illustrated in *Fleming*:

> If the Secretary disagrees with an ALJ's policy preferences—for instance, if he thinks the ALJ routinely imposes overly harsh, or insufficiently harsh, penalties—the double layer of for-cause removal protection means that the Secretary has virtually no power to remove the ALJ and replace him with an officer willing to carry out the administration's policy preferences.

*Fleming v. United States Dep't of Agric.*, 987 F.3d 1093, 1121 (D.C. Cir. 2021) (Rao, J., concurring in part, dissenting in part). For Presidents to perform their jobs, they must possess the plenary power to remove and thereby control ALJs so as to advance particular executive policies and promote a coherent executive vision.

NLRB ALJs, in particular, wield significant executive policymaking authority. Indeed, the powers of the NLRB's ALJs are "sufficiently important to executing the laws" that they cannot be protected from removal without violating Article II. *See Jarkesy*, 34 F.4th at 464 (describing comparable powers of SEC ALJs); *see also K & R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023) (describing comparable powers of Department of Labor ALJs). Not only do NLRB ALJs, in adjudicating cases, rule on and interpret the law, but they rule on motions, examine and cross-examine witnesses, receive

53

evidence, admit or exclude evidence, decide whether documents are authentic, regulate the course of the public hearing, take judicial notice, hear oral argument on facts and law, limit the number of times a witness can testify, limit cross examination, prevent undue prolongation of the hearing, debar disruptive counsel or party representatives, administer oaths, and receive offers of proof. 29 C.F.R. §§ 102.35(a)(1)-(13); 29 C.F.R. § 102.34; NLRB ALJ Bench Book (April 2023) §§ 2–300, 16–611.2, 16–900-901.5, 16–201.3. They also receive career appointments to a position created by statute. 5 C.F.R § 930.240(a); 5 U.S.C. §§ 556–557, 5372, 3105. Though NLRB ALJs' decisions may not become binding without review and implementation by the NLRB, their decisions and the voluminous record they control are presented to the NLRB and become the basis for any final agency decision.

**e.** As *Free Enterprise Fund* warned: "The growth of the Executive Branch, which now wields vast power and touches almost every aspect of daily life, heightens the concern that it may slip from the Executive's control, and thus from that of the people." 561 U.S. at 499. Making sure that ALJs are accountable to the President—and thus to the public—is especially

important because their decisions can have a powerful impact on the lives, liberty, and property of private citizens.

**f.** The reasoning of the two appellate courts that have departed from the Fifth Circuit in *Jarkesy* is unpersuasive. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021); *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022). While those decisions focus on the long history of adjudication by ALJs, the above analysis shows why that history does not entail that ALJs are not inferior executive officers accountable to the President: ALJ adjudications are exercises of executive power.

## 2. ALJ Chu's unconstitutional appointment tainted the proceedings.

In 2014, the Supreme Court held that President Obama's recess appointments of three NLRB members in January 2012 were unconstitutional. *Noel Canning*, 573 U.S. 513, 521 (2014). Then, in 2018, the Supreme Court held that SEC ALJs are inferior "Officers of the United States" and must therefore be appointed in conformity with Article II. *Lucia*, 138 S. Ct. 2049. Under *Noel Canning* and *Lucia*, therefore, an unconstitutionally appointed Board appointed ALJ Chu in 2012, and he has

presided over the NLRB Proceedings filed by the NLRB General Counsel against Care One since then. [Compl. ¶¶ 45–47.] It follows that the entire NLRB proceedings have been tainted by those original unlawful appointments, subjecting Plaintiffs to continuous, unconstitutional proceedings since 2012. [Compl. ¶¶ 45–47.]

At least two post-*Noel Canning* decisions acknowledge that the 2012 recess appointments created constitutional infirmities that undermined the NLRB's decisions. *See NLRB v. New Vista Nursing & Rehab.*, 870 F.3d 113, 129 n.9 (3d Cir. 2017) (noting that a 2012 decision by a Board panel comprising members Hayes, Griffin, and Block "has likely been nullified by *Noel Canning*, as acknowledged by the Board"); *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 596 n.1 (3d Cir. 2016) (noting that the Board was not properly constituted until August 12, 2013, when three new members were sworn in, and thus "all NLRB decisions in the interim violated the quorum and three-member-composition requirements of 29 U.S.C. § 153(b)").

Granted, in 2014, the NLRB attempted to ratify all ALJ appointments during the period when the Board lacked a constitutional quorum. (*See* Doc.

47-6 (Montenegro Decl. Ex. D).) Under *Lucia*, however, that ratification is ineffective to cure the appointments violation.

