# 23-7475

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CARE ONE, LLC, HEALTHBRIDGE MANAGEMENT, LLC, CARE REALTY, LLC, 107 OSBORNE STREET OPERATING COMPANY II, LLC, DBA DANBURY HCC, 710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, DBA LONG RIDGE OF STAMFORD, 240 CHURCH STREET OPERATING COMPANY II, LLC, DBA NEWINGTON HEALTH CARE CENTER,1 BURR ROAD OPERATING COMPANY II, LLC, DBA WESTPORT HEALTH CARE CENTER, 245 ORANGE AVENUE OPERATING COMPANY II, LLC, DBA WEST RIVER HEALTH CARE CENTER, 341 JORDAN LANE OPERATING COMPANY II, LLC, DBA WETHERSFIELD HEALTH CARE CENTER, 2028 BRIDGEPORT AVENUE OPERATING COMPANY II, LLC, DBA GOLDEN HILL HEALTH CARE CENTER, 745 HIGHLAND AVE OPERATING CO LLC, DBA HIGHLANDS HEALTH CARE CENTER, 162 SOUTH BRITAIN ROAD OPERATING COMPANY II, LLC, DBA RIVER GLEN HEALTH CARE CENTER,

Plaintiff-Appellants,

v.

NATIONAL LABOR RELATIONS BOARD, an Agency of the United States, LAUREN MCFERRAN, GWYNNE WILCOX, MARVIN KAPLAN, DAVID PROUTY, in their capacities as Members of the National Labor Relations Board, KENNETH R. CHU, in his capacity as an Administrative Law Judge of the National Labor Relations Board,

Defendants-Appellees.

———————————

**On Appeal from the United States District Court for the District of Connecticut, 3:23-CV-831 (D. Conn.)**

———————————

## BRIEF FOR DEFENDANTS-APPELLEES

*(Counsel List Appears On Inside Cover)*

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Assoc. General Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Trial Attorney*
MICHAEL S. DALE
  *Trial Attorney*
GRACE L. PEZZELLA
  *Trial Attorney*

NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET, S.E., 4TH FLOOR
WASHINGTON, DC 20003
202-273-0008

# TABLE OF CONTENTS

INTRODUCTION ...................................................................... 1

COUNTERSTATEMENT OF JURISDICTION ........................ 2

COUNTERSTATEMENT OF ISSUES ..................................... 3

STATEMENT OF THE CASE .................................................. 4

  I.  Factual and Procedural Background ................................. 4

    A.  The NLRB brings an administrative complaint against Appellants to prevent and remedy unfair labor practices. ................. 4

    B.  Appellants file bankruptcy petitions. ............................ 6

    C.  Appellants obtain a preliminary injunction on bankruptcy grounds, and the Third Circuit promptly vacates that injunction on appeal. ........................................................................... 8

    D.  Appellants seek another preliminary injunction on wholly new grounds, and the District Court denies their request. ..................... 10

  II.  Legal Background .......................................................... 12

    A.  The structure of the NLRB and the roles of its administrative law judges and Board members ................................ 12

    B.  Removal protections for ALJs ..................................... 15

    C.  Judge Chu's appointment ............................................ 16

SUMMARY OF THE ARGUMENT ....................................... 17

ARGUMENT ......................................................................... 19

  I.  The District Court correctly applied a heightened standard for likelihood of success on the merits because Appellants' proposed injunction would have disrupted the status quo. ................................. 19

  II.  The District Court adequately explained its reasoning. ................ 24

  III.  Appellants are not entitled to a preliminary injunction because they fail to satisfy any of the factors for obtaining such relief. ........... 26

    A.  Appellants have not shown that they are likely to succeed on the merits of their constitutional claims. ................................ 26

1. Appellants are not likely to prevail on their challenge to the NLRB's for-cause removal protections for ALJs. ............................27

   a. Courts generally recognize the constitutionality of removal protections for inferior officers engaged in adjudicative functions. .....................................................................................27

   b. Neither *Free Enterprise Fund* nor any other Supreme Court precedent supports the notion that removal protections for NLRB ALJs are unconstitutional. ...........................................................37

2. Appellants have not demonstrated a likelihood of success on their claim that Judge Chu's appointment violated the Appointments Clause. ........................................................................43

   a. The District Court, and by extension this Court, lacks jurisdiction to enjoin the unfair-labor-practice proceeding based on Appellants' Appointments Clause claim. ................................43

   b. Judge Chu's appointment was properly ratified, and no merits decision has issued. ....................................................51

B. Appellants' failure to establish irreparable harm is fatal to their claims for injunctive relief. ..............................................................56

1. There is no irreparable harm as to Appellants' ALJ-removability claim.............................................................................57

   a. Appellants fail to allege causal harm, a prerequisite to relief. ...............................................................................57

   b. Preliminary injunctive relief is unavailable where severance would resolve the threat of appearing before an unconstitutionally insulated adjudicator. ..................................61

2. There is no irreparable harm as to Appellants' Appointments Clause claim. ........................................................................65

3. Appellants' years-long delay in raising constitutional claims undermines their assertion of irreparable harm. ...........................65

C. The balance of the equities and the public interest factors counsel against a preliminary injunction. .......................................69

CONCLUSION ................................................................................72

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1621 Rt. 22 W. Operating Co. II, LLC v. NLRB,*
825 F.3d 128 (3d Cir. 2016) ............................................................ 45, 66

*Abdul Wali v. Coughlin,*
754 F.2d 1015 (2d Cir. 1985) ......................................................... 20, 23

*Alpine Securities Corp. v. FINRA,*
No. 23-5129, 2023 WL 4703307 (July 5, 2023) ..................................... 61

*Axon Enterprise, Inc. v. FTC,*
598 U.S. 175 (2023) ................................................................. passim

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
140 S. Ct. 2335 (2020) ..................................................................... 62

*Bokat v. Tidewater Equip. Co.,*
363 F.2d 667 (5th Cir. 1966) ............................................................. 44

*Brewer v. W. Irondequoit Cen. School Dist.,*
212 F.3d 738 (2d Cir. 2000) .............................................................. 58

*Burgess v. FDIC,*
639 F. Supp. 3d 732 (N.D. Tex. 2022) ................................................. 61

*CFPB v. Law Offices of Crystal Moroney, P.C.,*
63 F.4th 174 (2d Cir. 2023) ............................................................... 60

*Calcutt v. FDIC,*
37 F.4th 293 (6th Cir. 2022) ......................................................... 35, 59

*Carpenters Loc. 370 (E. Contractors Ass'n),*
332 NLRB 174 (2000) ...................................................................... 39

*Carr v. Saul,*
593 U.S. 83 (2021) .......................................................................... 50

iii

*CFPB v. CashCall, Inc.,*
    35 F.4th 734 (9th Cir. 2022) ................................................................. 59

*Chem. Bank v. Affiliated FM Ins. Co.,*
    196 F.3d 373 (2d Cir. 1999) .................................................................. 52

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir. 1985) .................................................................. 65

*Clarke v. Frank,*
    960 F.2d 1146 (2d Cir.1992) ................................................................. 70

*Cmty. Fin. Servs. Ass'n of Am., Ltd.* v. *CFPB,*
    51 F.4th 616 (5th Cir. 2022) .......................................................... 58, 59

*Cnty. of Nassau, N.Y. v. Leavitt,*
    524 F.3d 408 (2d Cir. 2008) .......................................................... 19, 24

*Collins v. Dep't of the Treasury,*
    83 F.4th 970 (5th Cir. 2023) ................................................................. 60

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021) ........................................................ 37, 38, 58, 59

*Conn. State Police Union v. Rovella,*
    36 F.4th 54 (2d Cir. 2022) .................................................................... 24

*Crest One Spa v. TPG Troy, LLC (In re TPG Troy, LLC),*
    793 F.3d 228 (2d Cir. 2015) ................................................................. 67

*CSC Holdings, LLC,*
    368 NLRB No. 106 (2019) .................................................................... 49

*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ................................................................. 34

*Edmond v. United States,*
    520 U.S. 651 (1997) ............................................................................. 28

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012) ................................................................................. 48

iv

*Entek GRB v. Stull Ranches, LLC,*
  840 F.3d 1239 (10th Cir. 2016) .................................................. 1

*Exela Enter. Sols. v. NLRB,*
  32 F.4th 436 (5th Cir. 2022) ............................................... 38, 41

*Fair Housing in Huntington Comm., Inc. v. Town of Huntington, N.Y.,*
  316 F.3d 357 (2d Cir. 2003) .............................................. 24, 25

*Frazier v. Prince George's Cnty., Md.,*
  86 F.4th 537 (4th Cir. 2023) ................................................. 26

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
  537 F.3d 667 (D.C. Cir. 2008) .............................................. 35

*Free Enterprise Fund v. Public Co. Accounting Oversight Board,*
  561 U.S. 477 (2010) ................................................... passim

*Healthbridge Mgmt., LLC,*
  360 NLRB 937 (2014) ........................................................ 1

*Healthbridge Mgmt., LLC,*
  362 NLRB 310 (2015) ........................................................ 1

*Healthbridge Mgmt., LLC,*
  365 NLRB No. 37 ............................................................. 1

*Ex parte Hennen,*
  38 U.S. (13 Pet.) 230 (1839) ............................................... 27

*Humphrey's Ex'r v. United States,*
  295 U.S. 602 (1935) ..................................................... 29, 30

*In re 710 Long Ridge Rd. Operating Co. II, LLC,*
  No. 22-3046, 2023 WL 3116434 (3d Cir. Apr. 27, 2023) ....................... 9

*In re 710 Long Ridge Rd. Operating Co., II, LLC,*
  518 B.R. 810 (Bankr. D.N.J. Feb. 3, 2014) ................................... 7

*In re Chocallo,*
  1 MSPR 605 (1980) ......................................................... 15

*Integrity Advance, LLC v. CFPB,*
  48 F.4th 1161 (10th Cir. 2022) .......................................................... 59

*Ivani Contracting Corp. v. City of N.Y.,*
  103 F.3d 257 (2d Cir. 1997) ............................................................... 66

*Jarkesy v. SEC,*
  34 F.4th 446 (5th Cir. 2022) .................................................. 25, 36, 37

*Jayaraj v. Scappini,*
  66 F.3d 36 (2d Cir. 1995) .................................................................. 57

*Joint Exec. Bd. of Las Vegas v. NLRB,*
  883 F.3d 1129 (9th Cir. 2018) ............................................................ 70

*Jones Bros., Inc. v. Sec'y of Labor,*
  898 F.3d 669 (6th Cir. 2018) .............................................................. 45

*JTH Tax, LLC v. Agnant,*
  62 F.4th 658 (2d Cir. 2023) ............................................................... 20

*K & R Contractors, LLC v. Keene,*
  86 F.4th 135 (4th Cir. 2023) ........................................................ 50, 59

*Kane v. De Blasio,*
  19 F.4th 152 (2d Cir. 2021) ............................................................... 23

*Kim v. FINRA,*
  No. 1:23-CV-02420(ACR),
  2023 WL 6538544 (D.D.C. Oct. 6, 2023) .................................. 60, 61, 71

*King v. Innovation Books,*
  976 F.2d 824 (2d Cir. 1992) ............................................................... 68

*Kreisberg v. Healthbridge Mgmt., LLC,*
  No. 3:12-cv-1299, 2012 WL 12929503 (D. Conn. Dec. 11, 2012) ........... 6

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
  No. CIV-22-232-RAW, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) .. 60

*Leedom v. Kyne,*
  358 U.S. 184 (1958) ........................................................................... 3

vi

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................... 64

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB,*
    No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023) ................. 47

*Lucia v. SEC,*
    585 U.S. 237 (2018) ................................................... 51, 53, 54

*Maryland v. King,*
    567 U.S. 1301 ....................................................................... 71

*Mastrovincenzo v. City of New York,*
    435 F.3d 78 (2d Cir. 2006) .................................................... 22

*Meisels v. Meisels,*
    630 F. Supp. 3d 400 ............................................................ 23

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..................................................... passim

*Myers v. Bethlehem Shipbuilding Corp.,*
    303 U.S. 41 (1938) ........................................................ 3, 44

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,*
    883 F.3d 32 (2d Cir. 2018) .................................................... 21

*NAACP, Inc. v. Town of East Haven,*
    70 F.3d 219 (2d Cir. 1995) ............................................... 25, 26

