# 23-7475

## United States Court of Appeals
### for the
## Second Circuit

CARE ONE, LLC, HEALTHBRIDGE MANAGEMENT, LLC, CARE REALTY, LLC, 107 OSBORNE STREET OPERATING COMPANY II, LLC, DBA Danbury HCC, 710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, DBA LONG RIDGE OF STAMFORD, 240 CHURCH STREET OPERATING COMPANY II, LLC, DBA Newington Health Care Center, 1 BURR ROAD OPERATING COMPANY II, LLC, DBA Westport Health Care Center, 245 ORANGE AVENUE OPERATING COMPANY II, LLC, DBA West River Health Care Center, 341 JORDAN LANE OPERATING COMPANY II, LLC, DBA Wethersfield Health Care Center, 2028 BRIDGEPORT AVENUE OPERATING COMPANY II, LLC, DBA Golden Hill Health Care Center, 745 HIGHLAND AVE OPERATING CO LLC, DBA Highlands Health Care Center, 162 SOUTH BRITAIN ROAD OPERATING COMPANY II, LLC, DBA River Glen Health Care Center,

*Plaintiffs-Appellants,*

– v. –

NATIONAL LABOR RELATIONS BOARD, an Agency of the United States, LAUREN McFERRAN, GWYNNE WILCOX, MARVIN KAPLAN,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF CONNECTICUT

## FINAL FORM REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

DANIEL R. BENSON
CHRISTIAN T. BECKER
AMIT R. VORA
KASOWITZ BENSON TORRES LLP
*Attorneys for Plaintiffs-Appellants*
1633 Broadway
New York, New York 10019
(212) 506-1700

CP COUNSEL PRESS    (800) 4-APPEAL • (328399)

DAVID PROUTY, in their capacities as Members of the National Labor Relations Board, KENNETH R. CHU, in his capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellees.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..........................................................................1

ARGUMENT..................................................................................................4

THIS COURT SHOULD VACATE THE DENIAL OF THE
PRELIMINARY INJUNCTION........................................................................4

I.    The District Court Abused Its Discretion by Requiring Care One
      to Show a Clear Likelihood of Success on the Merits. ............................4

II.   The District Court Abused Its Discretion by Failing to Explain Its
      Reasoning...............................................................................................7

III.  This Court Should Hold That Care One Is Entitled to Preliminary
      Injunctive Relief. ...................................................................................8

      A.    Care One Will Succeed on the Merits of Its Claims. ...................8

            1.    The dual for-cause removal protections for
                  NLRB ALJs are unconstitutional. ........................................8

            2.    ALJ Chu's unconstitutional appointment tainted
                  the proceedings. ................................................................20

      B.    Care One Will Suffer Irreparable Harm Absent
            an Injunction...........................................................................22

            1.    *Axon* Counsels for Finding Irreparable Harm. .................22

            2.    Remedial Issues Do Not Foreclose a Finding of
                  Irreparable Harm. .............................................................27

      C.    An Injunction Will Promote the Public Interest. .........................36

CONCLUSION ...........................................................................................37

i

# TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Agudath Israel of Am. v. Cuomo,*
983 F.3d 620 (2d Cir. 2020) .................................................................23

*Alaska Airlines v. Brock,*
480 U.S. 678 (1987).............................................................................35

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.,*
2023 WL 4703307 (D.C. Cir. July 5, 2023) .............................................26, 27

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
598 U.S. 175 (2023)................................................................3, 22, 24, 27

*Axon Enter., Inc. v. FTC,*
986 F.3d 1173 (9th Cir. 2021) ...............................................................24

*Ayotte v. Planned Parenthood of N. New England,*
546 U.S. 320 (2006).............................................................................33

*Bennett v. SEC,*
844 F.3d 174 (4th Cir. 2016)..................................................................25

*Brenntag Int'l Chems., Inc. v. Bank of India,*
175 F.3d 245 (2d Cir. 1999) ..................................................................23

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.,*
462 F.3d 219 (2d Cir. 2006) ..................................................................12

*Calcutt v. FDIC,*
37 F.4th 293 (6th Cir. 2022)..................................................................16

*Carr v. Saul,*
593 U.S. 83 (2021)...............................................................................23

*CFPB v. Law Offices of Crystal Moroney, P.C.,*
    63 F.4th 174 (2d Cir. 2023)..........................................................*passim*

*City of Arlington v. FCC,*
    569 U.S. 290 (2013)..............................................................11, 17, 18

*CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.,*
    48 F.3d 618 (1st Cir. 1995) ...................................................................28

*Cnty. of Nassau, N.Y. v. Leavitt,*
    524 F.3d 408 (2d Cir. 2008) ...................................................................6

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021)...............................................................*passim*

*Conn. State Police Union v. Rovella,*
    36 F.4th 54 (2d Cir. 2022) ...................................................................5

*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021)...............................................................16

*Doran v. Salem Inn, Inc.,*
    422 U.S. 922 (1975)..............................................................28, 34

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)..........................................................9, 18, 20, 21

*Fuld v. Palestine Liberation Org.,*
    82 F.4th 74 (2d Cir. 2023) ...................................................................12

*Garza v. Cty. of L.A.,*
    918 F.2d 763 (9th Cir. 1990)...............................................................26

*Glidden Co. v. Zdanok,*
    370 U.S. 530 (1962)...............................................................21

*Hill v. SEC,*
    825 F.3d 1236 (11th Cir. 2016)...............................................................25

iii

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022)................................................................12

*Kane v. De Blasio,*
19 F.4th 152 (2d Cir. 2021).................................................................5

*Lucia v. S.E.C.,*
138 S. Ct. 2044 (2018)......................................................9, 11, 21, 22

*Martin v. Occupational Safety & Health Rev. Comm'n,*
499 U.S. 144 (1991).......................................................................11, 15

*Morrison v. Olson,*
487 U.S. 654 (1988)............................................................................15

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,*
883 F.3d 32 (2d Cir. 2018) ..................................................................6