In *Lucia*, the SEC ALJ who heard the petitioner's case had been selected only by the SEC's staff members, rather than by the SEC Commissioner, and thus had not been constitutionally appointed. 138 S. Ct. at 2050. Although the SEC had attempted to ratify the prior unconstitutional appointments of its ALJs, the Court held that the "appropriate remedy for an adjudication tainted with an appointments violation" was "a new hearing before a properly appointed official." *Id.* at 2055 & n.6 (citation and punctuation omitted). Further, that new hearing could not return to the original ALJ, because that ALJ could not be "expected to consider the matter as though he had not adjudicated it before." *Id.* "To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing." *Id.*; *see also Brooks v. Kijakazi*, 60 F.4th 735, 741–43 (4th Cir. 2023) (holding that an unconstitutionally appointed ALJ's decision fatally tainted the subsequent one, requiring a new proceeding before different ALJ); *Cody v. Kijakazi*, 48 F.4th 956, 960–62 (9th Cir. 2022) (same); *Sandell v. Kijakazi*, 2023 WL 6308050,

at *2 (E.D.N.Y. Sept. 28, 2023) (same).

Likewise here, despite the NLRB's 2014 attempted ratification, ALJ Chu's unconstitutional appointment tainted the proceedings, and *Lucia* mandates new proceedings before a new ALJ. Having considered this matter from an unconstitutional perspective, ALJ Chu cannot be expected to give this matter a fresh look as if he has never considered it before. In addition, even if the NLRB's 2014 ratification could be effective (and under *Lucia*, it is not), 39 days of hearings took place in the pre-ratification period from 2012 through 2014—which amounts to 84.8% of the 46 hearing dates as of this action's commencement. Thus, the vast bulk of the NLRB proceedings was overseen by an ALJ without constitutional authority. The only cure is a "new hearing" before "another ALJ." *See Lucia*, 138 S. Ct. at 2055.

Below, the court and the NLRB attempted to distinguish *Lucia* on the ground that, there, the ALJ had "heard and decided" the petitioner's case, *see id.*, whereas ALJ Chu here has not rendered a decision on the charges in the NLRB proceedings. The district court further remarked that, in its view, the evidentiary decisions that ALJ Chu had issued from 2012 to 2014 were

58

not significant enough in "shaping the record" to warrant a remedy. (*See* Order at 8.) But those purported distinctions find no support in *Lucia*—and, indeed, run directly counter to the Supreme Court's reasoning.

Throughout the proceedings, ALJ Chu has made judgments, weighed evidence, and assessed credibility—even when those internal judgments and assessments were not made known to the parties in oral or written decisions. Nothing in *Lucia* suggests that the rendering of a decision makes an appointments violation any less contaminating. Whether or not an ALJ has rendered a final decision, an appointments violation taints the hearing, and a new hearing before a new ALJ is required.

What is more, *Lucia* eschewed any inquiry into whether the appointments violation caused prejudice. The court below therefore had no basis to condition its finding of an appointments violation on whether ALJ Chu's evidentiary decisions from 2012 to 2014 had adequately shaped the record. (*See* Order at 8.) As the Ninth Circuit has explained, an appointments violation is "no mere technicality or quaint formality," but is rather an attack on "a key component of the Constitution's structural design"—thus, *Lucia*

59

"established remedies with bite," not only "to reinforce the 'structural purposes' of the Appointments Clause directly," but also "to 'create incentives to raise Appointments Clause challenges.'" *Cody*, 48 F.4th at 960–61 (quoting *Lucia*, 138 S. Ct. at 2055 n.5); *see Collins*, 141 S. Ct. at 1788 (emphasizing the severity of "a Government actor's exercise of power that the actor did not lawfully possess").

The extent to which ALJ Chu's evidentiary decisions may have shaped the record is thus irrelevant. Because he was unconstitutionally appointed, the appointments violation tainted the proceedings, and he cannot be expected to preside over the post-ratification proceedings as though he had never been presiding over the pre-ratification proceedings. The Appointments Clause demands a new hearing before a new ALJ.

**B. Care One Will Suffer Irreparable Harm Absent an Injunction.**

As noted, the district court did not address the irreparable-harm factor. [Order at 3 n.2.] Nonetheless, denying preliminary injunctive relief will irreparably harm Care One. The Supreme Court made clear in *Axon* that the injury of "being subjected to unconstitutional agency authority"—a

"proceeding by an unaccountable ALJ"—is a "here-and-now injury" that is "impossible to remedy" later. *Axon Enter. v. FTC*, 598 U.S. 175, 191 (2023) (citation and punctuation omitted). The constitutional injury of being subjected to an unconstitutional proceeding is "impossible to remedy once the proceeding is over" because "a proceeding that has already happened cannot be undone." *Id.* Those statements are the very definition of irreparable harm; they capture Care One's predicament.