*Nathanson v. NLRB,*
    344 U.S. 25 (1953) .............................................................. 71

*Nat'l Licorice Co. v. NLRB,*
    309 U.S. 350 (1940) ............................................................ 70

*Newark Elec. Corp.,*
    366 NLRB No. 145 (2018) ............................................... 52, 65

*NLRB v. 710 Long Ridge Rd. Operating Co. II, LLC,*
    637 F. Supp. 3d 161 (D.N.J. 2022) .................................. 6, 7, 8, 9

vii

*NLRB v. Aakash, Inc.*,
   58 F.4th 1099 (9th Cir. 2023) ........................................................38, 41

*NLRB v. Noel Canning*,
   573 U.S. 513 (2014) ....................................................................16, 40

*NLRB v. Pier Sixty, LLC*,
   855 F.3d 115 (2d Cir. 2017) ................................................................66

*O'Lone v. Estate of Shabazz*,
   482 U.S. 342 (1987) ............................................................................20

*PHH Corp. v. CFPB*,
   839 F.3d 1 (2016) ...............................................................................63

*Pain Relief Centers, P.A.*,
   371 NLRB No. 143 (2022) ..................................................................66

*Raley's*,
   337 NLRB 719 (2002) .........................................................................38

*Saulpaugh v. Monroe Cmty. Hosp.*,
   4 F.3d 134 (2d Cir. 1993) ...................................................................70

*Savage v. Gorski*,
   850 F.2d 64 (2d Cir. 1988) .................................................................57

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ............................................................................64

*Seila Law v. CFPB*,
   140 S. Ct. 2183 (2020) ......................................................34, 40, 41, 64

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) ..........................................................58

*Smith v. Bd. of Governors of the Fed. Rsrv. Sys.*,
   73 F.4th 815 (10th Cir. 2023) .......................................................50, 66

*Space Expl. Techs. Corp. v. Bell*,
   No. 1:23-CV-00137, 2023 WL 8885128 (S.D. Tex. Nov 8, 2023) ..........63

viii

*SSA v. Anyel,*
   58 MSPR 261 (1993) .................................................................. 15, 39

*Stern v. Marshall,*
   564 U.S. 462 (2011).................................................................... 67

*Sun Valley Orchards, LLC v. U.S. Dep't of Labor,*
No. 1:21-cv-16625, 2023 WL 4784204 (D.N.J. July 27, 2023) ...............54

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994)..................................................................... 47

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,*
   60 F.3d 27 (2d Cir. 1995) ........................................................... 20

*UAW Loc. 283 v. Scofield,*
   382 U.S. 205 (1965)..................................................................... 70

*United States v. Arthrex, Inc.,*
   141 S. Ct. 1970 (2021)................................................................. 28

*United States v. L.A. Tucker Truck Lines, Inc.,*
   344 U.S. 33 (1952)....................................................................... 66

*United States v. Perkins,*
   116 U.S. 483 (1886).............................................................. 28, 29

*Util. Workers v. Consol. Edison Co. of N.Y.,*
   309 U.S. 261 (1940)..................................................................... 71

*Vaca v. Sipes,*
   386 U.S. 171 (1967)..................................................................... 70

*Wellness Int'l Network, Ltd. v. Sharif,*
   575 U.S. 665 (2015)..................................................................... 67

*WestRock Servs., Inc.,*
   366 NLRB No. 157 (2018)................................................. 46, 49, 52

*Wheeler v. Wexford Health Sources, Inc.,*
   689 F.3d 680 (7th Cir. 2012)....................................................... 58

*Wiener v. United States*,
   357 U.S. 349 (1958) ................................................................ 30

*William A. Graham Co. v. Haughey*,
   646 F.3d 138 (3d Cir. 2011) .................................................. 70

**Statutes**

5 U.S.C. § 551 ......................................................................... 34

5 U.S.C. § 1202(d) ........................................................... 16, 62

5 U.S.C. § 3105 ................................................................ 13, 37

5 U.S.C. § 7521(a) ...................................................... 15, 62, 63

28 U.S.C. § 1292(a)(1) ............................................................ 2

29 U.S.C. § 151, *et seq.* ..................................................... 4, 70

29 U.S.C. § 153(d) ................................................................. 38

29 U.S.C. § 154(a) ................................................................. 13

29 U.S.C. § 156 ...................................................................... 38

29 U.S.C. § 157 ...................................................................... 12

29 U.S.C. § 160(a) ................................................................. 44

29 U.S.C. § 160(b) ................................................................. 13

29 U.S.C. § 160(c) .................................................. 13, 14, 36, 39

29 U.S.C. § 160(f) .................................................................... 3

29 U.S.C. § 160(j) ............................................................... 6, 12

Administrative Procedure Act (APA),
   Pub. L. No. 79-404, 60 Stat. 237 (1946) ............................... 34

## Court Rules

Federal Rule of Civil Procedure 52(a) ....................................................24

Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g)(1) ............74

## Regulations

29 C.F.R. § 102.35(a) .................................................................................13

29 C.F.R. § 102.46(a) ..........................................................................13, 38

## Other Authorities

*Sec'y of Educ. Review of ALJ Decisions,*
   15 Op. O.L.C. 8 (1991) ..........................................................................41

*Presidential Power and Administrative Rulemaking,*
   88 Yale L.J. 451 (1979) .........................................................................35

## INTRODUCTION

This case is the latest unfortunate iteration of an "extended game of litigation whack-a-mole."[1] Appellants are a group of recidivist labor law violators and associated shell companies.[2] Eleven years ago, the District Court for the District of Connecticut granted the National Labor Relations Board ("NLRB")[3] a temporary injunction, which this Court affirmed, requiring certain Appellants to take various actions pending the resolution of a related unfair-labor-practice case. Most of them then filed for bankruptcy in New Jersey and obtained orders that undermined the temporary injunction. They then crammed down a plan

---

[1] *Entek GRB v. Stull Ranches, LLC*, 840 F.3d 1239, 1242 (10th Cir. 2016).

[2] *See Healthbridge Mgmt., LLC*, 360 NLRB 937, 937 (2014) (Respondent unlawfully ordered employees to remove union stickers while working in patient care areas and taking down union fliers), *enforced,* 798 F.3d 1059 (D.C. Cir. 2015); *Healthbridge Mgmt., LLC*, 362 NLRB 310, 311 (2015) (Respondent unlawfully discharged an employee because of protected concerted activity), *enforced*, 672 F. App'x 1 (D.C. Cir. 2016); *Healthbridge Mgmt., LLC*, 365 NLRB No. 37, slip op. at *1 (2017) (Respondent unlawfully threatened to call police on protesting employees and made various unilateral changes to terms and conditions of employment), *enforced*, 902 F.3d 37 (2d Cir. 2018).

[3] Where this brief refers to "the NLRB," it means the Agency as a whole. Where it refers to "the Board," it means the five-member adjudicative body established by Congress to decide cases under the NLRA.

1

of reorganization, the confirmation of which is presently on appeal elsewhere, that purports to limit the NLRB's ability to recover from non-debtor entities in the pending unfair-labor-practice case. And as that administrative case was about to reach its final stage, Appellants attempted to leverage the plan to enjoin the hearing.

After that effort failed before the Third Circuit, Appellants filed the instant eleventh-hour lawsuit, seeking yet again to enjoin the unfair-labor-practice case on completely new grounds Appellants had never mentioned before. The District Court properly denied Appellants' latest gambit, and this Court should affirm.

## COUNTERSTATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to assess the jurisdiction of the District Court below. Controlling precedent requires this Court to find jurisdiction over Appellants' removal-protection challenge. But the District Court lacked jurisdiction over Appellants' Appointments Clause claim, which could only be raised

in a petition for review of a final Board order pursuant to 29 U.S.C.

§ 160(f).[4]

## COUNTERSTATEMENT OF ISSUES

1. Did the District Court abuse its discretion by requiring Appellants to show a clear likelihood of success on the merits, or, alternatively, does the standard not matter since Appellants have not shown any likelihood of success on the merits?

2. Did the District Court abuse its discretion by insufficiently explaining why Appellants had not shown a clear likelihood-of-success-on-the-merits on their removal-protection claim?

3. Did the District Court abuse its discretion by concluding that Appellants failed to show the necessary prerequisites to obtain a preliminary injunction?

---

[4] *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 47–52 (1938); *Leedom v. Kyne*, 358 U.S. 184, 189–90 (1958).

## STATEMENT OF THE CASE

### I. Factual and Procedural Background

    *A. The NLRB brings an administrative complaint against Appellants to prevent and remedy unfair labor practices.*

In 2012, the NLRB's Regional Director for then-Region 34 (now Region 1) issued a series of amended and consolidated complaints against a group of Connecticut nursing homes and related entities encompassing most of Appellants[5] (Case Nos. 34-CA-070823, *et al.*). The complaints contended, among other things, that these entities violated the National Labor Relations Act ("the NLRA" or "the Act")[6] by locking employees out unlawfully and refusing to reinstate them after a lawful strike.[7] The Region further alleged that the respondents named in the unfair-labor-practice complaints, including the nursing homes' parent

---

[5] Appellants conceded below that certain named Appellants are not actually parties to the unfair-labor-practice proceedings. *See* NLRB's Opp'n to Mot. for Prelim. Inj. ("Opp'n") 10–11, ECF No. 55; A-144. Note that all ECF citations in this brief refer to the District Court's docket, except as otherwise noted.

[6] 29 U.S.C. § 151, *et seq.*

[7] A-109–112.

company, Care Realty LLC, are jointly and severally liable as part of a "single integrated enterprise," or as joint employers.[8]

A trial opened before Administrative Law Judge ("ALJ") Kenneth Chu in September 2012.[9] Thirty-nine days of trial took place until, on October 24, 2014, the hearing was stayed pending the Region's request for permission to present an interlocutory appeal to the Board of Judge Chu's ruling on certain privilege issues.[10] In 2019, the Board resolved the appeal, and the case returned to Judge Chu for further proceedings.[11] The hearing then suffered a series of delays largely attributable to the COVID-19 pandemic until 2022, when the trial resumed where it left off.[12] Seven more hearing days occurred,[13] after which the proceedings were scheduled to begin litigating joint and several liability. However, the case was then delayed by a since-vacated

---

[8] *Id.* at 4–5.

[9] A-263.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* Appellants state that the trial resumed on June 12, 2023. *See* Appellants' Br. ("Br.") 16. But this leaves out the hearing dates that occurred in 2022.

injunction from the United States District Court for the District of New Jersey, discussed below.[14]

In tandem with initiating the unfair-labor-practice proceeding before the Board, the NLRB pursued preliminary injunctive relief against the respondents to the administrative case in the United States District Court for the District of Connecticut. On December 11, 2012, that court entered an injunction, which this Court later affirmed, prohibiting several Appellants from continuing the conduct alleged in the complaints pending before Judge Chu.[15]

### B. Appellants file bankruptcy petitions.

On February 24, 2013, five Appellants filed Chapter 11 bankruptcy petitions in New Jersey and obtained orders effectively vitiating the Connecticut District Court's injunction by permitting

---

[14] *See NLRB v. 710 Long Ridge Rd. Operating Co. II, LLC*, 637 F. Supp. 3d 161, 166 (D.N.J. 2022).

[15] *See Kreisberg v. Healthbridge Mgmt., LLC*, No. 3:12-cv-1299, 2012 WL 12929503, at *2 (D. Conn. Dec. 11, 2012), *aff'd*, 732 F.3d 131 (2d Cir. 2013), *cert. denied*, 574 U.S. 1066 (2014).

Section 10(j) of the NLRA authorizes the NLRB to seek temporary injunctions against employers and unions in federal district courts to stop unfair labor practices while the case is litigated before ALJs and the Board. *See* 29 U.S.C. § 160(j).

Appellants to pay employees at diminished rates.[16] Pursuant to the Bankruptcy Code, the NLRB filed proofs of claim in the amount of $14,636,536, exclusive of interest.[17] In March 2014, the bankruptcy court confirmed the five debtor-Appellants' proposed plan of reorganization, which, among other things, prohibited the NLRB from pursuing certain non-debtor entities, including Appellants Care One, LLC, and Care Realty, for financial liability in the unfair-labor-practice case unless those entities failed to comply with their plan obligations.[18] Consolidated appeals challenging the bankruptcy court's plan confirmation remain pending in the District of New Jersey.[19]

The details of the plan are mostly unimportant, except for one: the plan placed a hard cap on the amounts recoverable from nondebtor

---

[16] *See, e.g.*, *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 518 B.R. 810, 816, 817, 839 (Bankr. D.N.J. Feb. 3, 2014).