*New Concepts for Living, Inc. v. Nat'l Lab. Rels. Bd.,*
No. 22-3301, 2024 WL 904486 (3d Cir. Mar. 4, 2024)....................14

*Nguyen v. United States,*
539 U.S. 69 (2003)..............................................................................32

*NLRB v. Bell Aerospace Co.,*
416 U.S. 267 (1974)............................................................................11

*NLRB v. Noel Canning,*
573 U.S. 513 (2014)............................................................................20

*Ramspeck v. Fed. Trial Examiners Conf.,*
345 U.S. 128 (1953)............................................................................35

*Richard Feiner & Co. v. Turner Ent. Co.,*
98 F.3d 33 (2d Cir. 1996) ..................................................................28

*Sec. & Exch. Comm'n v. Chenery Corp.,*
332 U.S. 194 (1947)............................................................................11

iv

*Seila L. LLC v. Consumer Fin. Prot. Bureau,*
140 S. Ct. 2183 (2020)................................................................*passim*

*Tilton v. Sec. & Exch. Comm'n,*
824 F.3d 276 (2d Cir. 2016) ........................................................2, 25

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,*
60 F.3d 27 (2d Cir. 1995) ...................................................................6

*Travelers Ins. Co. v. Cuomo,*
14 F.3d 708 (2d Cir. 1993) ...............................................................25

*Union Carbide Agr. Prod. Co. v. Costle,*
632 F.2d 1014 (2d Cir. 1980) .............................................................5

*Union of Needletrades, Indus. & Textile Emps. v. U.S. I.N.S.,*
336 F.3d 200 (2d Cir. 2003) ...............................................................6

*United States v. Arthrex, Inc.,*
594 U.S. 1 (2021)..............................................................................18

*United States v. Perkins,*
116 U.S. 483 (1886)..........................................................................15

*Wright v. Giuliani,*
230 F.3d 543 .......................................................................................5

## Constitutional Provisions and Legislation

U.S. Const. art. II, § 2, cl. 2 ............................................................22

5 U.S.C. § 1202.................................................................................19

5 U.S.C. § 7521.........................................................19, 33, 34, 36

29 U.S.C. § 153.................................................................................34

Administrative Procedure Act,
Pub. L. No. 70-404, Stat. 237 (1946)..............................................35

Civil Service Act of 1978,
Pub. L. No. 95-454, 92 Stat. 1111 ....................................................19

**Other Authorities**

*Rules*

Federal Rule of Civil Procedure 52(a)(2) ...........................................8

*Regulations*

5 C.F.R. § 1200.1 ...............................................................................36

29 C.F.R. § 101.14 .............................................................................24

29 C.F.R. § 102.46 .............................................................................14

*Other Materials*

27A Am. Jur. 2d Equity § 137 (May 2023 updated) ..........................26

*Dep't of Lab. v. Avery*,
120 M.S.P.R. 150 (2013).....................................................................20

Hearings on H.R. 11280 Before the H. Comm. on Post Off. &
Civ. Serv., 95th Cong. 824 (1978) .....................................................35

Harold J. Krent, Presidential Control of Adjudication Within
the Executive Branch, 65 Case W. Res. L. Rev. 1083 (2015) .......................19

Pierre N. Leval, Judging Under the Constitution: Dicta about
Dicta, 81 N.Y.U. L. Rev. 1249 (2006).............................................12

*Secretary of Educ. Review of ALJ Decisions*,
15 Op. O.L.C. 8 (1991).......................................................................11

*Westrock Servs., Inc. & Graphic Commc'ns Conf. of the Int'l Bhd. of Teamsters,*
Loc. 197-M, 366 NLRB No. 157, 2018 WL 3738342
(N.L.R.B. Aug. 6, 2018) ......................................................................9

## PRELIMINARY STATEMENT

The National Labor Relations Board ("NLRB") obscures the limited scope of the request at issue. Plaintiffs–Appellants (collectively, "Care One") brought a district court action and moved for a preliminary injunction to pause the NLRB's administrative proceedings against them because those proceedings' very structure is unconstitutional. First, the ALJ presiding over the proceedings, ALJ Chu, is unconstitutionally protected from the President's power to remove executive officers—which violates Article II's Vesting and Take Care Clauses. Second, ALJ Chu was unconstitutionally appointed because the NLRB appointed him without a constitutional quorum—which violates Article II's Appointments Clause. While these defects implicate vital questions—concerning the separation of powers and the balance of power between government agencies and private entities—Care One requests only that this Court pause the administrative proceedings to afford the district court meaningful time to evaluate the claims before they become moot when the proceedings conclude.

Although the NLRB urges this Court to affirm on the alternative basis

that Care One will not suffer irreparable harm without interim relief—a ground that the district court did not reach—the NLRB's contention rests on flawed premises. For example, the NLRB faults Care One for not challenging the administrative proceedings several years ago and suggests that Care One's delay proves that the proceedings are not irreparably harming it. But that suggestion blinks reality. Until the Supreme Court decided *Axon* in April 2023, the prevailing view was that a respondent could not sue in district court to challenge an ongoing administrative adjudication on structural constitutional grounds—rather, the respondent needed to wait until the adjudication completed and the agency issued a final order, after which the respondent could raise its constitutional challenges in an appellate court. Several decisions—including *Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 286 (2d Cir. 2016)—affirmed dismissals of structural constitutional challenges to ongoing administrative adjudications. In *Axon*, however, the Supreme Court held—for the first time—that respondents, rather than waiting for direct appellate review of a final agency order, could sue in district court to stop an ongoing administrative adjudication on structural

2

constitutional grounds—because the harm of "being subjected to unconstitutional agency authority" is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023). Two months after that decision—in June 2023—Care One brought this suit and moved for a preliminary injunction. There is no basis to claim that Care One sat on its hands.

The NLRB is also incorrect that, to satisfy the irreparable-harm prong of the preliminary-injunction inquiry for the Take Care Clause claim, Care One must show a particular form of prejudice: that, but for the President's inability to remove ALJ Chu, the complained-of agency action would not have been taken. But under *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), and *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021), that requirement applies only where a plaintiff seeks to void final agency action—not where, as here, a plaintiff seeks to enjoin an ongoing administrative adjudication.