Further, this Court has held that "the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action," the "'remedy available at the end of trial will not make the plaintiff whole.'" *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 594 (7th Cir. 1986)). Here, if Care One is denied a preliminary injunction, there is a substantial risk that when judicial relief is finally granted, the administrative proceedings will have concluded—at which point it will be impossible to make Care One whole or compensate it for the injury of being subjected to an

unconstitutional proceeding. So, although *Axon*'s reasoning supported its conclusion that district courts have jurisdiction over collateral constitutional challenges to ongoing administrative proceedings, its reasoning also supports the conclusion that denying interim injunctive relief to movants such as Care One causes them irreparable harm.

Additionally, a "presumption of irreparable injury flows from a violation of constitutional rights." *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (citation and punctuation omitted). This Court has rejected the view that, among constitutional harms, only First Amendment harms are irreparable. *See Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744–45 (2d Cir. 2000) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."), *superseded on other grounds by rule as stated in Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001). Nor is there any basis for relegating structural constitutional harms to a second-class category beneath other constitutional harms. As *Collins* observed, "the separation of powers is designed to preserve the liberty of all the people." *Collins v. Yellen*, 141 S. Ct.

1761, 1780 (2021); *see also Bond v. United States*, 564 U.S. 211, 222 (2011) ("The structural principles secured by the separation of powers protect the individual as well."). If a government agent is unconstitutionally appointed, or unconstitutionally insulated from removal, then "governmental action" over "decisions affecting individual lives, liberty, and property" is "taken by someone erroneously claiming the mantle of executive power—and thus taken with no authority at all." *Collins*, 141 S. Ct. at 1795–97 (2021) (Gorsuch, J., concurring in part). Because such "constitutional evil" (*see id.*) cannot be remedied after the administrative proceedings have concluded, denying CareOne a preliminary injunction here would irreparably harm them.

### C.  An Injunction Will Promote the Public Interest.

The district court also neglected to address the final preliminary-injunction factor: "whether the balance of equities tips in favor of granting the injunction and whether that injunction is in the public interest," which converge into one factor when the government is a party. *See New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).

In stark contrast to the irreparable harm Care One has already suffered

63

and continues to suffer, preliminary injunctive relief will have no meaningful impact on the NLRB at all, while advancing the undeniable public interest in ensuring the constitutionality of NLRB proceedings. The NLRB would not suffer material harm from preliminary injunctive relief in the form of temporarily staying the NLRB proceedings, let alone any harm outweighing the harm suffered by Care One, pending judicial review of Care One's constitutional claims.

It is well settled that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2490 (2021); *Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 120 (2022) (refusing to "weigh [] tradeoffs" where an agency plainly overstepped its authority). Therefore, the government suffers no cognizable harm from temporarily halting "the perpetuation of unlawful agency action." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Meanwhile, the public has an overwhelming interest in the proper administration of constitutional checks and balances on power. As this Court has recognized, "[n]o public interest is served by maintaining an

unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *accord Kane v. De Blasio*, 19 F.4th 152, 172 (2d Cir. 2021); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) (holding that the public interest is "served when constitutional rights are protected"). Care One's interest in litigating its constitutional claims in an Article III court, coupled with the strong public interest in proper constitutional checks and balances on Article II bodies, far outweighs any hardship from enjoining the continuation of the NLRB proceedings.

\* \* \*

Based on Sections One and Two of the Argument, this Court should hold that the district court abused its discretion in denying a preliminary injunction and, on that basis, should vacate the district court's denial.

In addition, based on Section Three, this Court should hold that Care One has satisfied the three preliminary-injunction factors and is therefore entitled to a preliminary injunction on this record. Nonetheless, Care One acknowledges that this Court may be disinclined to issue that holding, as

doing so would require the Court to evaluate, in the first instance, the merits under a likelihood standard, the irreparable-harm factor, and the public-interest factor. Therefore, Care One alternatively requests that this Court, after vacating the denial, remand the case and instruct the district court to properly conduct the preliminary-injunction analysis.

## CONCLUSION

This Court should vacate the district court's denial of Care One's request for a preliminary injunction.

In addition, this Court should hold that Care One is entitled to the requested preliminary injunction. Alternatively, this Court should remand and instruct the district court to properly conduct the inquiry.

Respectfully submitted,

/s/ Daniel R Benson
Daniel R. Benson
Amit R. Vora
Christian T. Becker *(admission pending)*
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiffs-Appellants*

66

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 12,353 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(6) and the type style requirements of FRAP 32(a)(7) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.


*/s/ Daniel R. Benson*
Daniel R. Benson
*Attorney for Plaintiffs-Appellants*

Dated: January 2, 2024

67