[17] Given accruing interest, a rough calculation of the updated value of the NLRB's claim exceeds $26 million.

[18] A-262; Or., *In re 710 Long Ridge Rd. Operating Co. II, LLC*, Case No. 13-13653, at 118–22 of 266 (Bankr. D.N.J. Mar. 6, 2014), ECF 989 ("Confirmation Order").

[19] *NLRB v. 710 Long Ridge Rd. Operating Co. II, LLC*, No. 14-1725 (D.N.J. filed Mar. 18, 2014). The NLRB also filed, in the interim, a motion seeking to hold certain Appellants in contempt for violating the 10(j) injunction, *see* A-262–63. That contempt motion is in abeyance pending the bankruptcy appeal. A-263.

entities by "Class 6" creditors, consisting overwhelmingly of the NLRB.[20] That cap amounted to a variable sum of money currently estimated as between $5 million and $6.5 million, depending on the resolution of certain disputes between the parties.[21] Critically, those amounts are not inflation-adjustable, meaning that delay in the ultimate resolution of the unfair-labor-practice case provides an economic benefit to Care One and Care Realty, while imposing a corresponding economic cost on the workers whose rights are at issue.

> C. *Appellants obtain a preliminary injunction on bankruptcy grounds, and the Third Circuit promptly vacates that injunction on appeal.*

In 2019, the NLRB obtained evidence indicating that Care Realty had breached its obligations under the plan.[22] After unsuccessful attempts at voluntary resolution, the NLRB notified Appellants that it would resume litigation against Care Realty in the administrative case

---

[20] Although not at issue here, the NLRB contends that such restrictions on NLRA remedies are both jurisdictionally barred by the NLRA and substantively illegal under the Bankruptcy Code.

[21] Confirmation Order, 78, 95, and 139–40 of 266.

[22] Memo. of Law in Opp'n to Reorganized Debtors' Mot. for Prelim. Inj. Relief and Sanctions 7–13, *NLRB v. 710 Long Ridge Rd. Operating Co. II, LLC*, No. 14-CV-01725 (JXN)(LDW) (D.N.J. Dec. 2, 2019), ECF No. 132.

before Judge Chu on the joint/single employer issue.[23] Appellants then
filed a motion in the District of New Jersey, where the bankruptcy
appeals were pending, to enjoin the pursuit of claims covered by the
bankruptcy plan's nondebtor releases.[24] In October 2022, the District of
New Jersey granted that injunction.[25]

 After hearing an expedited appeal, the Third Circuit reversed the
District Court's grant of injunctive relief.[26] To ensure that the unfair-
labor-practice case would resume without any additional unnecessary
delay, the NLRB moved for expedited issuance of the mandate, which
the Third Circuit granted in May 2023.[27] Appellants neither opposed

---

[23] *Id.* at 10.

[24] Appellees' Br. in Supp. of App. for Prelim. Inj. Relief, *NLRB v. 710
Long Ridge Rd. Operating Co. II, LLC*, No. 14-CV-01725 (JXN) (LDW)
(D.N.J. Oct. 24, 2019), ECF No. 128-18.

[25] *NLRB v. 710 Long Ridge Rd. Operating Co. II, LLC*, 637 F. Supp. 3d
161, 187 (D.N.J. 2022).

[26] *In re 710 Long Ridge Rd. Operating Co. II, LLC*, No. 22-3046, 2023
WL 3116434, at *1 (3d Cir. Apr. 27, 2023).

[27] Or., *In re 710 Long Ridge Rd. Operating Co. II, LLC*, No. 22-3046 (3d
Cir. May 8, 2023).

the NLRB's motion nor mentioned the existence of any other grounds to further delay the resumption of the hearing.[28]

The parties then engaged in unsuccessful negotiations to stipulate to certain conclusions in lieu of litigating joint or single-employer liability. In the midst of these negotiations, Appellants abruptly changed legal representation and sought yet another postponement of the unfair-labor-practice hearing.[29] Judge Chu agreed, but ordered the hearing to resume on June 26, 2023, with no further postponements permitted.[30] The hearing then resumed.[31]

> D. *Appellants seek another preliminary injunction on wholly new grounds, and the District Court denies their request.*

On June 12, 2023, just two weeks before resuming the unfair-labor-practice hearing, and more than six weeks after the Third Circuit vacated the previous injunction against the NLRB, Appellants brought

---

[28] Resp., *In re 710 Long Ridge Rd. Operating Co. II, LLC*, No. 22-3046 (3d Cir. May 5, 2023).

[29] A-57.

[30] *Id.*

[31] The hearing record closed on November 30, 2023, all parties have filed their post-hearing briefs, and the case is pending Judge Chu's disposition.

this action in the District of New Jersey.[32] Their Complaint challenges

the appointment and statutory removal protections of Judge Chu, and

asks the district court to enjoin and declare void *ab initio* the pending

unfair-labor-practice case.[33] Appellants simultaneously applied for

preliminary relief, which Appellees opposed while cross-moving for the

case to be transferred to the District of Connecticut. The District of New

Jersey granted Appellees' transfer motion.

Upon transfer, the court below requested that Appellants re-file

their preliminary injunction request.[34] Over two weeks later, on July

12, 2023, Appellants filed an Application for Emergency Injunctive

Relief ("Application") with the District of Connecticut.[35] Ultimately, the

District of Connecticut denied Appellants' request for preliminary relief

---

[32] A-14—38.

[33] *Id.* at A-36—38.

[34] A-9.

[35] A-50—51. Appellants mentioned their constitutional arguments for the
very first time in the resumed administrative proceedings on June 26,
2023. Even that was only a vague verbal allusion; Appellants did not
formally raise their constitutional arguments to Judge Chu for his
consideration until November 30, 2023, almost two months after the
District of Connecticut denied Appellants' request for preliminary relief.
Resp'ts' Mot. to Dismiss the Proceedings on Constitutional Grounds,
*HealthBridge Mgmt., LLC*, Nos. 34-CA-070823, *et al.* (NLRB Nov. 30,
2023).

on October 4, 2023, based on Appellants' failure to show a clear

likelihood of success on the merits.[36] Appellants subsequently appealed.

## II.   Legal Background

### A. The structure of the NLRB and the roles of its administrative law judges and Board members.

The NLRB is the principal federal agency protecting the rights of

employees to form and join unions, and engage in concerted activity for

mutual aid and protection.[37] One of the key functions of the agency—

and the function at issue in this case—is its role in adjudicating

allegations that an employer or union has committed an "unfair labor

practice."[38] Although such allegations arise out of charges filed by

members of the public, formal proceedings do not commence until (and

unless) the NLRB's General Counsel, or her delegate, finds merit to the

charge and issues a complaint.[39] In most cases where a complaint is

issued, it will be issued concurrently with a notice of hearing setting a

---

[36] A-261–62.

[37] 29 U.S.C. § 157.

[38] *Id.* § 160.

[39] *Id.* § 160(b).

case for trial before an ALJ. Alternatively, a hearing may also be held "before the Board or a member thereof."[40]

The NLRB's ALJs are appointed in accordance with the U.S. Constitution,[41] Civil Service Reform Act,[42] and the NLRA.[43] In presiding over unfair-labor-practice trials, NLRB ALJs' main role is to oversee development of an administrative record and ultimately issue a recommended decision to the Board.[44] Once an ALJ issues this decision, parties may file "exceptions" on any contested issue, asking the Board itself to rule upon the matter.[45] In so deciding, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law.[46] Indeed, the Board has explicit statutory authorization to take additional evidence upon notice to the parties.[47]

---

[40] *Id.* § 160(b).

[41] Art. II, § 2, cl. 2.

[42] 5 U.S.C. § 3105.

[43] 29 U.S.C. § 154(a).

[44] *See generally* 29 C.F.R. § 102.35(a) (enumerating powers of NLRB ALJs).

[45] *Id.* § 102.46(a).

[46] *Id.*

[47] 29 U.S.C. § 160(c).

The NLRB's Board is comprised of five members, appointed by the President with the advice and consent of the Senate, who serve five-year, staggered terms.[48] They may only be removed "for neglect of duty or malfeasance in office."[49] It is the Board, not ALJs, that issues final decisions in unfair-labor-practice cases.[50] Beyond that point, orders of the Board are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate Court of Appeals.[51] Conversely, any "aggrieved" person may seek to set aside a final Board order in a Court of Appeals under Section 10(f) of the NLRA.[52] Upon enforcement, the Board's order becomes fully effective against the respondent, and violations of that order are punishable as contempt of the enforcing court.

---

[48] *Id.* § 153(a).

[49] *Id.*

[50] *Id.* § 160(c). The Board also conducts representation elections, *id.* § 159, and promulgates rules and regulations implementing the NLRA, *id.* § 156.

[51] *Id.* § 160(e).

[52] *Id.* § 160(f).

14

*B. Removal protections for ALJs*

The process for removing an ALJ is defined by statute. With a handful of enumerated exceptions, "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [MSPB]."[53] Accordingly, removal of an NLRB ALJ is a two-step process: (1) the Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. The MSPB has applied "good cause" to uphold removals or suspensions of ALJs for many reasons, including failure to follow applicable law, lack of judicial temperament, and bias.[54]

---

[53] 5 U.S.C. § 7521(a).

[54] *See, e.g.*, *SSA v. Anyel*, 58 MSPR 261, 269 (1993) (suspending an ALJ for persistent failure to follow applicable law); *In re Chocallo*, 1 MSPR 605, 609–10 (1980) (removing ALJ for acts of disobedience, lack of judicial temperament, and bias).

MSPB members also can only be removed for cause.[55] Thus, ALJs, Board members, and MSPB members all receive for-cause removal protection.

### C. Judge Chu's appointment

The Board appointed Judge Chu in July 2012, a few months before the underlying unfair-labor-practice proceedings opened before him.[56] His appointment, however, was made during a period of time when certain Board members lacked valid appointments themselves.[57] Later, the full Board, staffed by five Senate-confirmed members, ratified Judge Chu's appointment.[58] After this ratification, Judge Chu oversaw 19 additional administrative hearing days prior to closing the record; his ultimate recommendation to the Board remains pending.[59]

---

[55] *See* 5 U.S.C. § 1202(d) ("Any member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").

[56] A-94.

[57] *See NLRB v. Noel Canning*, 573 U.S. 513, 521, 557 (2014).

[58] A-65–66.

[59] *See* note 31.

## SUMMARY OF THE ARGUMENT

The District Court properly denied Appellants' request for preliminary relief, and Appellants have failed to show grounds for reversal.

Appellants begin by attacking the legal standard applied by the District Court as well as the depth of that court's legal analysis as to their removal-protection claim. Both threshold arguments fail. First, the District Court was correct to demand that Appellants show a clear likelihood of success on the merits because Appellants' desired injunction would have upended, not preserved, the status quo. And second, the District Court sufficiently explained why Appellants' removal-protection claim failed to meet that standard—*i.e.*, the Supreme Court's strong warning that the holding of a prior removal-protections case did not necessarily extend to ALJs, coupled with a two-to-one circuit split favoring the NLRB's position.

Additionally, Appellants fail to show that they otherwise satisfy the required preliminary-injunction prerequisites. Supreme Court and circuit court precedent supporting removal protections for inferior officers and adjudicators including ALJs, forecloses any likelihood of

success on that claim. Nor have Appellants shown a likelihood of success on their Appointments Clause challenge, because the District Court lacked jurisdiction over that claim, and in any event, the Board's 2014 ratification of Judge Chu's initial appointment cured whatever constitutional defect may have once existed. Moreover, Appellants have failed to demonstrate any irreparable harm, as they do not explain what practical and legally cognizable harm they are now suffering. Most notably, Appellants have failed to show, as courts have consistently required when asked to enjoin or void agency operations, that an official's allegedly unlawful removal protections caused harm. Finally, the equities do not favor issuing an injunction here, in light of Appellants' remarkable delay in raising these constitutional claims, the financial harm even a temporary injunction would have on Appellants' former employees, and the public interest in preventing and remedying unfair labor practices.