At bottom, both the NLRB and the district court misapprehend this appeal's narrow scope. Care One seeks only to temporarily pause the NLRB

administrative proceedings to allow for meaningful judicial review of the constitutional claims before the proceedings conclude and the claims are mooted. If such review reveals that the claims lack merit, the NLRB will resume the proceedings—picking up where they left off. The NLRB has no plausible argument that granting Care One relief will cause hardship. Meanwhile, Care One has suffered and is continuing to suffer here-and-now constitutional injuries from being subjected to unconstitutional administrative proceedings. Those injuries require a remedy under *Axon*, but without a preliminary injunction, they will go unremedied. This Court should vacate the district court's denial of Care One's preliminary-injunction motion and hold that Care One is entitled to such limited, interim relief.

## ARGUMENT

## THIS COURT SHOULD VACATE THE DENIAL OF THE PRELIMINARY INJUNCTION

### I.   The District Court Abused Its Discretion by Requiring Care One to Show a Clear Likelihood of Success on the Merits.

The NLRB does not, because it cannot, meaningfully defend the three flawed grounds on which the district court required Care One to show that

it was clearly likely to succeed on the merits of its claims—rather than likely to succeed. *First*, the district court held Care One to the higher standard under the mistaken view that Care One had requested, in its application for a preliminary injunction, the relief of permanently enjoining and invalidating the NLRB administrative proceedings. (A. 266.) Not so. (*See* Care One Br. at 27–29.) The NLRB says nothing on this score.

*Second*, the district court subjected Care One to a clear-likelihood standard under the erroneous view that such a standard applies when a movant seeks a preliminary injunction that will affect "government action taken in the public interest pursuant to a statutory or regulatory scheme." (A. 265.) But as this Court's precedents hold, such an application triggers a likelihood-standard, not a clear-likelihood standard. *See, e.g.*, *Conn. State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022); *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000; *Union Carbide Agr. Prod. Co. v. Costle*, 632 F.2d 1014, 1018 (2d Cir. 1980) (first setting forth the applicable standard). The NLRB doubles down on the district court's error (*see* NLRB Br. at 19) and seeks refuge in a decision that

5

articulates the wrong standard. *See Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (misreading *Wright* and holding, erroneously, that preliminary injunctions affecting government action trigger a clear-likelihood standard). This Court should clarify that decisions such as *Rovella* state the proper standard, and that under the prior panel precedent rule, *Leavitt* could not have overruled *Union Carbide*. *See Union of Needletrades, Indus. & Textile Emps. v. U.S. I.N.S.*, 336 F.3d 200, 210 (2d Cir. 2003) (recognizing the prior panel precedent rule).

*Third*, the district court applied the clear-likelihood standard, rather than the likelihood-standard, because it misconstrued Care One's requested injunction as mandatory, rather than prohibitory. (A. 266.) A mandatory preliminary injunction commands a positive act and alters the status quo ante, *i.e.*, the last actual, peaceable uncontested status which preceded the pending controversy. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37–38 (2d Cir. 2018). Under that definition, the status quo ante must be the period *before* the NLRB commenced administrative proceedings

6

against Care One—since then, the relationship between the parties has been adversarial and far from peaceable. So, although Care One's requested injunction would affect the parties' relationship as of the time of the court filing, the injunction is prohibitory because it would prohibit government action, would not command the NLRB to perform a positive act, and would restore (not alter) the status quo prior to the NLRB proceedings this action seeks to enjoin. Although the NLRB argues that the injunction must be mandatory because the administrative proceedings have been going on for several years, the NLRB cites no authority whatsoever for the proposition that the duration of proceedings that are subject to an injunction has relevance to the inquiry. (*See* NLRB Br. at 21.)

Because the district court applied the wrong preliminary-injunction standard, the court abused its discretion in denying Care One's application. On that basis, this Court should vacate the denial.

## II. The District Court Abused Its Discretion by Failing to Explain Its Reasoning.

This Court should further hold that the district court abused its discretion in denying Care One's preliminary injunction on the Take Care

7

Clause claim, warranting vacatur, on the basis that the court failed to conduct the analysis required under Federal Rule of Civil Procedure 52(a)(2). The court did not evaluate the irreparable-harm or public-interest factors, and for the merits factor, the court identified an appellate circuit split and presumed that, because the Supreme Court was not "clearly likely" to affirm Care One's position, Care One was not entitled to a preliminary injunction. (A. 269.) Tellingly, the NLRB's description of the court's reasoning is more comprehensive than the court's actual reasoning. (*See* NLRB Br. at 24–25.)

## III. This Court Should Hold That Care One Is Entitled to Preliminary Injunctive Relief.

### A. Care One Will Succeed on the Merits of Its Claims.

#### 1. The dual for-cause removal protections for NLRB ALJs are unconstitutional.

The NLRB falters in attempting to reconcile the statutory scheme at issue—under which NLRB ALJs may be removed only for cause by Merit Systems Protection Board ("MSPB") members, who may be removed only for cause by the President—with *Free Enterprise*, *Lucia*, and *Seila Law*. The reason is plain: the scheme is fundamentally irreconcilable with those three

Supreme Court decisions. And that precedential trilogy, respectfully, binds this Court, despite the NLRB's policy preferences.