## ARGUMENT

**I. The District Court correctly applied a heightened standard for likelihood of success on the merits because Appellants' proposed injunction would have disrupted the status quo.**

The District Court did not abuse its discretion in applying a "clear-likelihood-of-success" standard in assessing the merits of Appellants' Application.[60]

First, this Court has held that a district court should apply a clear-likelihood-of-success standard whenever the requested preliminary injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme."[61] Appellants claim that these holdings derive from misreading Second Circuit precedent.[62] But Appellants cite no Second Circuit cases commenting on this supposed error, much less expressly overruling any of the cases relied upon by the District Court.

Setting that debate aside, a clear likelihood of success must be shown to obtain preliminary injunctive relief in at least two

---

[60] Br. 27–43.

[61] *Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008).

[62] Br. 30 n.3.

circumstances, only one of which is relevant here.[63] That situation occurs when the movant is seeking a "'mandatory injunction'—that is, an injunction that 'alter[s] the status quo,' which is *usually* done by 'commanding some positive act.'"[64] This differs from "prohibitory" injunctions, which "generally seek[] only to maintain the status quo pending a trial on the merits,"[65] and usually require the nonmovant to "refrain from performing a given act."[66] In assessing the relevant status quo, the Second Circuit examines the "'last actual, peaceable

---

[63] The second circumstance warranting a heightened standard occurs when the requested injunction would "make it difficult or impossible to render a meaningful remedy to the defendant who prevails on the merits at trial." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34–35 (2d Cir. 1995). The District Court explicitly relied on the first rationale for a heightened standard, not the second. A-265–66. To be sure, the District Court did observe that "[i]n practical effect, the requested injunction would turn back the clock for a decade, render null and void all that has transpired during the hearing before ALJ Chu, and require the NLRB to either start over or abandon the enforcement action." A-266. But that was in the context of explaining why the requested injunction would disrupt the status quo too heavily to be considered a mere prohibitory injunction. *Id.*

[64] *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (quoting *Tom Doherty*, 60 F.3d at 34 (emphasis added)).

[65] *Tom Doherty*, 60 F.3d at 34.

[66] *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on other grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

uncontested status which preceded the pending controversy,' or the 'parties' pre-controversy position vis-à-vis the other.'"[67]

Appellants claim the District Court misconstrued their request for temporary relief as a request for permanent relief and based its decision to apply a heightened standard on this mistake.[68] But as Appellants themselves note, whether a movant's requested preliminary injunction includes "all the relief sought" in the complaint is only relevant to the second rationale for applying a heightened standard.[69] The District Court did not rely on that rationale,[70] so Appellants' argument is irrelevant.

Once they finally get around to the District Court's actual rationale for using the clear-likelihood-of-success standard, Appellants claim that the appropriate status quo in this context is over a decade ago, before the underlying unfair-labor-practice proceeding began.[71] The

---

[67] Br. 32 (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37, 38 (2d Cir. 2018)).

[68] *See* Br. 27–29.

[69] Br. 29.

[70] *See* above note 63.

[71] Br. 33.

District Court correctly rejected this strained interpretation. Forty-six hearing days had already transpired by the time Appellants filed their Application. Appellants could have raised their constitutional challenges at any time during the preceding decade-plus period. Instead, they either slept on their purported rights or laid in wait.[72] In any event, it was Appellants' recent collateral attack that interrupted the otherwise uncontested understanding between the parties that the unfair-labor-practice proceeding is constitutional.

Appellants rely on a number of cases in which courts interpreted injunctions that would forbid government enforcement to be prohibitory instead of mandatory.[73] But those cases neither concerned a long-standing enforcement proceeding, nor involved movants who waited years to contest the governmental action they were challenging.[74] More to the point, this case does not turn on "whether the non-moving party

---

[72] Appellants claim that "the NLRB's constitutional wrongdoing precipitated the current relationship between the parties." Br. 36. But Judge Chu's appointment and removal protections have been a feature of the parties' dealings for many years, without any hint of a complaint from Appellants.

[73] *See id.* at 34–36 (citing, *e.g.*, *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006)).

[74] *Mastrovincenzo*, 435 F.3d at 86–88.

is being ordered to perform an act, or refrain from performing,"[75] a distinction often "more semantical than substantive."[76] Here, the distinction between ordering and forbidding an act is not a good proxy for determining the impact an injunction would have on the status quo, because the Court would be commanding the Agency to halt prosecuting a case ongoing for years.[77]

What's more, whether Appellants' likelihood of success must be "clear" makes no difference, because as shown below, they lack *any* likelihood of success on the merits.[78] Accordingly, the Court could simply assume *arguendo* that the lower standard applies and still affirm the District Court's denial of injunctive relief.[79]

---

[75] Br. 32 (quoting *Abdul Wali*, 754 F.2d at 1025).

[76] *Abdul Wali*, 754 F.2d at 1025.

[77] *Cf. Meisels v. Meisels*, 630 F. Supp. 3d 400, 406 & nn. 7, 8 (E.D.N.Y. 2022) (applying the heightened standard because the requested injunction would alter the status quo, even though the "[d]efendants w[ould] not need to do anything affirmative to comply with [the injunction]").

[78] *See* Section III-A, below.

[79] *See, e.g., Kane v. De Blasio*, 19 F.4th 152, 163 n.11 (2d Cir. 2021).

## II.    The District Court adequately explained its reasoning.

The District Court adequately explained why it rejected Appellants' removal-protection challenge.[80] "Federal Rule of Civil Procedure 52(a) requires that a trial court state its findings and conclusions explicitly when granting or denying a preliminary injunction."[81] But the Second Circuit and other circuit courts typically do not reach the sufficiency of findings on one essential element of the preliminary-injunction standard where they find another essential element unsatisfied.[82]

Here, the District Court adequately analyzed the likelihood of success of Appellants' removal-protection claim.[83] It carefully examined *Free Enterprise Fund v. Public Co. Accounting Oversight Board,*[84] described that case's limited holding, and accurately emphasized that the Supreme Court "stated that it was not addressing the

---

[80] *See* Br. 43–46.

[81] *Fair Housing in Huntington Comm., Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 364 (2d Cir. 2003).

[82] *E.g., Conn. State Police Union v. Rovella*, 36 F.4th 54, 67 (2d Cir. 2022); *Leavitt*, 524 F.3d at 410.

[83] *Contra* Br. at 44–45.

[84] 561 U.S. 477 (2010).

24

constitutionality of removal protections afforded to ALJs, who perform adjudicative rather than enforcement or policymaking functions (and have done so in countless cases for decades)."[85] The District Court further examined the relevant precedent on ALJ removal protections, identified a circuit split that currently favors the NLRB's position, and found it unlikely that the Supreme Court would uphold the minority view, which is now under review on writ of certiorari.[86] For these reasons, the District Court concluded that the Appellants were not clearly likely to succeed on the merits of their removal-protection claim.

This is a far cry from the cases, cited by Appellants, remanding denials of preliminary injunctions to district courts for further analysis. A representative example is *NAACP, Inc. v. Town of East Haven*, which Appellants cite for the proposition that failure to "specify any findings or conclusions . . . and adequately analyze the parties' respective position on the merits, constitutes an abuse of discretion."[87] There, the district court based its denial of a preliminary injunction solely on an

---

[85] A-269.

[86] *Id.* (analyzing *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023)).

[87] Br. 44 (citing *NAACP*, 70 F.3d 219, 223–24 (2d Cir. 1995)).

"uncritical[] accept[ance]" of the nonmovant's assertion that granting the injunction would "be hazardous to public safety," without making any further findings on that issue or any other preliminary injunction factor.[88]

Here, there were no findings to make on any contested issue of fact because no facts were contested. The District Court simply disagreed with Appellants' legal arguments.[89] Nor have Appellants identified any "assumptions" the District Court made about contested facts[90] or explained how the District Court forced the parties "to play detective"[91] as to its rationale for denying injunctive relief.

## III. Appellants are not entitled to a preliminary injunction because they fail to satisfy any of the factors for obtaining such relief.

### A. Appellants have not shown that they are likely to succeed on the merits of their constitutional claims.

Because Appellants have not shown *any* likelihood of success on the merits for their constitutional claims, regardless of whether the

---

[88] *NAACP*, 70 F.3d at 223, 224.

[89] A-268–69.

[90] Br. 45 (quoting *NAACP,* 70 F.3d at 223–24).

[91] Br. 45 (quoting *Frazier v. Prince George's Cnty., Md.*, 86 F.4th 537, 544 (4th Cir. 2023)).

required showing is a clear likelihood, or just a simple likelihood, this Court should affirm the District Court's denial of Appellants' Application.

### 1. Appellants are not likely to prevail on their challenge to the NLRB's for-cause removal protections for ALJs.

Appellants argue that removal protections for NLRB ALJs violate the Take Care Clause of the Constitution because NLRB ALJs are only removable for cause by the members of the MSPB, who also are only removable for cause.[92] The District Court was correct to reject Appellants' Application on the ground that Appellants are not likely to succeed on this claim.[93]

> ### a. Courts generally recognize the constitutionality of removal protections for inferior officers engaged in adjudicative functions.

The Constitution is "silent with respect to the power of removal from office."[94] However, over time, several important principles have emerged. First, "[u]nder the traditional default rule, removal is incident

---

[92] Br. 47.

[93] A-269.

[94] *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 258 (1839).

to the power of appointment."[95] Second, when Congress vests the appointment of an inferior officer in a department head, as it has for NLRB ALJs,[96] "it may limit and restrict the power of removal as it deems best for the public interest."[97] And third, Congress's power to regulate department heads' removal of inferior officers is not unbounded; a removal restriction violates Article II of the Constitution if it "impermissibly burdens the President's power to control or supervise" the Executive Branch.[98]

Applying these principles, the Supreme Court has recognized that inferior officers can have some protection from removal that is consistent with the Constitution's separation of powers. In determining whether a particular removal scheme violates the Constitution, the Supreme Court has focused on the practical question of whether

---

[95] *Free Enter. Fund*, 561 U.S. at 509.

[96] An officer (other than an Article III judge) is deemed "principal" when they have no executive-branch superior other than the President, and "inferior" when they do. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1980 (2021) (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)). Appellants rightly do not contend that NLRB ALJs are principal officers, since they possess no final decision-making authority.

[97] *United States v. Perkins*, 116 U.S. 483, 485 (1886).

[98] *Morrison v. Olson*, 487 U.S. 654, 692 (1988).

28

Congress has "stripped" the President of his power and impaired "his ability to execute the laws—by holding his subordinates accountable for their conduct."[99] For example, in *Morrison v. Olson*, the Court upheld a restriction upon removability of an independent counsel empowered to investigate and prosecute certain limited categories of offenses.[100] Similarly, in *United States v. Perkins,* the Court upheld a prohibition against removing a naval cadet-engineer.[101]

And although the Supreme Court has never addressed the particular combination of inferior officer status and purely adjudicative responsibilities that ALJs possess, it has twice upheld Congress's power to establish tenure protections for *principal* officers engaged in adjudication because those officials' job duties required them to be impartial. This is grounded in the logic that "one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will."[102]

---

[99] *Free Enter. Fund*, 561 U.S. at 496.

[100] *Morrison*, 487 U.S. at 660–62 (describing the independent counsel's purview).

[101] 116 U.S. at 483.

[102] *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935).

Specifically, in *Humphrey's Executor v. United States*, the Supreme Court upheld limitations on removing officers of the Federal Trade Commission, reasoning that because the officers acted "in part quasi-legislatively and in part quasi-judicially," for-cause removal protection was constitutional.[103] And the Supreme Court again adhered to this tenet in *Wiener v. United States*, holding that the President could not remove a member of the War Claims Commission, an "adjudicatory body," simply because the President "preferred to have on the Commission men of his own choosing."[104] The Court explained that such protections would ensure that officials making determinations "on the merits of each claim" would not have "the Damocles' sword of removal" hanging over their heads.[105] The arguments for adjudicative independence accepted by the Court in *Wiener* and *Humphrey's Executor* are even more compelling where, as here, the adjudicators are

---

[103] *Id.* at 628.

[104] 357 U.S. 349, 356 (1958).