To start, *Free Enterprise* invalidated dual for-cause protections for members of the Public Company Accounting Oversight Board ("PCAOB"), and those protections were indistinguishable from the dual for-cause protections for ALJs at issue here. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 496 (2010); *see also Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2198 (2020) (describing *Free Enterprise* as invalidating "*two* layers of for-cause removal protection" afforded to "an official"). Although the Court—in a footnote and to avoid "general pronouncements on matters neither briefed nor argued," *see Free Enter. Fund*, 561 U.S. at 506—stated that its "holding" did not "address" ALJs because it was still "disputed" whether ALJs were executive officers, *id.* at 507 n.10, the Court resolved that dispute in *Lucia*. There, the Court confirmed that ALJs are executive officers. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053 (2018); *see also Westrock Servs., Inc. & Graphic Commc'ns Conf. of the Int'l Bhd. of Teamsters*, Loc. 197-M, 366 NLRB No. 157, 2018 WL 3738342, at *1 & n.1 (N.L.R.B. Aug. 6, 2018) (recognizing that *Lucia*'s

holding, which concerned SEC ALJs, extended to NLRB ALJs). And to the extent doubt remained, *Seila Law* delivered the finishing blow to the constitutionality of dual for-clause protections for ALJs. 140 S. Ct. at 2192.

As *Seila Law* held, the Court's "precedents have recognized only two exceptions to the President's unrestricted removal power, *id.* at 2192, and "[t]hese two exceptions—one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority—represent what up to now have been the outermost constitutional limits of permissible congressional restrictions on the President's removal power," *id.* at 2200 (citation and punctuation omitted). Because ALJs are inferior officers, the first exception does not apply, and the dispositive question becomes whether NLRB ALJs have "limited duties and no policymaking *or administrative authority*."

In each respect, NLRB ALJs do not fit *Seila Law*'s second exception. They have substantial duties: they exercise "significant discretion" under the laws of the United States, serve indefinitely, have "nearly all the tools of

federal judges," have the power to "critically shape the administrative record," and "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *See Lucia*, 585 U.S. at 248–49. They also wield policymaking authority, as they generate policy through case-by-case adjudications. As the Supreme Court has made clear, "agency adjudication is a generally permissible mode of law-making and policymaking." *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 154 (1991); *see also City of Arlington v. FCC*, 569 U.S. 290, 304 (2013) (noting that agencies may "construe an ambiguous term in light of competing *policy* interests" (emphasis added)); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (observing that agencies may use adjudications to formulate agency policies) (citing *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 765 (1969) ("Adjudicated cases may and do, of course, serve as vehicles for the formulation of agency policies, which are applied and announced therein.")); *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 203 (1947) (confirming that administrative adjudication may effectuate a "case-by-case evolution of statutory standards"); *Secretary of Educ. Review of ALJ Decisions*, 15 Op. O.L.C. 8, 15

11

(1991) ("ALJs determine, on a case-by-case basis, the policy of an executive branch agency."). Lastly, *administrative* law judges indisputably wield *administrative* authority, as their title suggests. *See Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (invalidating dual for-cause protections for SEC ALJs), *cert. granted sub nom., SEC v. Jarkesy*, 143 S. Ct. 2688 (2023).

Although the NLRB tries to resist *Seila Law*'s framework by dubbing it "dicta" (NLRB Br. at 40), that characterization is flat wrong. Even if it were dicta, "Supreme Court dicta" must be "accord[ed] deference" and "given considerable weight." *Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 100 (2d Cir. 2023) (citation and punctuation omitted). In any event, *Seila Law*'s statements outlining the two exceptions to the executive removal power comprise a holding, not dicta, because they are essential to the Court's decision. *See Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 235 (2d Cir. 2006) (holding that a Supreme Court decision's "standing-based reasoning was not dicta but instead essential to its holding and thus binding"), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011); Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1256

(2006) (defining dicta as a statement that "does not explain why the court's judgment goes in favor of the winner"). The Court's narrow holding—that the Consumer Financial Protection Bureau ("CFPB") Director's insulation from the removal power was unconstitutional—followed from its broader holding that there are only two exceptions to the removal power, neither of which applied to the Director. *Seila Law*, 140 S. Ct. at 2192.

In giving no deference whatsoever to *Seila Law*, the NLRB invites this Court to adopt a test that *Seila Law* rejected. The NLRB repeatedly asserts that a removal restriction should be unconstitutional only if it "impermissibly burdens" the President's power to control the executive branch. (*See* NLRB Br. at 28, 41). But court-appointed *amicus* in *Seila Law* invited the Supreme Court to adopt that same test; the Court declined and instead identified the two exceptions as the "outermost constitutional limits" on the nearly plenary removal power. 140 S. Ct. at 2220. As *Seila Law* put the point: "the President's removal power is the rule, not the exception." *Id.* at 2206. The NLRB's test would turn that principle on its head.

The NLRB also tries to seize on the inability of NLRB ALJs to issue

binding decisions or conduct formal agency rule-making (*see* NLRB Br. at 41), as if that inability means that they are not powerful enough to warrant being subject to the executive removal power, but the NLRB overstates its case. For one, although the Board is not required to adopt an ALJ's decision, *see* 29 C.F.R. § 102.46, the same is true of appellate courts reviewing trial-court decisions—yet it would be absurd to claim that trial courts are powerless. The NLRB also glosses over the provision that if the parties file no exceptions to the ALJ's decision, that decision will "automatically become the decision and order of the Board and become its findings, conclusions, and order." *Id.* § 102.48. Nor does the NLRB acknowledge the constraining effects of evidentiary determinations or the lock-in effects of initial findings and conclusions. Even if the Board disagrees with the ALJ, a reviewing court may find persuasive and reinstate the ALJ's findings and conclusions. *See, e.g.*, *New Concepts for Living, Inc. v. Nat'l Lab. Rels. Bd.*, No. 22-3301, 2024 WL 904486, at *9 (3d Cir. Mar. 4, 2024) (noting that the Board majority had rendered a conclusion, while the "ALJ had concluded otherwise," and holding: "We agree with the ALJ"). Moreover, while NLRB ALJs—like all

ALJS—do not conduct formal notice-and-comment agency rule-making, ALJs still make policies and rules through their case-by-case adjudications. *Martin See* 499 U.S. at 154.