[105] *Id.* at 355–56.

inferior officers without the power to bind the Executive Branch to particular policies.[106]

However, Congress's power to grant tenure protection has some outer limits. In *Free Enterprise Fund*, the Supreme Court held that the members of the Public Company Accounting Oversight Board (PCAOB), a newly created nonprofit corporation overseen by the Securities and Exchange Commission (SEC), could not be made removable by the Commission under an extremely stringent good cause standard, where the Commissioners themselves were removable only for-cause by the President.[107]

The reason for this novel removal scheme's impermissibility is simple: the officers of the PCAOB both exercised significant policymaking and enforcement powers, *and* were nearly impossible to remove. With respect to PCAOB's power, the Supreme Court

---

[106] To be sure, *Morrison* clarified that the ultimate inquiry is whether, under the totality of the circumstances, "the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty." 487 U.S. at 691. But *Humphrey's Executor* and *Wiener* remain instructive as to the types of duties which the courts have consistently found do not require an officer be removable at the President's will.

[107] *Free Enter. Fund*, 561 U.S. at 498.

emphasized that the administrative body was the "primary law enforcement authority for a vital sector of our economy,"[108] with powers like the ability to require accounting firms to pay fees and comply with "rules and oversight"; control of firms' "hiring and professional development, promotion, supervision of audit work, . . . internal inspection procedures, [and] professional ethics rules"; and the authority to perform "routine inspections," demand "documents and testimony," and undertake "formal investigations and disciplinary proceedings," with consequences potentially amounting to federal felony offenses.[109]

The Supreme Court also emphasized that the PCAOB exercised these powers "largely independently of the Commission."[110] Specifically, the removal standard for PCAOB members was "unusually high" because the Commission could remove PCAOB members only for "willful violations" of certain laws and rules, "willful abuse of authority," or "unreasonable failure to enforce compliance."[111] For

---

[108] *Id.* at 508.

[109] *Id.* at 484–85.

[110] *Id.* at 504.

[111] *Id.* at 503.

example, though "[t]he President might have less than full confidence in . . . a [PCAOB] member who cheats on his taxes," the Court noted that this would not have been considered valid grounds for removal.[112] In short, the Supreme Court's concern with removal protections for PCAOB members was a function of their "daily exercise of prosecutorial discretion" and undertaking quintessentially "executive activities typically carried out by officials within the Executive Branch," coupled with a standard for removal that far eclipsed traditional for-cause removal.[113] With these distinctions in mind, the Court consciously declined to apply its holding to ALJs, cautioning that it was not making "general pronouncements on matters neither briefed nor argued [before the Court]"[114] and observing that "unlike members of the [PCAOB,] many [ALJs] of course perform adjudicative rather than enforcement or policymaking functions, or possess purely recommendatory powers."[115]

Since *Free Enterprise Fund*, two circuit courts have upheld the constitutionality of the for-cause removal protection scheme for ALJs in

---

[112] *Id.*

[113] *Id.* at 504.

[114] *Id.* at 506.

[115] *Id.* at 507 n.10 (citation omitted).

Section 7521. First, in *Decker Coal Co. v. Pehringer*,[116] the Ninth Circuit emphasized that the Department of Labor ALJ at issue "perform[ed] a purely adjudicatory function," unlike the PCAOB members in *Free Enterprise Fund* who exercised "policymaking and enforcement functions."[117] The Ninth Circuit also contrasted the "broad 'good cause'" language in Section 7521 with the "unusually high" removal restrictions at issue in *Free Enterprise Fund*.[118] And the "long history of adjudication by ALJs free from political influence"[119] dispelled any concern that ALJ removal protections represented a novel constitutional innovation.[120]

---

[116] 8 F.4th 1123 (9th Cir. 2021).

[117] *Id.* at 1133.

[118] *Id.* at 1132, 1135 (quoting *Free Enter. Fund*, 561 U.S. at 502–03).

[119] *Decker Coal*, 8 F.4th at 1136 (citing the Administrative Procedure Act (APA), Pub. L. No. 79-404, 60 Stat. 237 (1946) (codified as amended at 5 U.S.C. § 551, *et seq.*)).

[120] In *Seila Law v. CFPB*, the Supreme Court invalidated for-cause removal protection for the Director of the Consumer Financial Protection Bureau (CFPB). 140 S. Ct. 2183, 2192 (2020). In so doing, the Court afforded great weight to the fact that there was no longstanding precedent for having a single principal officer with for-cause removal protection heading an agency with broad policymaking and enforcement powers. *See id.* at 2201 (quoting *Free Enter. Fund*, 561 U.S. at 505) ("'Perhaps the most telling indication of [a] severe constitutional problem' with an executive entity 'is [a] lack of historical precedent' to

34

Similarly, in *Calcutt v. FDIC*,[121] the Sixth Circuit "doubt[ed]

Calcutt could establish a constitutional violation from the ALJ removal

restrictions."[122] Like the Ninth Circuit in *Decker Coal*, the Sixth Circuit

emphasized that the Supreme Court expressly excluded ALJs from the

reach of *Free Enterprise Fund* and noted that "agencies can choose not

to use ALJs in adjudications . . . and many ALJs perform adjudicatory

functions that are subject to review by higher agency officials, which

arguably would not be considered central to the functioning of the

executive Branch for purposes of Article II removal precedents."[123]

The only appellate court to rule differently is the Fifth Circuit. In

*Jarkesy v. SEC*, a divided Fifth Circuit panel held that removal

---

support it."). Here, by contrast, the reason there are so few cases
addressing ALJ tenure is primarily that for the first six decades of the
APA's existence, no one even suggested that granting tenure protection
to ALJs might be unconstitutional. *See* Harold H. Bruff, *Presidential
Power and Administrative Rulemaking*, 88 Yale L.J. 451, 482 (1979)
(stating that "no one would argue that the statutory tenure protections
now enjoyed by administrative law judges should be found
unconstitutional").

[121] 37 F.4th 293, 314–17 (6th Cir. 2022), *rev'd per curiam on other
grounds*, 143 S. Ct. 1317 (2023).

[122] *Id.* at 319.

[123] *Id.* (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
537 F.3d 667, 699 n.8 (D.C. Cir. 2008) (Kavanaugh, J., dissenting))
(internal quotation marks omitted).

35

protections for SEC ALJs were unconstitutional under *Free Enterprise Fund*.[124] That opinion is unpersuasive, failing to cite *Decker Coal*, much less address the Ninth Circuit's analysis. Rather, the majority appeared to base its opinion on, amongst other things, SEC ALJs' alleged power to punish contemptuous conduct, and a debatable claim that their decisions are occasionally final and binding.[125] But while those powers may be indicative of inferior-officer status, they hardly show that protecting ALJs from unjust dismissal would "impede the President's ability to perform his constitutional duty."[126] The *Jarkesy* majority also failed to engage with the well-reasoned dissent, claiming it was "all built on dicta from *Free Enterprise Fund*."[127] Finally, the Fifth Circuit

---

[124] 34 F.4th at 463.

[125] *Id.* at 464. Whatever the validity of the Fifth Circuit's "final and binding" claim about SEC ALJs, it is entirely inapposite as applied to NLRB ALJs, whose decisions are statutorily non-final under the plain language of the NLRA. 29 U.S.C. § 160(c) ("In case the evidence is presented before . . . an [ALJ] . . . such judge . . . shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed.")

[126] *Morrison*, 487 U.S. at 691.

[127] *Jarkesy*, 34 F.4th at 464.

36

did not even pass on the remedy for the constitutional violation it found.[128] Overall, the Fifth Circuit's analysis—now being reviewed by the Supreme Court—is unpersuasive in light of otherwise uniform analysis by the other circuit courts to have addressed ALJ removal protections.

> b. Neither *Free Enterprise Fund* nor any other Supreme Court precedent supports the notion that removal protections for NLRB ALJs are unconstitutional.

Unlike the structure invalidated by *Free Enterprise Fund*, the removal-protection scheme for the NLRB's ALJs does not improperly strip the President of executive power. First, ALJs' duties do not overlap with the NLRB's more identifiably executive "enforcement or policymaking functions."[129] Enforcement is entirely out of ALJs' hands, who must take cases as they come.[130] Rather, it is the NLRB's General

---

[128] *See* 34 F.4th at 463 n.17. Appellants' failure to show "compensable harm" arising from their removal-protection claim, *see Collins v. Yellen*, 141 S. Ct. 1761, 1788–89 (2021), forecloses not just their ability to show irreparable harm in this context, *see below* Section III-B, but also their ability to obtain a remedy at final judgment that would impact the unfair-labor-practice proceeding.

[129] *Free Enter. Fund*, 561 U.S. at 507 n.10.

[130] *See* 5 U.S.C. § 3105 (stating that ALJs "may not perform duties inconsistent with their duties and responsibilities as [ALJs]").

Counsel who possesses the "final authority" to allege unfair labor practices and advance legal theories in support of those allegations.[131] And the NLRB's General Counsel *is* removable at will by the President.[132]

As for policymaking, NLRB ALJs have no rulemaking authority, no final decision-making authority in adjudications, and no ability to bind the Agency.[133] In unfair-labor-practice adjudications, the parties may file exceptions to an ALJ's decision with the Board on any contested issue following the judge's issuance of a decision.[134] The Board has no authority to decline a procedurally proper request to review an ALJ's decision. And unreviewed ALJ decisions can never bind the

---

[131] 29 U.S.C. § 153(d) (stating that the General Counsel has "final authority" to investigate charges, issue complaints, and prosecute cases before the Board); *Raley's*, 337 NLRB 719, 719 (2002) ("It is well established that the General Counsel's theory of the case is controlling.").

[132] *Exela Enter. Sols. v. NLRB*, 32 F.4th 436, 441–45 (5th Cir. 2022); *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1103–06 (9th Cir. 2023); *see also Collins*, 141 S. Ct. at 1782 ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure.").

[133] Rather, the agency's rulemaking authority is vested in the Board. 29 U.S.C. § 156.

[134] 29 C.F.R. §§ 102.46(a), 102.69(c)(2).

Agency.[135] Finally, the Board need not use ALJs to adjudicate cases at all, as it has the authority to decide cases of particular interest before itself or any of its members.[136] In short, when the Board wants to make policy in a manner contrary to the recommendation of an ALJ, it can simply reverse the ALJ's decision on exceptions. Or it could conduct a rulemaking to set policy in that area. The power to remove an ALJ adds essentially nothing to this panoply of control mechanisms.[137] And by extension, this means that nothing about the NLRB ALJs' powers or functions interferes with the President's executive powers.

Appellants contend that removal protections for NLRB ALJs are unconstitutional because previous cases that greenlighted removal protections for other inferior officers did not involve "two-layer, for-cause protection."[138] But this substantially overreads *Free Enterprise Fund*. Nothing about that case establishes a categorical rule that

---

[135] *Carpenters Loc. 370* (*E. Contractors Ass'n*), 332 NLRB 174, 175 n.2 (2000).

[136] 29 U.S.C. § 160(c).

[137] Notably, the willful refusal to adjudicate cases in accordance with governing law has *itself* been established by MSPB to be "good cause" for discipline of an ALJ; thus, an agency need not tolerate deliberate or persistent refusals by ALJs to follow the law. *Anyel*, 58 MSPR at 269.

[138] Br. 52.

multiple levels of removal protection are always unconstitutional. The Supreme Court itself cautioned in *Free Enterprise Fund* that it was neither making a "general pronouncement[]" that "two levels of good-cause tenure" are *always* unconstitutional nor questioning the constitutional status of ALJs.[139] Such a broad invalidation of ALJ removal restrictions would be astonishing, and "[l]ong settled and established practice is a consideration of great weight in proper interpretation of constitutional provisions."[140]

Appellants incorrectly aver that removal protections for NLRB ALJs fall beyond the Supreme Court's precedents covering other inferior officers. They base this position largely on *dicta* from *Seila Law*, cited above, claiming that "Congress may restrict the executive removal power only for inferior officers 'with limited duties and no policymaking or administrative authority.'"[141] But *Seila Law* itself concerned removal protections for the single director of the CFPB, a principal officer, and, as noted above,[142] ultimately turned on the fact that there was "no

---

[139] 561 U.S. at 505–07, 507 n.10; *see also* above at 33.

[140] *Noel Canning*, 573 U.S. at 524 (cleaned up).

[141] Br. 51 (quoting *Seila Law*, 140 S. Ct. at 2200).