The NLRB's attempt to emphasize a few powers that NLRB ALJs might lack—they are bureaucrats, not autocrats—only reinforces the dissimilarity of NLRB ALJs from the two (and only two) comparatively powerless officials who have fallen into *Seila Law'*s second exception. *See Seila Law*, 140 S. Ct. at 2199. Unlike the low-ranking naval cadet in *Perkins*, an NLRB ALJ has numerous important duties and possesses significant administrative (if not policymaking) authority. *See United States v. Perkins*, 116 U.S. 483, 485 (1886) (upholding a restriction on the Secretary of the Navy's power to discharge the cadet without finding misconduct). Unlike the special counsel in *Morrison*, who was to perform a "single task" of temporary duration—investigating and prosecuting specific crimes by high-ranking public officials—NLRB ALJs are tasked with adjudicating disputes involving private-sector employees, employers, and unions across the nation. *See Morrison v. Olson*, 487 U.S. 654, 692 (1988) (upholding a for-cause

15

restriction on the Attorney General's power to remove the special counsel); *see also Seila Law*, 140 S. Ct. at 2200 (contrasting the special counsel in *Morrison*, whose "coercive power" was "trained inward to high-ranking Governmental actors identified by others, and was confined to a specified matter in which the Department of Justice had a potential conflict of interest," with the CFPB Director who "has the authority to bring the coercive power of the state to bear on millions of private citizens and businesses"). This Court should reject the NLRB's naked attempt to downplay the powers of NLRB ALJs.

Equally misguided is the NLRB's argument—echoed in two wrongly decided appellate decisions—that dual for-cause removal protections for NLRB ALJs are constitutional because they enable these executive branch adjudicators to remain "impartial," "independent" of another's will, and above the political fray. (*See* NLRB Br. at 29, 34.) *See also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021); *Calcutt v. FDIC*, 37 F.4th 293, 319 (6th Cir. 2022), *rev'd per curiam on other grounds*, 143 S. Ct. 1317 (2023). By the framers' design, Article III judges are neutral arbiters, independent of the

16

President, so that they may serve as a counter-majoritarian check. *See* The Federalist No. 78 (Alexander Hamilton). But ALJs play a different role: as executive officers (a point which *Lucia* settled), their function is to "assist the supreme Magistrate in discharging the duties of [the Magistrate's] trust." *See Seila Law*, 140 S. Ct. at 2197 (quoting 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)). Accordingly, the President must have nearly plenary power to remove them, "for it is only the authority that can remove such officials that they must fear and, in the performance of their functions, obey." *See id.* (citation and punctuation omitted). The dependence of ALJs on the President's will is thus a feature, not a bug, of our constitutional design. And their work's judicial quality does not change the constitutional imperative that, as executive officers, they must remain dependent on the President. When executive agencies "conduct adjudications," such "activities" are "exercises of—indeed, under our constitutional structure they must be exercises of—the 'executive Power.'" *City of Arlington*, 569 U.S. at 304 (quoting Art. II, § 1, cl. 1); *see also* Oral Arg. Tr. 82:7-8, *SEC v. Jarkesy*, No. 22-859 (Nov. 29, 2023) (U.S. Principal Deputy Solicitor General stating

that an administrative adjudication "has trial-type procedures, but that's an exercise of executive power"); *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (holding that, even if Administrative Patent Judges' duties "partake of Judicial quality as well as Executive," they are "still exercising executive power and must remain dependent on the President") (quoting 1 Annals of Cong., at 611–612 (J. Madison)). So, even if the NLRB believes that ALJs should boast "technical competence and apolitical expertise," that is no excuse to insulate ALJs from the President's power to remove and thereby control executive officers. *See Free Enter. Fund*, 561 U.S. at 498 (making this point about the PCAOB).

Nor is the NLRB—or *Decker Coal* or *Calcutt*—correct that the restrictive removal protections for ALJs have a long historical pedigree. (*See* NLRB Br. at 34.) Executive officers have been conducting adjudications "since the beginning of the Republic." *See City of Arlington*, 569 U.S. at 305 n.4. And "for the first 150 years of our history," Presidents "exercised substantial control in shaping the claims resolution processes set into motion by Congress," including by "directing clerks and others to resolve claims" and "enjoy[ing]

authority under Article II to oversee the adjudication," without having to contend with restrictive tenure protections for such executive adjudicators, *see* Harold J. Krent, *Presidential Control of Adjudication Within the Executive Branch*, 65 Case W. Res. L. Rev. 1083, 1091 (2015). It was not until 1978 that Congress created the MSPB and provided that an ALJ may be removed only for good cause as determined by the MSPB, who may be removed by the President only for good cause. *See* Pub. L. No. 95-454, §§ 202, 204, 92 Stat. 1111, 1121-22, 1137; 5 U.S.C. § 1202(d); *id.* § 7521(a).

Finally, the NLRB misses the mark in suggesting that, because the for-cause protections struck down in *Free Enterprise Fund* were especially rigorous, the for-cause protections here must be constitutional. (*See* NLRB Br. at 32–33.) Both sets of dual for-cause limitations cross the constitutional line. *See Seila Law*, 140 S. Ct. at 2198 (explaining that, in *Free Enterprise Fund*, "we declined to extend those limits to 'a new situation not yet encountered by the Court'—an official insulated by two layers of for-cause removal protection" (quoting *Free Enter. Fund*, 561 U.S. at 483)). Indeed, both sets of dual for-cause limitations are much more restrictive than the modest, single-

layer of for-cause protection upheld in *Perkins* and *Morrison*. *See Free Enter. Fund*, 561 U.S. at 495 (describing the "limited restrictions" in *Perkins* and *Morrison*). In any event, the MSPB *does* enforce an exceedingly restrictive for-cause standard. The MSPB's "baseline for evaluating good cause in any action against an ALJ is whether the action improperly interferes with the ALJ's ability to function as an independent and impartial decision maker." *Dep't of Lab. v. Avery*, 120 M.S.P.R. 150, 153 (2013). MSPB thus will not permit an agency to take any adverse action against an ALJ "for a reason that interferes with [their] qualified judicial independence." *Id.* at 155.