[142] *See* note 120.

foothold in history or tradition" for an independent agency to be headed by a single Director with removal protection.[143]

Notwithstanding *Seila Law*'s characterization of past caselaw, the operative test remains that removal protections for inferior officers are invalid only to the extent to which they "unduly trammel[] on executive authority."[144] Appellants' claim that NLRB ALJs determine "policy of an executive branch agency"[145] is plain wrong. NLRB ALJs cannot issue binding decisions, initiate their own cases, or engage in rulemaking.[146] It is the NLRB Board members and, debatably, the General Counsel— officers not protected by multiple levels of removal protection—who exercise policymaking powers.[147] ALJs thus fall squarely into *Morrison*'s, and indeed *Seila*'s, description of the kinds of officers for whom tenure protections pose no impediment to presidential control.

---

[143] *Seila Law*, 140 S. Ct. at 2202.

[144] *Morrison*, 487 U.S. at 691.

[145] Br. 52 (quoting Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8, 15 (1991)).

[146] *See* above, at 12–13.

[147] The General Counsel does not have removal protection at all. *Exela*, 32 F.4th at 441–45; *Aakash*, 58 F.4th at 1103–06.

Appellants' attempt to distinguish the duties performed by NLRB ALJs from those performed by the inferior officers at issue in *Morrison* and *Perkins* falls flat.[148] While NLRB ALJs certainly perform *different* duties than the naval cadet officer at issue in *Perkins* or the independent counsel in *Morrison*, what NLRB ALJs have in common with both those officers is that they do not make policy. Indeed, removal protections for ALJs pose, if anything, far lesser concerns than those previously upheld in *Perkins* and *Morrison*. Unlike ALJs, the special counsel in *Morrison* exercised duties much closer to core executive branch powers, as the special counsel had authority to investigate and prosecute "certain high-ranking Government officials for violations of federal criminal laws."[149]

The District Court, having considered this backdrop, and the existence of a circuit split (including multiple circuits ruling against Appellants' position), correctly determined that Appellants failed to

---

[148] *See* Br. 51–54.

[149] *Morrison*, 487 U.S. at 660.

show a likelihood of success on their removal-protection claim.[150] This Court should affirm.

> ### 2. Appellants have not demonstrated a likelihood of success on their claim that Judge Chu's appointment violated the Appointments Clause.

Plaintiffs' Application fails to demonstrate a likelihood of success on their Appointments Clause challenge for two reasons. First, the District Court lacks jurisdiction because this claim must be raised and litigated through normal administrative review channels. Second, the argument fails on the merits because Judge Chu's authority to conduct the proceedings was ratified long before he will issue any recommended decision.

> ### a. The District Court, and by extension this Court, lacks jurisdiction to enjoin the unfair-labor-practice proceeding based on Appellants' Appointments Clause claim.

Under firmly established jurisdictional principles, Appellants must first litigate their Appointments Clause claim before the NLRB. In *Myers v. Bethlehem Shipbuilding Corp.*, the Supreme Court held that district courts normally do not have jurisdiction to review or enjoin the

---

[150] A-269.

NLRB's processing of an unfair-labor-practice case.[151] Congress empowered the NLRB to prevent "any person" from engaging in unfair labor practices,[152] subject to circuit court review under Sections 10(e) and (f) of the NLRA, but only after a final Board order issues.[153] Appointments Clause challenges concerning individual Agency appointments must follow this congressionally charted path to the federal circuit courts. Indeed, courts have held that Appointments

---

[151] 303 U.S. 41, 47 (1938); *see also Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 671 (5th Cir. 1966) ("[E]ffort[s] by the Federal District Courts to review or supervise unfair labor practice proceedings prior to the issuance of the Board's final order '[are] at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'") (quoting *Myers*, 303 U.S. at 50–51).

[152] 29 U.S.C. § 160(a). The NLRA creates original district court jurisdiction in only two narrow circumstances: enforcement of subpoenas and *pendente lite* injunctions. Notably, each of those grants of jurisdiction may be invoked only by the NLRB itself. *Id.* §§ 160(j)–(l), 161(2).

[153] *Id.* §§ 160(e), 160(f). Section 10(e) provides that a district court may enforce a final Board order "if all the courts of appeals to which application may be made are in vacation," but currently no court of appeals goes into vacation status.

Clause challenges can be forfeited if not exhausted at the administrative level.[154]

Citing the Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, Appellants contend that it was appropriate for them to sue Appellees in district court "rather than waiting for appellate review of the final agency order—because the harm of 'being subjected to unconstitutional agency authority' is a 'here-and-now injury' that is 'impossible to remedy once the proceeding is over."[155] But *Axon* does not support district court jurisdiction over Appellants' Appointments Clause claim. Rather, *Axon* held that "district courts have jurisdiction to hear" and "resolve the parties' constitutional challenges to the [agency's] *structure*."[156] The Court reserved this exception for "extraordinary claims" involving "fundamental" facial challenges to an agency's

---

[154] *E.g.*, *1621 Rt. 22 W. Operating Co. II, LLC v. NLRB*, 825 F.3d 128, 141–43 (3d Cir. 2016); *see also Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 674 (6th Cir. 2018) (petitioner's challenge to individual ALJ's appointment was forfeited by failure to timely raise it).

[155] Br. 1 (quoting 598 U.S. 175, 191 (2023)).

[156] *Id.* at 180 (emphasis added). With respect to all other claims, *Axon* reaffirmed the Court's prior holding in *Myers*. *See id.* at 192.

operation that accuse the agency of acting "unconstitutionally in all or a broad swath of its work."[157]

Unlike their removability challenge, Appellants' Appointments Clause claim falls far short of a systemic threat. All of the Board's thirty-six ALJs were appointed by the Board itself, which is what the Constitution requires.[158] To be sure, five of the Board's current ALJs were appointed at times when it was later determined that the Board lacked a quorum.[159] But soon after a quorum was restored, the Board ratified each appointment. And so, at most, any constitutional infirmity would affect only proceedings over which those five judges presided prior to those ratifications. Appellants' claim does not challenge "the structure or very existence" of the Board or even a "broad swath of its

---

[157] *Id.* at 180, 189.

[158] *WestRock Servs., Inc.*, 366 NLRB No. 157, slip op. at 3 (2018); *see generally* https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory.

[159] A-65–66. Another judge whose appointment occurred when the Board lacked a quorum has since retired.

work," as *Axon* requires to circumvent the normal administrative review process.[160]

Appellants also fail to find any support for jurisdiction in the case on which *Axon* was based: *Thunder Basin Coal Co. v. Reich*.[161] In *Thunder Basin*, the Supreme Court identified three factors to be balanced in determining whether a case falls outside a channeling provision: (1) if "a finding of preclusion could foreclose all meaningful judicial review"; (2) if the suit is "wholly collateral to a statute's review provisions"; and (3) if the claims are "outside the agency's expertise."[162] In *Axon*, the Court unanimously found that all three factors favored district court jurisdiction,[163] but here, none of those factors favor Appellants.

First, Appellants would still get meaningful judicial review even if the federal courts currently lack jurisdiction over Appellants'

---

[160] *Axon*, 598 U.S. at 189; *see Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) (rejecting party's reliance on *Axon* to pursue "an as-applied [constitutional] challenge").

[161] 510 U.S. 200 (1994).

[162] *Id.* at 212–13.

[163] *Axon*, 598 U.S. at 189.

47

Appointments Clause claim. Appellants' challenge to Judge Chu's authority is discrete, focusing on the circumstances of his initial appointment, which an indisputably valid Board later ratified.[164] Certainly, Judge Chu is not an "illegitimate decisionmaker"[165] today. Appellants allege a "distant-and-long-ago" injury, *not* one that is "here-and-now." And any harmful consequences that stemmed from Judge Chu's pre-ratification appointment can be easily remedied through the normal administrative review process before any of Judge Chu's decisions carry legal consequences.[166]

Additionally, neither the second nor third *Thunder Basin* factors favor district court jurisdiction. As to whether Appellants' claims are "wholly collateral," a claim that a particular ALJ has a defective appointment is not an objection to an agency's "power generally," but is instead far more akin to a "procedural or evidentiary matter."[167] In

---

[164] *See below*, 51–56 (discussing the Board's ratification of Judge Chu's appointment).

[165] *Axon*, 598 U.S. at 191.

[166] *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 16–21 (2012) (denying jurisdiction of plaintiff's constitutional claims in district court and noting that the statutory scheme at issue provided for ultimate appellate review of those claims).

[167] *Axon*, 598 U.S. at 193.

48

particular, litigation of this issue before the Agency will partially turn
on whether Appellants waived or forfeited their challenge by
acquiescing to Judge Chu's hearing of the case, a pure question of Board
law. Appellants do not claim that every NLRB ALJ has been appointed
unconstitutionally, only Judge Chu.

Similarly, regarding the third *Thunder Basin* factor, the
Appointments Clause challenge is not beyond the NLRB's expertise.
Unlike a removal-protection claim, which the Supreme Court noted was
"detached from 'considerations of agency policy,'"[168] challenging a
particular appointment necessarily implicates an agency's ALJ selection
policies and procedures. Such a claim might require, for example,
examining the specifics concerning a particular ALJ's appointment or
ratification.[169] Because agencies best understand their own
appointment processes and are well-equipped to address individual

---

[168] *Id.* at 194 (quoting *Free Enter. Fund*, 561 U.S. at 491).

[169] Indeed, the Board has addressed arguments that its ALJs, including
Judge Chu, were improperly appointed. *See, e.g.*, *CSC Holdings, LLC*,
368 NLRB No. 106, slip op. at 1 n.3 (2019); *WestRock Servs.*, 366 NLRB
No. 157, slip op. at 1.

appointment allegations,[170] such claims are not "structural" within the meaning of *Axon*.[171]

Finally, Plaintiffs cannot leapfrog Congress's prescribed scheme by claiming futility.[172] Litigants in adversarial proceedings are generally expected to raise as-applied constitutional challenges within those proceedings.[173] And the NLRB's review scheme allows Appellants to bring their Appointments Clause claim first before Judge Chu and

---

[170] *Cf. K & R Contractors, LLC v. Keene*, 86 F.4th 135, 146 (4th Cir. 2023) (internal quotations omitted) (noting that an Appointments Clause challenge contests "how [an agency] *applied* its statutory appointments power," which an agency can remedy by reassigning the underlying case, as opposed to a removal challenge, which an agency cannot remedy because it "cannot invalidate a statute enacted by Congress to govern and restrain the agency").

[171] Plaintiffs briefly cite *Carr v. Saul*, 593 U.S. 83, 84 (2021), for the proposition that "[A]gency adjudications are generally ill-suited to address structural constitutional challenges." Br. 15 (alteration in original). But that case addressed the Social Security Administration's *agencywide* practice of lower-level staff appointing ALJs, which as discussed above is distinguishable from Appellants' claims.

[172] *See id.*

[173] *Compare Carr,* U.S. at 93–95 (Appointments Clause challenge not forfeited despite failure to raise it before ALJ, where proceeding was inquisitorial and no agency-head review was available), *with Smith v. Bd. of Governors of the Fed. Rsrv. Sys.*, 73 F.4th 815, 823 (10th Cir. 2023) (Appointments Clause challenge forfeited where challenger failed to exercise right of review before agency head and proceedings were adversarial in nature).

then before the full Board, with the possibility of relief if the Board

finds it meritorious—in that event, the case could be reassigned to a

different ALJ.[174]

        b.  Judge Chu's appointment was properly
           ratified, and no merits decision has issued.

Appellants' argument that Judge Chu's appointment was defective

fails on the merits. Appellants are correct that NLRB ALJs like Judge

Chu are inferior "Officers of the United States" and thus are subject to

Appointments Clause requirements.[175] Under that Clause, only the

President, "Courts of Law," or "Heads of Departments" can appoint

inferior officers.[176] As a "freestanding component of the Executive

Branch, not subordinate to or contained within any other such

component," the NLRB qualifies as a Department,[177] with the five-seat

---

[174] Judge Chu has not yet addressed Appellants' Appointments Clause argument on the merits, nor issued a recommendation as to whether, under Board law, Appellants' argument has been waived or forfeited by inaction. Even should Judge Chu choose to abstain from deciding the validity of his own appointment (contrary to the General Counsel's position, Opp'n to Resp'ts' Mot. to Dismiss 1–2, *Healthbridge Mgmt., LLC*, Case Nos. 34-CA-070823, *et al.* (NLRB Dec. 6, 2023)), Appellants may still raise those arguments on exceptions to the Board.