### 2. ALJ Chu's unconstitutional appointment tainted the proceedings.

As Care One explained, ALJ Chu's unconstitutional appointment by the NLRB renders the NLRB proceedings against Care One tainted and unconstitutional. (*See* Care One Br. at 54–59.) Under *Noel Canning*, because the Board lacked a constitutional quorum in 2012 when it appointed ALJ Chu, that appointment was unconstitutional. *NLRB v. Noel Canning*, 573 U.S. 513, 521 (2014). Under *Lucia*, the Board's 2014 attempt to retroactively ratify

all its defective appointments does not sanitize ALJ Chu's unconstitutional appointment and all the proceedings stemming therefrom. 138 S. Ct. at 2055.

The NLRB deploys the ratification as an excuse to evade judicial review (*see* NLRB Br. at 43–50), but this gambit fails. As *Lucia* made clear, ratification is insufficient to "cure" the constitutional harm and undermines the Supreme Court's "Appointments Clause remedies," which are "designed" to "create 'incentives to raise Appointments Clause challenges.'" 138 S. Ct. at 2055 n.5 (quoting *Ryder v. United States*, 515 U.S. 177, 183 (1995)). The Supreme Court has long endeavored to ensure that structural constitutional challenges are adjudicated on their merits, given that such challenges implicate the "strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers," *see Glidden Co. v. Zdanok*, 370 U.S. 530, 536 (1962), and in light of the "inexorable presence" of the administrative state that "wields vast power and touches almost every aspect of daily life," *see Free Enter. Fund*, 561 U.S. at 499. Indeed, ratification subverts the rationale underlying the Appointments Clause, which expressly requires "Officers of the United States" to be appointed by the

21

President, with the "Advice and Consent of the Senate," U.S. Const. art. II, § 2, cl. 2, and which is designed to "maintain[] clear lines of accountability—encouraging good appointments and giving the public someone to blame for bad ones," *see Lucia*, 138 S. Ct. at 2056 (Thomas, J., concurring).

Additionally, there is no simply basis for the NLRB's suggestion (*see* NLRB Br. at 46) that the district court lacked matter jurisdiction over the Appointments Clause challenge. *See Axon*, 598 U.S. at 189 (holding that court had jurisdiction over challenges "to the structure or very existence of an agency"); *Collins*, 141 S. Ct. at 1788 (emphasizing the severity of Appointments Clause challenges, which involve a "Government actor's exercise of power that the actor did not lawfully possess").

**B.    Care One Will Suffer Irreparable Harm Absent an Injunction.**

**1.    *Axon* Counsels for Finding Irreparable Harm.**

Denying preliminary injunctive relief will irreparably harm Care One because the injury of "being subjected to unconstitutional agency authority"—a "proceeding by an unaccountable ALJ"—is a "here-and-now injury" that is "impossible to remedy" later. *Axon Enter. v. FTC*, 598 U.S. 175,

22

191 (2023) (citation and punctuation omitted); *see also Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249–50 (2d Cir. 1999) (defining "irreparable harm" as "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action," the "remedy available at the end of trial will not make the plaintiff whole.") (citation and punctuation omitted). The NLRB does not—because it cannot—attempt to explain away *Axon* and *Brenntag*. Nor does the NLRB attempt to deny that a "presumption of irreparable injury flows from a violation of constitutional rights." *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (citation and punctuation omitted).

Instead, the NLRB claims that, because Care One delayed bringing this suit, Care One cannot show that it will be irreparably harmed without a preliminary injunction. (*See* NLRB Br. at 65.) But as Care One explained, *Axon* in April 2023 opened the path for judicial challenges to ongoing agency proceedings on structural constitutional grounds, and CareOne filed suit in June 2023. (*See* Care One Br. at 16.) Bringing these constitutional claims within the administrative adjudication would have been futile. *See Carr v.*

23

*Saul*, 593 U.S. 83, 84 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise."); *see also* A. 89 (ALJ Chu: "It wouldn't be up to me to make such a ruling in this proceeding."). And bringing these constitutional claims in court after *Free Enterprise Fund*, or after *Noel Canning*, would have risked suffering dismissal at the threshold and wasting party resources. Until *Axon*, Care One—like most respondents in agency proceedings—was under the reasonable impression that it needed to wait until a final agency decision, after which it could file a petition for direct appellate review. *See* 29 C.F.R. § 101.14. After all, *Axon* reversed the Ninth Circuit and overruled by implication several decisions, including this Court's decision in *Tilton*, holding that respondents could not bring collateral suits in district court to ongoing administrative adjudications. *See* 598 U.S. at 196; *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1182 (9th Cir. 2021) ("Axon has no right to avoid the administrative proceeding itself. If the proceeding might harm Axon, that harm can still be ultimately remedied by a federal court of appeals, even if it is not Axon's preferred remedy of

24

avoiding the agency process altogether.") *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016) ("The appellants' argument that post-proceeding judicial review of their Appointments Clause claim will be meaningless … is at odds with established practice in federal court regarding analogous challenges to a tribunal's constitutional legitimacy"); *Bennett v. SEC*, 844 F.3d 174, 184–85 (4th Cir. 2016) (rejecting the argument that "post-proceeding consideration of [respondent's] constitutional challenge will be meaningless … because the violation is *exposure* to the unconstitutional proceeding, rather than any adverse decision on the merits"); *Hill v. SEC*, 825 F.3d 1236, 1245 (11th Cir. 2016) (rejecting the argument that, "because [direct appellate review] cannot cure the injury they will suffer—enduring an unconstitutional administrative process—the respondents are entitled to bring their claims in the district court").

Relatedly, although the NLRB asserts that equitable laches can negate irreparable harm (*see* NLRB Br. at 67), that doctrine has no application here, where Care One brought this challenge promptly after *Axon* was issued. *See Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 714 (2d Cir. 1993) (affirming rejection

of laches defense where intervening caselaw improved "prospects of success"), *rev'd on other grounds sub nom.*, *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 U.S. 645 (1995); *Garza v. Cty. of L.A.*, 918 F.2d 763, 772 (9th Cir. 1990) ("Because of the ongoing nature of the violation, plaintiffs' present claim ought not be barred by laches."); 27A Am. Jur. 2d Equity § 137 (May 2023 updated) ("Courts generally consider delay reasonable for purposes of laches if a party does not raise a particular claim due to prevailing unfavorable law but brings suit after the law has changed so as to be favorable to the claim.").