[175] Br. 55 (quoting *Lucia v. SEC*, 585 U.S. 237, 241 (2018)).

[176] *Id.*

[177] *Free Enter. Fund*, 561 U.S. at 511.

Board as its head.[178] Thus, so long as the Board appointed Judge Chu—and it did—the Appointments Clause's basic requirements for appointing an inferior officer are satisfied.

Appellants argue that because the Board appointed Judge Chu at a time it lacked a quorum in 2012, he was not properly appointed when the unfair-labor-practice hearing opened that same year.[179] But even assuming Judge Chu's appointment was initially defective, the Board cured any Appointments Clause problem when it ratified his appointment *nunc pro tunc* with a proper quorum.[180] Because "a ratified act is given effect as if originally authorized,"[181] the Board's ratification deemed Judge Chu appropriately appointed from the start of his tenure.

Moreover, the Board's ratification satisfied all the requirements for an effective ratification, specifically that the ratifier must (1) have the authority to take the action; (2) have full knowledge of the decision to be ratified; and (3) make an independent and detached evaluation of

---

[178] *Id.* at 511–12; *see also WestRock*, 366 NLRB No. 157, slip op. at 1.

[179] Br. 55–56.

[180] *See* A-65–66; *see also Newark Elec. Corp.*, 366 NLRB No. 145, slip op. at 1 n.1 (2018), *enforced*, 14 F.4th 152 (2d Cir. 2021).

[181] *Chem. Bank v. Affiliated FM Ins. Co.*, 196 F.3d 373, 375 (2d Cir. 1999).

the merits.[182] As explained, the Board has the power to appoint Judge Chu under the Appointments Clause. Also, per its meeting minutes, the Board explicitly "considered the relevant supporting materials" and authorized Judge Chu's selection, satisfying both the knowledge and independent and detached evaluation requirements.[183] Appellants have failed to identify any deficiency in the Board's ratification.

Instead, Appellants attack the *effect* of the ratification, claiming that it is too little too late.[184] Specifically, Appellants argue that the Supreme Court's decision in *Lucia v. SEC* considered the effect of a ratification on an Appointments Clause violation and determined that the correct remedy was a proceeding before a new ALJ or the SEC itself.[185] But *Lucia* addressed a markedly different situation, one in which the ALJ had "already both heard Lucia's case and issued an initial decision on the merits" before his appointment was ratified and thus could not "be expected to consider the matter as though he had not

---

[182] *Newark Elec. Corp.*, 14 F.4th at 163.

[183] A-65.

[184] Br. 57.

[185] *Id.* (citing *Lucia*, 585 U.S. at 251).

adjudicated it before."[186] As such, *Lucia* stands *only* for the proposition

that a claimant is entitled to a new hearing before a new ALJ when a

judge "heard and *decided* [the claimant's] case without the kind of

appointment the [Appointments] Clause requires."[187]

The District of New Jersey recently interpreted *Lucia*'s reach

exactly this way in *Sun Valley Orchards, LLC v. United States

Department of Labor*.[188] That court addressed whether a new hearing

before a different ALJ was necessary when the ALJ had presided over

an entire administrative hearing but had not yet rendered a decision.[189]

The District of New Jersey held that the pre-decision ratification of the

ALJ's appointment cured whatever Appointments Clause defect existed

before ratification.[190]

---

[186] *Lucia*, 585 U.S. at 251.

[187] *Id.* (emphasis added).

[188] No. 1:21-cv-16625, 2023 WL 4784204 (D.N.J. July 27, 2023), *appeal docketed*, No. 23-2608 (3d Cir. Sept. 5, 2023). The District Court found this decision persuasive. *See* A-267.

[189] *Sun Valley*, 2023 WL 4784204, at *8.

[190] *Id.*

Here, the Board properly ratified Judge Chu's appointment before Judge Chu reached a decision, just like in *Sun Valley*.[191] Additionally, Appellants identify no meaningful pre-ratification actions taken by Judge Chu with a significant effect on this case.[192] Even when the District Court specifically asked them to do so, Appellants identified only three minor pre-ratification evidentiary decisions: (1) Judge Chu's deferral of his ultimate determination on the admissibility of certain evidence that pre-dated the six-month period parties have to file an unfair-labor-practice charge under Section 10(b) of the Act[193]; (2) his exclusion from evidence of attorney correspondence in the bankruptcy proceedings and a related order of the bankruptcy court, which Appellants claim is relevant to their bargaining position[194]; and (3) his exclusion from evidence of strike notices sent to other employers by the

---

[191] The instant case actually presents even less constitutional concern than *Sun Valley* did, given that Judge Chu's ratification occurred while the administrative record was still open. In fact, the Board ratified Judge Chu's appointment over nine years before the administrative hearing concluded. Not once during that time did Appellants request that Judge Chu revisit a previous action in the case based on an Appointments Clause concern.

[192] Br. 59–60.

[193] Plaintiffs' Supp. Memo. 7, ECF No. 66.

[194] *Id.* at 13.

union that represented Appellees' workers, which Appellants claim show the union's proclivity to strike.[195] It is difficult to envision how such tangential decisions, one of which Judge Chu chose to defer rather than resolve, equate to the *Lucia* ALJ's merits decision.[196]

In sum, Appellants will receive precisely what *Lucia* guarantees: a decision on the merits by a duly appointed ALJ, untainted by any prior decision predating his appointment. Because *Lucia* does not apply to Judge Chu's appointment by its plain terms, Appellants' Appointments Clause claim is unlikely to succeed.

### B. Appellants' failure to establish irreparable harm is fatal to their claims for injunctive relief.

Appellants have not shown the requisite irreparable harm to warrant a preliminary injunction on either their ALJ-removability or Appointments Clause claims. Appellants primarily assert that the Supreme Court's decision in *Axon* supports their irreparable harm

---

[195] *Id.* at 14.

[196] *See* A-268 (noting that "[e]ven assuming the matters encompassed by these three rulings cannot be revisited during the remainder of the hearing . . . plaintiffs have not shown that the impact of the rulings on the development of the record justifies invalidating the hearing").

56

claim, but *Axon* did not address injunctive relief and does not bear on the question of irreparable harm.

On their ALJ-removability claim, Appellants have presented no evidence sufficient to establish that the alleged constitutional violation has or is harming them. And on their Appointments Clause claim, Appellants' asserted harm evaporated as soon as the Board ratified ALJ Chu's appointment—leaving no potential injury for the District Court to prevent.

### 1. There is no irreparable harm as to Appellants' ALJ-removability claim.

#### a. Appellants fail to allege causal harm, a prerequisite to relief.

Appellants have not alleged any of the facts necessary to establish a right to relief on their ALJ-removability claim. This Court's cases, as well as cases in several other circuits, make clear that merely alleging constitutional harm fails to automatically establish irreparable injury. Instead, Appellants must demonstrate that actual, irremediable harm will result, absent preliminary relief.[197]

---

[197] *See, e.g.*, *Jayaraj v. Scappini*, 66 F.3d 36, 38–40 (2d Cir. 1995) (preliminary injunction based on a due process violation vacated; movant failed to establish irreparable harm); *Savage v. Gorski*, 850 F.2d

In *Collins v. Yellen*, the Supreme Court held that invalid removal restrictions do not necessarily entitle a challenger to a remedy.[198] Rather, a plaintiff must show that the removal restriction actually "cause[d] harm" by prejudicing the President's control of the underlying action.[199] In other words, Appellants would have to show that the President "express[ed] displeasure with actions taken by" the official with removal protection and "assert[ed] that he would remove" the official "if the statute did not stand in the way."[200]

---

64, 67–68 (2d Cir. 1988) (where violation of the First Amendment, alleged, movant failed to establish necessity for preliminary injunction to avoid "chilling effect" on First Amendment rights); *see also Siegel v. LePore*, 234 F.3d 1163, 1177–78 (11th Cir. 2000) (en banc) (per curiam) (rejecting proposition that a "violation of constitutional rights always constitutes irreparable harm" and collecting cases); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) ("equitable relief depends on irreparable harm, even when constitutional rights are at stake"). *Brewer v. W. Irondequoit Cen. School Dist.*, 212 F.3d 738, 744–45 (2d Cir. 2000), does not purport to overrule prior cases holding that the mere showing of any likely constitutional violation establishes *per se* irreparable harm; that case turned on the inadequacy of monetary compensation to redress the plaintiff's equal-protection injuries.

[198] 141 S. Ct. at 1788–89.

[199] *Id.* at 1789.

[200] *Id.; see also Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB* ("*CFSAA*"), 51 F.4th 616, 632 (5th Cir. 2022), *cert. granted on other grounds*, No. 22-448 (argued Oct. 3, 2023) (identifying "three requisites for proving harm" for removal claim: (1) substantiated desire by the President to

Neither Appellants' Complaint nor their Application alleges facts sufficient to meet the causal-harm standard for their removability claim. There is no evidence that the President has sought to remove ALJ Chu or that, but for the removal restrictions, "the challenged actions taken by" him would not have occurred.[201]

This failure is dispositive. Courts of appeals uniformly reject Appellants' argument[202] that harm justifying relief automatically flows from an allegedly invalid removal restriction.[203] This includes this Court, which held in *CFPB v. Law Offices of Crystal Moroney, P.C.* that "to void an agency action due to an unconstitutional removal protection, a party must show that the agency action would not have been taken *but for* the President's inability to remove" the improperly tenured

---

remove the unconstitutionally insulated actor; (2) perceived inability to remove the actor due to infirm provision; and (3) nexus between desire to remove and challenged actions of insulated actor).

[201] *See Collins*, 141 S. Ct. at 1789.

[202] Br. 60–61 (citing *Axon*, 598 U.S. 175.

[203] *See, e.g.*, *K & R Contractors*, 86 F.4th at 149; *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022) *cert. denied*, 143 S. Ct. 2610 (2023); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022); *Calcutt*, 37 F.4th at 314–17; *CFSAA*, 51 F.4th at 632–33.

official.[204] Remarkably, Appellants do not address or even cite *Crystal Moroney*, which was decided less than a year ago. Before the District Court, Appellants took the position that *Axon* effectively overruled *Crystal Moroney*.[205] But post-*Axon* cases do not support this position.[206] Indeed, two district courts have specifically rejected Appellants' argument that *Axon*-based claims automatically "give rise to an irreparable injury for purposes of the preliminary injunction analysis."[207]

Perhaps unsurprisingly, Appellants have not identified a single case in which a court has enjoined *any* agency proceeding solely because

---

[204] 63 F.4th 174, 180 (2d Cir. 2023), *petition for cert. filed*, No. 22-1233 (June 21, 2023).

[205] ECF No. 60, at 12–13.

[206] *See Collins v. Dep't of the Treasury*, 83 F.4th 970, 982–83 (5th Cir. 2023) (applying the same causal-harm framework to removability claim as outlined in *Crystal Moroney*).

[207] *Kim v. FINRA*, No. 1:23-CV-02420(ACR), 2023 WL 6538544, at *13 & n.19 (D.D.C. Oct. 6, 2023), *appeal docketed*, No. 23-7136 (D.C. Cir. Oct. 19, 2023); *accord Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. CIV-22-232-RAW, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023) ("*Axon* simply answered a jurisdictional question; it did not include an injunction analysis," and "a violation of a constitutional right alone constitutes irreparable harm [only in] cases involving individual rights, not the allocation of powers among the branches of government.").

some responsible agency official was either alleged or found to be improperly protected from removal.[208] And in at least one case, *Burgess v. FDIC*, a district court within the Fifth Circuit determined that an ALJ-removability claim "ha[d] merit" under circuit law, but nonetheless denied injunctive relief because "the requisite harm has not been shown."[209] In short, Appellants' assertion that an unlawful removal restriction necessarily causes irreparable harm has never been accepted by any court.