*Alpine*, though unpublished, is instructive. There, the D.C. Circuit overturned a district court's denial of a preliminary injunction of allegedly unconstitutional proceedings by the Financial Industry Regulatory Authority (FINRA) and imposed an injunction pending appeal. *See Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (per curiam). The panel determined that the plaintiff had "satisfied the stringent requirements for an injunction pending appeal," *id.*, and Judge Walker's concurrence described the requisite irreparable harm, in part, as

26

the "resolution of claims by an unconstitutionally structured adjudicator [which] is a 'here-and-now injury' that cannot later be remedied." *Id.* at \*2 (Walker, J. concurring) (citing *Axon*, 598 U.S. at 191). To be sure, the company there faced "the corporate death penalty." *Id.* But Judge Walker's concurrence illustrates that *Axon*'s reasoning extends beyond subject-matter jurisdiction to irreparable harm. Under *Axon*, combined with this Court's precedents such as *Brenntag* and *Agudath Israel*, this Court should hold that "being subjected to unconstitutional agency authority" is irreparable harm that warrants a preliminary injunction. *See Axon*, 598 U.S. at 191.

## 2. Remedial Issues Do Not Foreclose a Finding of Irreparable Harm.

The NLRB misplaces its reliance on two issues that concern the *remedy* that the district court will fashion *if* it holds, after full litigation on the merits, that removal protections for NLRB ALJs violate Article II and the separation of powers: (a) prejudice; and (b) severability. Neither of these remedial issues bear on Care One's argument that, without a preliminary injunction, it will suffer irreparable harm. Nor do these two issues bear on Care One's argument that it is likely to succeed on the merits of its claims the

27

administrative proceedings are unconstitutional. This Court need not, and should not, reach these two issues on this preliminary application. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 934 (1975) (holding that a preliminary injunction is not intended to adjudicate the "ultimate merits"); *Richard Feiner & Co. v. Turner Ent. Co.*, 98 F.3d 33, 34 (2d Cir. 1996) (holding that "the issuance of a preliminary injunction should not prevent a lower court from considering the full panoply of available remedies when it fashions permanent relief"); *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 620 (1st Cir. 1995) ("The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs."). In any event, each argument is meritless.

**a.** This Court should reject the NLRB's efforts to import, into this case, a prejudice requirement that derives from distinguishable contexts. According to the NLRB, the Supreme Court's decision in *Collins*, and this Court's decision in *Crystal Moroney*, stand for the proposition that, to establish irreparable harm on the removal-power claim, Care One must

28

prove that the removal restriction prejudiced it—specifically, by proving that, but for the President's inability to remove ALJ Chu, the agency action would not have been taken. But in those cases, unlike here, the plaintiffs were seeking to void a completed agency action. The NLRB disregards that dispositive distinction.

In *Collins*, the plaintiffs sought to void a final administrative action by the Federal Housing Finance Agency (FHFA)—*i.e.*, the transfer of a hundred-billion-dollars in economic rights to the Treasury under a contract—and they based their entitlement to that relief on the FHFA Director's unconstitutional for-cause removal protection. *Collins*, 141 S. Ct. at 1789. In *Crystal Moroney*, the plaintiffs sought to void a final administrative action by the CFPB—the issuance of a Civil Investigate Demand (CID) for documents and an attempt to enforce the CID in court—and they based their entitlement to that relief on the CFPB Director's unconstitutional for-cause removal protection. *Crystal Moroney*, 63 F.4th at 180. So, while *Crystal Moroney* relied on *Collins* to hold that "to void an agency action due to an unconstitutional removal protection, a party must show that the agency

29

action would not have been taken *but for* the President's inability to remove the agency head," *see id.*—that holding does not apply where, as here, a respondent in an ***ongoing*** administrative ***adjudication*** brings a collateral challenge in court to enjoin that adjudication midstream. As Justice Kagan explained in her *Collins* concurrence (on which *Crystal Moroney* relied), requiring a plaintiff to show prejudice makes sense when the plaintiff is attempting to "undo[]" or "rewind" a completed agency action: undoing or rewinding a completed agency action is disruptive, so the bar should be high. *See Collins*, 141 S. Ct. at 1801 (Kagan, J., concurring) (observing that "the majority's remedial holding limits the damage"); *accord Crystal Moroney*, 63 F.4th at 180 ("We find Justice Kagan's logic to be persuasive."). By allowing plaintiffs to void only those completed agency actions where "the President's inability to fire an agency head affected the complained-of decision," the relief will "restore the complaining party to the position it would have occupied in the absence of the removal problem." *Crystal Moroney*, 63 F.4th at 180 (citing *Collins*, 141 S. Ct. at 1801 (Kagan, J., concurring)) (punctuation omitted). And granting that relief for any other

30

final agency action would, "contrary to usual remedial principles, put the complaining party in a better position than if no constitutional violation had occurred." *Id.* (citing *Collins*, 141 S. Ct. at 1801 (Kagan, J., concurring)) (punctuation omitted)).

Here, the causes of concern in *Collins* and *Crystal Moroney*, and the reasons for requiring the plaintiffs in those cases to prove prejudice, are absent. Because Care One seeks to enjoin an ongoing administrative adjudication, rather than seeking to void a completed agency action, requiring Care One to specify agency action that would not have been taken but for the President's inability to remove ALJ Chu is an incoherent demand. Further, although this Court rejected Crystal Moroney P.C.'s proffered distinction between the "retrospective relief (disgorgement of funds)" sought in *Collins*, and the "prospective relief (production of withheld documents)" sought there, *see* 63 F.4th at 180, the point remains that both types of relief sought to void completed agency action, which is not the case here. This case does not present the same need to "limit[] … damage." *See Collins*, 141 S. Ct. at 1801 (Kagan, J., concurring).