---

[208] On reply, Appellants may be tempted to cite to Judge Walker's statement concurring in the D.C. Circuit's *per curiam* order granting a motion for injunction pending appeal in *Alpine Securities Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307 (July 5, 2023). But that would be a mistake. The company in *Alpine* faced the "corporate death penalty," *id.* at *1, and raised several other constitutional issues not present here. And since neither of the other judges on the D.C. Circuit motions panel joined Judge Walker's concurrence, the rationale of the court's unpublished order is unclear. Thus, the views Judge Walker expressed in *Alpine* are not binding even within the D.C. Circuit. *See Kim*, 2023 WL 6538544, at *9 (disagreeing with Judge Walker's analysis).

[209] 639 F. Supp. 3d 732, 746–47 (N.D. Tex. 2022), *appeal docketed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022).

b. Preliminary injunctive relief is unavailable where severance would resolve the threat of appearing before an unconstitutionally insulated adjudicator.

There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress."[210] Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law."[211] And "it is fairly unusual for the remainder of a law not to be operative."[212]

ALJs are removable "by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board."[213] MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."[214] Should the Court find ALJ

---

[210] *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020).

[211] *Id.* at 2353.

[212] *Id.* at 2352.

[213] 5 U.S.C. § 7521(a).

[214] *Id.* § 1202(d).

62

removal protections to be unconstitutional at final judgment, it could sever the second half of the sentence in § 7521(a) after "good cause," as to Judge Chu.

This would be consistent with how the Supreme Court has dealt with unlawful removal protections in recent cases. In *Free Enterprise Fund*, above, the plaintiffs sued to stop PCAOB's ongoing investigation. The Court found PCAOB's removal protections unconstitutional, but limited the remedy to severing the excessive tenure protections; it specifically rejected the argument "that the [PCAOB's] 'freedom from Presidential oversight and control' rendered it 'and all power and authority exercised by it' in violation of the Constitution."[215] The Court did the same in *Seila Law*, because "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully operative

---

[215] *Free Enter. Fund*, 561 U.S. at 508–10 (2010) (quoting plaintiff's complaint). Similarly, in *PHH Corp. v. CFPB*, the D.C. Circuit rejected the petitioner's call "to strike down the CFPB and prevent its continued operation[.]" 839 F.3d 1, 37 (2016), *opinion vacated and reh'g granted on other grounds* (Feb. 16, 2017). And a district court recently refused to grant preliminary relief on this issue, regardless of whether removal protections for ALJs were constitutional, because the appropriate remedy would be to sever the removal provisions rather than enjoin the agency. *Space Expl. Techs. Corp. v. Bell*, No. 1:23-CV-00137, 2023 WL 8885128, at *5 (S.D. Tex. Nov 8, 2023).

without the offending tenure restriction" and "[t]hose provisions are capable of functioning independently."[216]

The same reasoning applies here. Even should this Court ultimately find Judge Chu's removal protections unconstitutional, Appellants would not be entitled to an injunction (preliminary or otherwise) of the administrative proceedings. Rather, the most that Appellants could obtain—at the end of this case—would be a declaratory judgment invalidating the offending portions of the removal statute, with any "invalidation" being no broader than necessary to address Appellants' injuries.[217] This Court need not decide now precisely how the statute should be severed or how broad a declaratory judgment could be, only that the District Court did not err in denying injunctive relief.

---

[216] 140 S. Ct. at 2209.

[217] *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").

### 2. *There is no irreparable harm as to Appellants' Appointments Clause claim.*

Appellants cannot show irreparable harm on their Appointments Clause claim because they ceased being harmed, at the very latest, when the Board ratified Judge Chu's appointment. As fully argued above in Section III-A-2, the Board cured any Appointments Clause problem—and thus any ongoing harm to Appellants—no later than July 18, 2014. On that date, with a proper quorum, the Board ratified *nunc pro tunc* and expressly authorized the earlier selection of Judge Chu as an ALJ.[218]

### 3. *Appellants' years-long delay in raising constitutional claims undermines their assertion of irreparable harm.*

Appellants sat on these constitutional claims for over a decade. That fact alone proves that Appellants have not been experiencing real harm—and especially not "irreparable" harm requiring expedited judicial intervention.[219] The unfair-labor-practice proceeding now

---

[218] *See Newark Elec. Corp.*, 366 NLRB No. 145, slip op. at 1 n.1.

[219] *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

65

pending decision with Judge Chu is well into its twelfth year, and yet Appellants' June 12, 2023 collateral attack was the first indication that they took issue with his appointment or tenure. Appellants answered five amendments to the administrative complaint without a hint, and 46 days of hearing passed without a peep, even though the Board could have reassigned the case if it thought their claims had merit, or even simply in an abundance of caution. "[E]quity aids the vigilant, not those who sleep on their rights."[220]

As noted above at pages 44–45 and 50, Appellants' constitutional arguments may well be found untimely before the NLRB, as arguments that raise alleged structural constitutional defects are affirmative defenses that are forfeited if not raised at the proper time.[221] Parties

---

[220] *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997).

[221] *NLRB v. Pier Sixty, LLC*, 855 F.3d 115, 120 (2d Cir. 2017) (party forfeited challenge to appointment of Acting General Counsel "by not raising it in the proceedings before the Board"); *Smith*, 73 F.4th at 822–23 (petitioners forfeited Appointments Clause challenge by not raising it to agency); *1621 Route 22 W. Operating Co.*, 825 F.3d at 141 (identifying "developing consensus" of courts holding that untimely appointments challenges are forfeited); *Pain Relief Centers, P.A.*, 371 NLRB No. 143, slip op. at 1 n.1 (2022) (holding that two-layer removal protection challenge was forfeited by failure to raise it until reply in support of exceptions); *see also United States v. L.A. Tucker Truck*

that have *de facto* consented to a non-Article III tribunal by failing to object, despite knowledge of the reason for objection, may be bound to its rulings.[222] There are, at least, serious questions as to whether Appellants have sought to "sandbag[]" the agency by "remaining silent about [their] objection and belatedly raising the error only if the case does not conclude in [their] favor."[223] It was only once the final phase of the unfair-labor-practice hearing, involving joint- and single-employer liability, was finally about to be litigated that Appellants claimed the hearing must be enjoined—first on bankruptcy grounds; then, after that failed,[224] on the constitutional grounds raised here.[225]

---

*Lines, Inc.*, 344 U.S. 33, 36–37 (1952) (alleged defects in appointments are forfeited if not raised "at the time appropriate under [an agency's] practice").

[222] *See Crest One Spa v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 233 (2d Cir. 2015) (citing *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015)).

[223] *Stern v. Marshall*, 564 U.S. 462, 482 (2011).

[224] *See above* at 9.

[225] Appellants puzzlingly argue that they were only able to raise their constitutional claims once the Supreme Court "opened a new path" in *Axon*. Br. 16. The Court in *Free Enterprise* entertained a challenge to removal restrictions in 2010, and Appellants' Appointments Clause claim is derived from the 2014 decision in *Noel Canning*. Appellants therefore could have asserted these claims at any time in the last decade. They simply chose not to.

In the event of delay like Appellants', the equitable defense of laches can negate irreparable harm where: (1) the plaintiff inexcusably delayed in bringing the action; and (2) the defendant was prejudiced as a result of that delay.[226] *Free Enterprise Fund*[227] predates the administrative proceeding by two years, and while the Supreme Court had not issued *Lucia* at that time, that case is now nearly six years old. The NLRB has devoted substantial resources to processing an unfair-labor-practice case that Appellants now claim must start all over again at square one. The cost and inconvenience alone warrant a finding of prejudice here, to say nothing of the predictably negative effects extreme delay would have upon the NLRB's ability to obtain documentary evidence and witness testimony in a hypothetical new proceeding.

---

[226] *King v. Innovation Books*, 976 F.2d 824, 832 (2d Cir. 1992).

[227] 561 U.S. 477 (2010). Plaintiffs' claim that *Free Enterprise Fund* is obviously applicable ironically shows why this Court should not reward their delay in alleging a constitutional violation. *See* A-17 (contending that *Free Enterprise Fund* "establishes unequivocally that NLRB ALJs are unconstitutionally protected"); *id.* ("NLRB ALJs are indistinguishable in all relevant respects from the PCAOB members"); A-37 (calling *Free Enterprise Fund* "clear and authoritative").

Essentially, Appellants' irreparable harm argument begins and ends with the assertion that because the administrative proceeding is unconstitutional, the Court must find irreparable harm justifying injunctive relief. That is nowhere near enough.

### C. The balance of the equities and the public interest factors counsel against a preliminary injunction.

Before turning to the broader structural consequences of an injunction here, it bears emphasizing that the clearest victims of delay in this case are Appellees' former employees, who have been waiting more than a decade for relief from the financial consequences of alleged unfair labor practices in 2012. It's bad enough that Appellees crammed down a bankruptcy plan that deprives these employees of most of the financial recompense they would be entitled to if those allegations are proven. But Appellees' plan effectively adds, not mere insult, but real injury to injury by permitting the passage of time to steadily erode in real terms the value of any make-whole relief awarded to their former employees. Such an outcome unfairly forces employees to give their

employer "an interest-free loan for as long as it can delay paying out back wages."[228]

The broader public interest, too, counsels against injunctive relief here. The NLRB was created and empowered by Congress to initially adjudicate and, where appropriate, remedy unlawful labor practices to "safeguard[] commerce from injury."[229] Congress's intent was to protect the public interest rather than to vindicate private rights.[230] Here, the requested injunction would, of necessity, frustrate Congress's intent to protect the Act's "public rights."[231]

---

[228] *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992)); *see also Loc. Joint Exec. Bd. of Las Vegas v. NLRB*, 883 F.3d 1129, 1136 (9th Cir. 2018) (inordinate delay in NLRB proceeding did not warrant refusal to provide restitution with interest); *accord William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011) (refusing to toll interest during period of time when tort had not been discovered; to do so would give tortfeasor an interest-free loan).

[229] 29 U.S.C. §§ 151, 160; *see UAW Loc. 283 v. Scofield*, 382 U.S. 205, 220 (1965).

[230] *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 182 n.8 (1967).

[231] *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 366 (1940).

Furthermore, the NLRA's administrative procedures are usually the sole mechanism for enforcing the Act's guarantees.[232] Because Appellants' removal-protection claim is structural, it is available to nearly every respondent to an unfair-labor-practice proceeding. Therefore, granting an injunction on those grounds would encourage every employer or labor union that is active within this Circuit to ignore the NLRA when compliance is inconvenient, because regulated entities would be given the playbook to stop the NLRB in its tracks.[233]

Interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the government.[234] And the harm that would arise from issuing a preliminary injunction on Appellants' claims would not be contained to the NLRB alone; the federal courts would likely be flooded with

---

[232] *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953) ("The Board is the public agent chosen by Congress to enforce the [NLRA]."); *Amal. Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 270 (1940) (Board is the "sole authority to secure" the prevention of ULPs).

[233] *Cf. Maryland v. King,* 567 U.S. 1301, 1303 (Roberts, C.J., in chambers); *Kim*, 2023 WL 6538544, at *16.

[234] *King*, 567 U.S. at 1303.

collateral suits from entities across the regulatory spectrum seeking to resist or delay law-enforcement efforts by ALJ-using agencies.

In sum, even if Appellants could show a likelihood of success on the merits and irreparable harm, this Court should still deny Appellants' request for preliminary relief because equity and the public interest strongly caution against creating the regulatory vacuum an injunction would cause.

## CONCLUSION

The Court should affirm the District Court's denial of Appellants' request for a preliminary injunction.

Respectfully submitted,

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Assoc. General Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Trial Attorney*
GRACE L. PEZZELLA
  *Trial Attorney*

/s/ Michael Dale
MICHAEL S. DALE
  *Trial Attorney*

National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20003
Tel: (202) 273-0008
Fax: (202) 273-4244
michael.dale@nlrb.gov

Dated: March 15, 2024
      Washington, DC

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CARE ONE, LLC, *et al.*,

      Appellants,

v.

NATIONAL LABOR RELATIONS BOARD, *et al.*,

      Appellees.

No. 23-7475

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g)(1), the National Labor Relations Board certifies that this opposition contains 13,846 words of proportionally spaced, 14-point type, and the word-processing software used was Microsoft Word for Office 365.

                        /s/ Michael Dale

                        MICHAEL S. DALE
                          *Trial Attorney*
                        National Labor Relations Board
                        1015 Half Street, SE, 4th Floor
                        Washington, DC 20570
                        Tel: (202) 273-0008
                        michael.dale@nlrb.gov

Dated: March 15, 2024
      Washington, DC