31

Nor could an injunction put Care One in a better position than if no constitutional violation had occurred. Under *Axon*, Care One seeks only to end the immediate here-and-now injury of being subjected to an unconstitutional proceeding—in other words, a remedy that fits the injury. *See Crystal Moroney*, 63 F.4th at 180 (observing that the "constitutional injury" should "properly match[]" the "requested remedy").

Requiring Care One to prove prejudice to prevail on a structural constitutional challenge to an ongoing agency adjudication also runs counter to Supreme Court precedent. In *Nguyen*, the Court vacated a decision by a Ninth Circuit panel that comprised two Article III judges and an Article IV territorial judge sitting by designation. *Nguyen v. United States*, 539 U.S. 69, 81 (2003). The third judge lacked the life-tenure protections afforded Article III judges. *Id.* at 74. Although the panel was "improperly constituted," the Court remedied the structural defect "without assessing prejudice." *Id.* at 81. In addition, imposing a prejudice requirement that applies in dissimilar contexts would contravene *Lucia*'s principle that remedies for separation-of-

powers defects should be "designed" to "create incentives to raise" constitutional claims. 585 U.S. at 252 n.5 (citation and punctuation omitted).

**b.** The NLRB fares no better in arguing that severability precludes Care One from showing irreparable harm. According to the NLRB, the remedy for the ALJs' unconstitutional removal restrictions is to sever those restrictions from the statute while leaving the rest of the statute in place— and, as a result, preliminary injunctive relief to pause the administrative proceedings is "unavailable." (*See* NLRB Br. at 62–64.) The NLRB proposes that for 5 U.S.C. § 7521(a)—"An action may be taken against an [ALJ] … by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the [MSPB]"—severing and invalidating the sentence's second half, after "good cause," will resolve any constitutional infirmity. (*See* NLRB Br. at 63.) This argument fails in multiple ways.

To begin, severability is relevant to the nature of the remedy at final judgment—not to whether Care One is entitled to preliminary injunctive relief pending full merits litigation. *See Ayotte v. Planned Parenthood of N. New*

33

*England*, 546 U.S. 320, 328, (2006) (observing that severability is "a question of remedy"). The NLRB unwittingly concedes this point: "Should the Court find ALJ removal protections to be unconstitutional *at final judgment*, it could sever … ." (*See* NLRB Br. at 63) (emphasis added). Even if this Court could sever the statute's second half, that possibility has no relevance to Care One's interim showing, on the preliminary-injunction application, of likelihood of success on the merits and irreparable harm. *See, e.g.*, *Doran*, 422 U.S. at 934.

Next, the NLRB does not explain how its severance proposal would resolve the constitutional problems and render NLRB ALJs accountable to the President. Under the NLRB's proposal, NLRB ALJs retain dual for-cause protections from the executive removal power: they are removable only for cause by NLRB members, who are removable only for cause by the President. *See* 5 U.S.C. § 7521(a) (providing, after proposed severance: "An action may be taken against an [ALJ] by the agency in which the administrative law judge is employed … only for good cause … ."); 29 U.S.C. § 153(a) (providing that NLRB members, may be removed by the President only "for neglect of duty or malfeasance in office").

34

More fundamentally, the NLRB's proposal fails because the statute is not severable. The touchstone for "evaluating severability is whether the statute," without the severed portion, "will function in a *manner* consistent with the intent of Congress." *Alaska Airlines v. Brock*, 480 U.S. 678, 685 (1987). Here, protecting the independence of ALJs through two layers of for-case removal restrictions was the statutory scheme's central purpose. Before 1946, ALJs—who were then known as "hearing examiners"—were derided as "tools of the agency concerned and subservient to the agency heads." *Ramspeck v. Fed. Trial Examiners Conf.*, 345 U.S. 128, 131 (1953). In response, the Administrative Procedure Act of 1946 made the hearing officers "semi-independent," *see id.* at 132, by providing that they could be removed "by the agency in which they are employed only for good cause established and determined by" the Civil Service Commission, *see* Administrative Procedure Act, Pub. L. No. 70-404, § 11, 60 Stat. 237 (1946). But that legislation did not go far enough: objectors noted that the Civil Service Commission members were removable at-will by the President and thus susceptible to "being pressured." *See* Civil Service Reform: Hearings on H.R. 11280 Before the H.

Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978). So, in 1978, Congress went a step further: it created the MSPB to replace the Civil Service Commission, *see* Civil Service Act of 1978, Pub. L. No. 95-454, §§ 202, 204, 92 Stat. 1111, and it granted MSPB members for-cause protection from removal by the President. In fact, Congress's express goal was to grant them "tenure akin to that of the Federal judiciary." *See supra*, 95th Cong. 824; *see also* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court.").

Because the NLRB's proposal to sever and invalidate the second half of 5 U.S.C. § 7521(a) is inconsistent with the statute's purpose—to ensure that ALJs remain free from executive control—the NLRB's proposal fails, and the NLRB cannot escape the constitutional questions presented.

## C. An Injunction Will Promote the Public Interest.

While the NLRB attempts to obscure the balance of harms, it is undeniable that granting Care One's requested preliminary injunction will not impose a material hardship on the agency. Pausing the administrative proceedings temporarily would enable comprehensive and timely judicial

review of the claims. Even if it turns out, after the full judicial merits litigation, that Care One's claims lack merit, the cost to the NLRB would not be excessive: the proceedings would pick up where they left off.

## CONCLUSION

This Court should vacate the district court's denial of Care One's request for a preliminary injunction.

In addition, this Court should hold that Care One is entitled to the requested preliminary injunction. Alternatively, this Court should remand and instruct the district court to properly conduct the inquiry.

Respectfully submitted,

/s/ Daniel R Benson
Daniel R. Benson
Christian T. Becker
Amit R. Vora
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 6,999 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(6) and the type style requirements of FRAP 32(a)(7) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point type.

/s/ Daniel R. Benson
Daniel R. Benson
*Attorney for Plaintiffs-Appellants*

Dated: March 18, 2024